# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

THE CITY OF NEW YORK,

                Plaintiff,

      -against-

CIGARETTES UNLIMITED, L.C., JOHN A. LASH, III, ANITA LASH, STEPHEN DABNEY RILEY, SHANA L. BILLER, MARY RILEY, MARGARET L. CLARK, CANDICE S. FOX, MONIQUE PEARSON, JULIUS PETERS-BRANDON, JOANNA S. PETTIES, PAULA K. SLOAN, DERRICK L. WHITING, JESSICA WHITEHEAD, ELIZABETH R. WINDHAM, DEBRA A. ANTICO, JOSEPH N. ANTICO, THOMAS GUGLIELMO, MERYLE MCGOWAN, ROBERT A. SCHMIDT, RAZIK K. SHARKI, and John or Jane Doe 1-30,

             Defendants.

Case No. 19-cv-3998(ILG)(RLM)

**MEMORANDUM OF LAW IN SUPPORT**
**OF THE CIGARETTES UNLIMITED DEFENDANTS'**
**PARTIAL MOTION TO DISMISS THE COMPLAINT**

SHER TREMONTE LLP

Justin M. Sher
Alexandra G. Elenowitz-Hess
90 Broad Street, 23rd Floor
New York, New York 10004
212.202.2600
jsher@shertremonte.com
ahess@shertremonte.com

*Attorneys for Cigarettes Unlimited Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL ALLEGATIONS IN THE COMPLAINT ...................................................... 2

ARGUMENT ..................................................................................................................... 5

I.      LEGAL STANDARD ............................................................................................ 5

II.     THE CITY HAS FAILED TO ESTABLISH PERSONAL JURISDICTION OVER ALL THE CIGARETTES UNLIMITED DEFENDANTS ........................................................ 6

        A.    The CCTA and PACT Act Claims ........................................................ 8

               1.    The City Has Not Established Jurisdiction Over the Grouped Defendants 9

               2.    The City Has Not Established Jurisdiction Over Defendants Sloan and Peters-Brandon ......................................................................................... 13

        B.    RICO Claims ...................................................................................... 14

               1.    The City Has Not Established Jurisdiction Over Any of the Cigarettes Unlimited Defendants on Its RICO Claims ............................................. 14

               2.    Jurisdiction Over the Grouped Defendants, Defendant Sloan, and Defendant Peters-Brandon on the RICO Claims Would Violate Due Process ....................................................................................... 15

III.    THE COMPLAINT FAILS TO STATE A CCTA CLAIM ............................................. 16

        A.    The CCTA Claims Against All Cigarettes Unlimited Defendants Should Be Dismissed Because the City Does Not Allege That the Cigarettes Were "Contraband" Under the CCTA .................................................................... 16

        B.    The CCTA Claims Against the Grouped Defendants Should Be Dismissed Because the City Fails to Allege Other Requisite Elements of CCTA Violations 18

               1.    The City Fails to Make Any Particularized Allegations That the Grouped Defendants Sold, Shipped, Transported, Received, Possessed, Distributed, or Purchased Under-Taxed Cigarettes ...................................................... 18

               2.    The City Does Not Allege That the Grouped Defendants Sold More Than 10,000 Cigarettes ................................................................................... 19

               3.    The City Fails to Allege Scienter as to the Grouped Defendants ............. 19

4.      The City's Complaint Violates Rule 8 of the Federal Rules of Civil Procedure as to the Grouped Defendants ................................................. 20

C.      The CCTA Claims Against Defendants Sloan and Peters-Brandon Should Be Dismissed Because the City Fails to Plausibly Allege They Knew the Cigarettes Were Destined for Resale in New York ............................................. 20

IV.     THE COMPLAINT FAILS TO STATE A SUBSTANTIVE RICO CLAIM ................. 21

A.      The Substantive RICO Claims Against All Cigarettes Unlimited Defendants Should Be Dismissed ............................................. 21

B.      The Substantive RICO Claims Against the Grouped Defendants Should Be Dismissed ................................................. 21

C.      The Substantive RICO Claims Against Defendants Sloan and Peters-Brandon Should Be Dismissed .............................................. 24

V.      THE COMPLAINT FAILS TO STATE A RICO CONSPIRACY CLAIM .................. 24

VI.     THE COMPLAINT FAILS TO STATE A PACT ACT CLAIM ................................. 24

A.      The Grouped Defendants, Peters-Brandon, and Sloan Did Not Sell or Ship Cigarettes in Interstate Commerce ....................................... 25

B.      Defendants Anita Lash, Mary Riley, Biller, Clark, Fox, Pearson, Peters-Brandon, Petties, Sloan, Whiting, Whitehead, and Windham Are Not "Delivery Sellers" . 26

C.      The City Has Failed to State a PACT Act Claim Against Stephen Riley ............. 27

CONCLUSION ................................................................................................ 28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allaire Corp. v. Okumus*,
    433 F.3d 248 (2d Cir. 2006) ................................................................. 6

*Anwar v. Fairfield Greenwich Ltd.*,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010) ............................................... 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 6

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ..................................................... 6, 20

*Backus v. U3 Advisors, Inc.*,
    No. 16-CV-8990, 2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017) ...................... 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................ 6

*Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*,
    137 S. Ct. 1773 (2017)………………………………………………………………...16

*Canon U.S.A., Inc. v. F & E Trading LLC*,
    No. 2:15-CV-6015, 2017 WL 4357339 (E.D.N.Y. Sept. 29, 2017) ................... 6

*City of N.Y. v. Chavez*,
    944 F. Supp. 2d 260 (S.D.N.Y. 2013) ............................................. 17

*City of N.Y. v. FedEx Ground Package Sys., Inc.*,
    351 F. Supp. 3d 456 (S.D.N.Y. 2018) ..................................... 16, 19

*City of N.Y. v. Gordon*,
    1 F. Supp. 3d 94 (S.D.N.Y. 2013) ................................................... 18

*City of N.Y. v. Hatu*,
    No. 1:18-CV-848 (S.D.N.Y. Sept. 24, 2018) (Engelmayer, J.) ("*Hatu I*") .............. *passim*

*City of N.Y. v. Hatu*,
    No. 18-CV-848, 2019 WL 2325902 (S.D.N.Y. May 31, 2019) ("*Hatu II*") ........ 17, 25, 26

*City of N.Y. v. Milhem Attea & Bros.*,
    No. 06-CV-3620, 2012 WL 3579568 (E.D.N.Y. Aug. 17, 2012) ................... 27

iii

*City of N.Y. v. Nexicon, Inc.*,
No. 03-CV-383, 2006 WL 647716 (S.D.N.Y. Mar. 15, 2006) ........................ 26

*City of N.Y. v. Wolfpack Tobacco*,
No. 13-CIV-1889, 2013 WL 5312542 (S.D.N.Y. Sept. 9, 2013) .................... 26

*Conte v. Newsday, Inc.*,
703 F. Supp. 2d 126 (E.D.N.Y. 2010) ............................................................. 23

*Crab House of Douglaston, Inc. v. Newsday, Inc.*,
418 F. Supp. 2d 193 (E.D.N.Y. 2006) ....................................................... 22, 23

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001) ............................................................................ 21

*DeSantis v. Hafner Creations, Inc.*,
949 F. Supp. 419 (E.D. Va. 1996) ................................................................... 14

*DiStefano v. Carozzi N. Am., Inc.*,
286 F.3d 81 (2d Cir. 2001) ................................................................................ 5

*Eades v. Kennedy, PC Law Offices*,
799 F.3d 161 (2d Cir. 2015) .............................................................................. 5

*Elsevier, Inc. v. Grossman*,
77 F. Supp. 3d 331 (S.D.N.Y. 2015) ............................................................... 15

*Fernando v. Fernando*,
No. 09-CV-1390, 2010 WL 3119729 (E.D.N.Y. Aug. 5, 2010) ...................... 14

*Franzone v. City of N.Y.*,
No. 13-CV-5282, 2015 WL 2139121 (E.D.N.Y. May 4, 2015) .......... 10, 19, 20, 24

*Fuji Photo Film, U.S.A., Inc. v. McNulty*,
640 F. Supp. 2d 300 (S.D.N.Y. 2009) ............................................................. 24

*Gordon v. Holder*,
826 F. Supp. 2d 279 (D.D.C. 2011) ................................................................ 26

*Gross v. Waywell*,
628 F. Supp. 2d 475 (S.D.N.Y. 2009) ............................................................. 22

*In re DDAVP Direct Purchaser Antitrust Litig.*,
585 F.3d 677 (2d Cir. 2009) ............................................................................ 10

*In re Platinum & Palladium Commodities Litig.*,
   828 F. Supp. 2d 588 (S.D.N.Y. 2011)............................................................................ 22

*In re Terrorist Attacks on September 11, 2011*,
   714 F.3d 659 (2d Cir. 2013)........................................................................................ 5

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011)........................................................................................ 11

*M'Baye v. New Jersey Sports Production, Inc.*,
   No. 06-CV-3439, 2007 WL 431881 (S.D.N.Y. Feb. 7, 2007)......................................... 21

*Megna v. Biocomp Labs. Inc.*,
   166 F. Supp. 3d 493 (S.D.N.Y. 2016)............................................................................ 8

*N.Y. v. Grand River Enterprises Six Nations, Ltd.*,
   No. 14-CV-910, 2019 WL 516955 (W.D.N.Y. Feb. 11, 2019) ........................................ 25

*N.Y. v. Mountain Tobacco Co.*,
   55 F. Supp. 3d 301 (E.D.N.Y. 2014) ....................................................................... 20, 28

*O'Neil v. Ponzi*,
   No. 09-CV-0983, 2009 WL 3459482 (N.D.N.Y. Oct. 22, 2009) ..................................... 10

*PT United Can Co. v. Crown Cork & Seal Co.*,
   138 F.3d 65 (2d Cir. 1998)......................................................................................... 7, 14

*Red Earth LLC v. United States*,
   657 F.3d 138 (2d Cir. 2011)......................................................................................... 25

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993).................................................................................................... 23

*Related Companies, L.P. v. Ruthling*,
   No. 17-CV-4175, 2017 WL 6507759 (S.D.N.Y. Dec. 18, 2017) ..................................... 14

*Rosenheck v. Rieber*,
   932 F. Supp. 626 (S.D.N.Y. 1996) ............................................................................... 13

*Schwartzco Enterprises LLC v. TMH Mgmt., LLC*,
   60 F. Supp. 3d 331 (E.D.N.Y. 2014) ............................................................................ 20

*Scottrade, Inc. v. BroCo Investments, Inc.*,
   774 F. Supp. 2d 573 (S.D.N.Y. 2011).......................................................................... 18

*State of N.Y. v. Mountain Tobacco Co.*,
No. 12-CV-6276, 2016 WL 324970 (E.D.N.Y. Jan. 26, 2016) ....................................... 27

*State of N.Y. v. Mountain Tobacco Co.*,
No. 12-CV-6276, 2016 WL 3962992 (E.D.N.Y. July 21, 2016) ......................... 18, 25, 26

*Sunward Elecs., Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004) ......................................................................................... 7

*Tooker v. Guerrera*,
No. 15-CV-2430, 2016 WL 4367956 (E.D.N.Y. Aug. 15, 2016) ............................. 22, 24

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
303 F. Supp. 2d 432 (S.D.N.Y. 2004) .......................................................................... 23

*United States v. Carman*,
186 F. Supp. 3d 657 (E.D. Ky. 2016) ........................................................................... 26

## Statutes

15 U.S.C. § 375 *et seq.* ................................................................................... 7, 25, 27

18 U.S.C. § 1961 *et seq.* ............................................................................... 14, 21, 23

18 U.S.C. § 2341 *et seq.* ......................................................................... 7, 16, 17, 18

## Rules

C.P.L.R. § 302 ......................................................................................................... 8, 9

Fed. R. Civ. P. 8 ..................................................................................................... 6, 20

Fed. R. Civ. P. 12 .................................................................................................... 5, 6

## Other Authorities

Internal Revenue Service, Form 8300: Report of Cash Payments Over $10,000 Received in
Trade or Business (2014) ........................................................................................... 11

*Statements on Introduced Bills and Joint Resolutions*,
155 Cong. Rec. S5822-01 (2010) ................................................................................ 26

Statement by the Press Secretary on the Federal Aviation Administration Extension Act and the
Prevent All Cigarettes Trafficking Act,
2010 WL 1249836 (Mar. 31, 2010) ............................................................................. 26

Defendants Cigarettes Unlimited, L.C. ("Cigarettes Unlimited"), John and Anita Lash, Stephen and Mary Riley, Shana Biller, Margaret Clark, Candice Fox, Monique Pearson, Julius Peters-Brandon, Joanna Petties, Paula Sloan, Derrick Whiting, Jessica Whitehead, and Elizabeth Windham (collectively, the "Cigarettes Unlimited Defendants"), by and through the undersigned counsel, respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), to dismiss in part the Complaint filed by Plaintiff City of New York (the "City").

## PRELIMINARY STATEMENT

In this action, the City seeks tens of millions in dollars in damages and penalties from the Cigarettes Unlimited Defendants—a licensed cigarette retailer in Virginia and 14 individual residents of Virginia—arising from cigarette sales that occurred in Virginia over the course of three months in 2019. Each of the City's four claims rise and fall on its contention that the Cigarettes Unlimited Defendants knew the cigarettes sold in Virginia subsequently would be transported and sold by other parties into New York without observing New York's cigarette taxing and stamping requirements. The majority of the claims should be dismissed for two closely related reasons.

First, the City has failed to meet its burden of making a *prima facie* showing of personal jurisdiction over 13 of the 15 Cigarettes Unlimited Defendants. The City cannot establish jurisdiction under New York's long-arm statute because the Complaint is ultimately devoid of facts that would plausibly support the assertion that each Cigarettes Unlimited Defendant sold cigarettes knowing that some of them would be transported to New York for resale without applicable taxes being paid. Additionally, the City fails to allege extraordinary circumstances which would require the Court to invoke "ends of justice" jurisdiction.

Second, the City has failed to allege facts sufficient to state claims against each of the 15 Cigarettes Unlimited Defendants. The City's Complaint consists almost entirely of group pleading. In fact, only four of the 15 Cigarettes Unlimited Defendants are even mentioned by name in connection with any specific factual allegation. Of the remaining 11 undifferentiated Cigarettes Unlimited Defendants, the City does not allege that any of them sold a single cigarette, let alone 10,000 of them. As these deficiencies suggest, the City's attempt to expand the scope of CCTA and PACT Act liability to ordinary employees, beyond the plain meaning of the respective statutes, defies well-established canons of statutory interpretation.

Accordingly, the City's claims against the Cigarettes Unlimited Defendants under the CCTA and PACT Act should be dismissed and, along with them, the City's RICO and RICO conspiracy claims.

## FACTUAL ALLEGATIONS IN THE COMPLAINT[1]

Cigarettes Unlimited is a small retail cigarette company that is organized and headquartered in Virginia. Compl. ¶ 16. It operates three retail stores in Fredricksburg ("CU–Fredricksburg"), Stafford ("CU–Stafford"), and Dale City ("CU–Dale City"). Id. Cigarettes Unlimited purchases tobacco products in Virginia, stores the products in Virginia, sells them from its Virginia stores, and employs only Virginia residents. Id. ¶¶ 16–30, 55.

Mr. Lash and Mr. Reilly own Cigarettes Unlimited. Id. ¶¶ 17, 19, 52. Mr. Peters–Brandon manages CU–Dale City, Mr. Whiting manages CU–Stafford, and Ms. Sloan is employed at CU–Dale City. Id. ¶¶ 24, 27, 29. The Complaint does not specify at which location

---

[1]     Facts taken from the Complaint are presumed to be true only for purposes of this motion to dismiss.

the remaining Cigarettes Unlimited Defendants work or what their positions are. *Id*. ¶¶ 18, 20–23, 25–26, 28, 30, 52.

In order to legally sell cigarettes in Virginia, Cigarettes Unlimited is required to pay an excise tax of $3.40 per carton. Once the tax is paid, each cigarette carton is marked with a Virginia excise tax stamp, which serves as proof of payment. *Id*. ¶¶ 3–4. There is no dispute that Cigarettes Unlimited's cigarettes were properly taxed and stamped in Virginia. *Id*. ¶ 92.

In order to receive a similar stamp in New York City, a "stamping agent"—generally a wholesaler licensed by the State and City of New York—pre-pays the applicable cigarette taxes and affixes a joint New York State/New York City tax stamp to each package of cigarettes. *Id*. ¶¶ 46–47. The State and City of New York each impose a separate excise tax, the City's share of which is $15.00 per carton and the State's share is $43.50 per carton. *Id*. ¶¶ 44–45.

According to the City, some customers may try to take advantage of the inter-state tax disparity and purchase cigarettes in low-tax states, like Virginia, and re-sell them at a profit in high-tax states like New York, without acquiring the required tax stamps. *Id*. ¶ 51. The City alleges that all the Defendants in this case were involved in such a scheme. Co-defendants Debra Antico, Joseph Antico, Thomas Guglielmo, Meryle McGowan, Robert Schmidt, and Razik Sharki (collectively, the "Customer Defendants") allegedly purchased quantities of cigarettes from Cigarettes Unlimited in Virginia and transported them to New York City for later sale, without affixing the New York tax stamp. *Id*. ¶ 61. Co-defendants Debra and Joseph Antico, as well as co-defendant Schmidt, were arrested in New York for possession of under-taxed cigarettes in May and June 2019, respectively. *Id*. ¶¶ 61(a)(viii), (b)(ii), & (e)(viii).

After co-defendants Debra Antico and Robert Schmidt were arrested, they conveniently tried to shift attention from themselves to Cigarettes Unlimited, despite the fact that all of

3

Cigarette Unlimited's sales were intrastate, and their cigarettes were properly taxed and stamped in Virginia. Antico and Schmidt claimed that Mr. Lash was aware that the cigarettes they purchased were transported to New York City for re-sale. *Id.* ¶¶ 61(a)(viii) & (e)(viii). Similarly, Antico claimed that she "generally" placed her cigarette orders with Mr. Brandon-Peters or Ms. Sloan, *id.* ¶ 61(a), but, importantly, did not state that Mr. Brandon-Peters or Ms. Sloan knew the cigarettes would be unlawfully resold in New York.[2] In fact, after Ms. Sloan learned that Defendant Schmidt was arrested in New York, she sent a memorandum to Mr. Brandon-Peters cancelling subsequent orders from the Customer Defendants. *Id.* ¶ 67.

The City further group pleads that the remaining Cigarettes Unlimited Defendants—Anita Lash, Stephen and Mary Riley, Biller, Clark, Fox, Pearson, Petties, Whiting, Whitehead, and Windham (collectively, the "Grouped Defendants")—knew about, and participated in, the alleged smuggling scheme because: (1) the Customer Defendants called from New York City telephone numbers to place orders; (2) an unspecified subset of Cigarettes Unlimited employees were given cigarette orders to assemble, which turned out to be for the Customer Defendants; (3) an unspecified subset of Cigarettes Unlimited employees loaded cigarettes into the Customer Defendants' cars, for which they received a tip; (4) the Customer Defendants' cars bore New York license plates; and (5) an unspecified subset of Cigarettes Unlimited employees did not file a required Internal Revenue Service form relating to cash purchases. *Id.* ¶¶ 57–59, 64–66.[3] The

---

[2] In fact, the City alleges that the Customer Defendants were observed "on numerous occasions" in their vehicles "in Maryland, Delaware, New Jersey and New York City." Compl. ¶ 60. Observers of the Customer Defendants' movements therefore could have inferred that they were reselling the cigarettes in these states rather than in New York. Notably, the City does not allege that transporting the cigarettes to any of these other states for resale would have been unlawful.

[3] The City also alleges that Cigarettes Unlimited kept separate sales records for its

4

City does not allege that any of the Grouped Defendants actually observed the Customer Defendants' license plates, saw the Customer Defendants' telephone numbers and recognized their area codes as being associated with New York City, or otherwise knew the Customer Defendants were coming from or going to New York.

## ARGUMENT

## I.    LEGAL STANDARD

To establish personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted).  In order to survive a motion to dismiss for lack of personal jurisdiction, "a plaintiff must make a *prima facie* showing that jurisdiction exists."  *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) (citation omitted).  The plaintiff's *prima facie* showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *In re Terrorist Attacks on September 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013) (citation omitted).  In determining whether a plaintiff has met this burden, a court "will not draw argumentative inferences in the plaintiff's favor, nor must [a court] accept as true a legal conclusion couched as a factual allegation."  *Id*. (citations and internal quotation marks omitted).  Where a court is asked to rule on a combination of Rule 12 defenses, "it will pass on the jurisdictional issues before considering whether a claim is stated in the complaint."  *Backus v. U3 Advisors, Inc.*, No. 16-CV-8990, 2017 WL 3600430, at *10 (S.D.N.Y. Aug. 18, 2017) (citation omitted).

---

Customers Defendants, Compl. ¶ 62, but does not allege which individual Defendant, if any, maintained, viewed, or was responsible for such records.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must accept as true all well-pleaded factual allegations in the complaint, and "draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Federal Rule of Civil Procedure 8 requires that, at a minimum, "a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)).  "It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes" in order to satisfy Rule 8.  *Canon U.S.A., Inc. v. F & E Trading LLC*, No. 2:15-CV-6015, 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017).

## II.     THE CITY HAS FAILED TO ESTABLISH PERSONAL JURISDICTION OVER ALL THE CIGARETTES UNLIMITED DEFENDANTS

The City has not met its burden of making a *prima facie* showing that 13 of the 15 Cigarettes Unlimited Defendants are subject to personal jurisdiction in New York.

Federal courts engage in a two-step analysis to determine whether the exercise of personal jurisdiction is proper.  The court "looks to the law of the forum state to determine

whether personal jurisdiction will lie, or, if a federal statute specifically provides for national service of process, to that statute instead." *City of N.Y. v. Hatu*, No. 18-CV-848, ECF 69, at 12 (S.D.N.Y. Sept. 24, 2018) (citation and internal quotation marks omitted) (Engelmayer, J.) ("*Hatu I*")[4]. If the applicable statute does not provide for national service of process, and the defendant resides outside the forum state, "federal courts apply the forum state's personal jurisdiction rules." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (citation omitted). If there is a statutory basis for exercising personal jurisdiction, "the court must consider whether the . . . exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." *Hatu I*, at 12–13 (citation and internal quotation marks omitted).

The Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 *et seq*., and Prevent All Cigarette Trafficking Act (the "PACT Act"), 15 U.S.C. § 375 *et seq.*, do not provide for national service of process. *Id.* at 13. By contrast, the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq*., "permit[s] nationwide service of process, so as to give the court jurisdiction over the individual defendants" where: (1) "personal jurisdiction based on minimum contacts is established as to at least one defendant" and (2) a showing is made "that the 'ends of justice' so require" jurisdiction in a court foreign to some of the RICO defendants. *PT United Can Co. v. Crown Cork & Seal Co*., 138 F.3d 65, 70–71 (2d Cir. 1998) (citing 18 U.S.C. § 1965(b)).

---

[4] A copy of Judge Engelmayer's unpublished decision is attached as Exhibit 1 to the Declaration of Alexandra Elenowitz-Hess.

## A.  The CCTA and PACT Act Claims

New York's long-arm statute, New York Civil Practice Law and Rules ("C.P.L.R.") § 302(a), governs the CCTA and PACT Act claims.  *Hatu I*, at 14–15.  Under the long-arm statute, a court may exercise personal jurisdiction over a non-domiciliary in one of three ways.  First, under Section 302(a)(1), a court may exercise personal jurisdiction over a non-domiciliary who (1) transacts business in New York State in such a way that it constitutes "purposeful activity" and (2) there is "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."  *Megna v. Biocomp Labs. Inc.*, 166 F. Supp. 3d 493, 497 (S.D.N.Y. 2016) (citations and internal quotation marks omitted).  Purposeful activity is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Id.*  To determine if this standard has been met, courts look to the "totality [of the] defendant's interactions with, and activities within, the state, and their relation to the matter that gives rise to the lawsuit."  *Id.* at 498.

Second, under Section 302(a)(2), a court may exercise personal jurisdiction over a non-domiciliary who commits a tortious act within the state. *Id.* at 499.

Third and finally,  pursuant to Section 302(a)(3), a court may exercise personal jurisdiction over a non-domiciliary who commits a tortious act outside of the state causing injury to person or property within the state "if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  *Id.* (quoting N.Y. C.P.L.R. § 302(a)(3)).

## 1. The City Has Not Established Jurisdiction Over the Grouped Defendants

The City has not established personal jurisdiction under any of these provisions as to the Grouped Defendants.  In order for this Court to exercise personal jurisdiction, C.P.L.R. § 302(a) requires that the Grouped Defendants either "set foot in New York or negotiated with New York parties" in connection with the alleged cigarette enterprise—*i.e.*, the City must prove that the Grouped Defendants "knew that any of the cigarettes . . . sold were destined for resale in New York." *Hatu I*, at 15–22.  Here, the Complaint fails to plausibly allege that the Grouped Defendants knew of any activity in New York, whether for purposes of C.P.L.R. §§ 302(a)(1), (a)(2), or (a)(3).

Aside from the City's wholly conclusory allegations, the City relies on the following allegations to support the inference the Grouped Defendants knew the cigarettes would be resold in New York:

- "The [Customer Defendants] telephone their orders to Cigarettes Unlimited, from telephone numbers identifiable as having New York City area codes, typically on the same day of the week.  The cigarette orders are then passed internally to Cigarettes Unlimited's employees.  The employees assemble the order for a particular [Customer Defendant] and set the order aside in advance of the [Customer Defendant's] arrival, also typically on the same day each week."  Compl. ¶ 57.

- "Cigarettes Unlimited's employees frequently assist in loading the purchases into the [Customer Defendants'] vehicles, which bear New York plates."  *Id.* ¶ 59.

- "Cigarettes Unlimited maintains separate spreadsheets for [the Customer Defendants] on which it records its sales to them."  *Id.* ¶ 62.

- "[T]he Cigarettes Unlimited Defendants rarely or never file" Internal Revenue Service ("IRS") Form 8300, which is required for transactions "in which a business receives more than $10,000 in cash from one buyer as a result of a single transaction or two or more related transactions."  *Id.* ¶¶ 64–65; *see also id.* ¶ 58.

- "Certain Cigarettes Unlimited Defendants load cases of cigarettes purchased by the [Customer Defendants] into the [Customer Defendants'] vehicles, for those Cigarettes Unlimited Defendants receive payments of $500 over and above their salaries." *Id.* ¶ 66.

Even "stacking this series of weak inferences together," the allegations cannot support the inference of the Grouped Defendants' knowledge. *Hatu I*, at 22.

First, these allegations impermissibly group plead scienter. "Group pleading . . . does not [] transitively convey scienter." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 406 (S.D.N.Y. 2010); *see also In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009). The law "requires" that the plaintiff "spell out in . . . detail . . . how each [] Defendant individually participated in the wrongs alleged." *Franzone v. City of N.Y.*, No. 13-CV-5282, 2015 WL 2139121, at *10 (E.D.N.Y. May 4, 2015).

Second, the only allegations that theoretically connect the Grouped Defendants to "cigarette bootlegging" are that: (1) unspecified "Cigarettes Unlimited[] employees" assembled orders for the Customer Defendants, Compl. ¶ 57; (2) unspecified "[c]ertain Cigarettes Unlimited Defendants" loaded cigarettes into the Customer Defendants' vehicles," *id.* ¶ 66; (3) unidentified "Cigarettes Unlimited Defendants" did not file IRS Form 8300s, *id.* ¶¶ 64–65; and (4) "Cigarettes Unlimited" maintains separate financial spreadsheets, *id.* ¶ 62. These "unsubstantiated and conclusory allegations that certain named and unnamed defendants participated in certain enterprises and took actions at unspecified times and places are insufficient" to establish the Grouped Defendants' knowledge. *O'Neil v. Ponzi*, No. 09-CV-0983, 2009 WL 3459482, at *3 (N.D.N.Y. Oct. 22, 2009) (citations and internal quotation marks omitted).

For example, with respect to the assertion that "[t]he Cigarettes Unlimited Defendants rarely or never file [IRS] Form 8300s," Compl. ¶ 65, the Complaint does not allege which of the

10

"Cigarettes Unlimited Defendants" are required, or authorized, to do so. *See* INTERNAL

REVENUE SERVICE, *Form 8300: Report of Cash Payments Over $10,000 Received in a*

*Trade or Business* (2014), https://www.irs.gov/pub/irs-pdf/f8300.pdf (stating that Form 8300

"must be signed by an individual who has been authorized to do so for the business that received

the cash").[5]  This is similarly true of the City's allegation regarding the financial spreadsheets, an

allegation, which on its face, appears to relate only to Defendant Cigarettes Unlimited and not to

any of the individual Defendants. *See* Compl. ¶ 62.

Finally, even if the Court finds that the Grouped Defendants knew they were participating

in the sale of under-taxed cigarettes, there are insufficient allegations as to whether the Grouped

Defendants could have known that any under-taxed cigarettes were destined for *New York*. *Hatu*

*I*, at 24.  Only two of the allegations relate to New York: (1) that the Customer Defendants

telephoned their orders "from telephone numbers identifiable as having New York City area

codes" and (2) that the Customer Defendants' vehicles had New York license plates.  Compl. ¶¶

57, 59.  Upon examination, none of these averments support a plausible inference that the

Grouped Defendants violated the CCTA.

The Complaint does not specify that any of *these* Defendants actually received the calls.

To the contrary, the Complaint states that the cigarette orders were only "passed internally to

Cigarettes Unlimited's employees" from "Cigarettes Unlimited."  *Id.* ¶ 57.  Nor has the City

alleged that the Customer Defendants' telephone numbers displayed on Cigarettes Unlimited's

---

[5]      The Court may consider IRS Form 8300 in connection with the instant motion because it
is referenced repeatedly in the Complaint.  Compl. ¶¶ 58, 64–65.  *See L-7 Designs, Inc. v. Old
Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("A complaint is deemed to include any written
instrument attached to it as an exhibit, materials incorporated in it by reference, and documents
that, although not incorporated by reference, are 'integral' to the complaint.") (citation and
alterations omitted).

telephones when orders were placed or, even if they did, that the Grouped Defendants noticed them and were sufficiently familiar with out-of-state area codes to infer that the calls were coming from New York City.

Moreover, answering a call from a New York number or loading cigarettes into a car with New York license plates is inadequate to support an inference of knowledge. Judge Paul A. Engelmayer of the Southern District of New York recently found such allegations by the City to be deficient:

> [T]he City appears to rely on two unstated assumptions: first, that the [] defendants knew that the vehicles had out-of-state license plates; and, second, that vehicles with out-of-state plates are more likely to deliver goods out of state. These are not matters of common-sense intuition. Whether wholesalers typically examine the license plates of delivery vehicles and whether out-of-state license plates should trigger suspicion of illegal smuggling turns on facts that are simply not alleged here. And further, even if they were, the [] complaint does not allege, and the City has not explained, why these vehicles—even ones with New Jersey plates—would be particularly likely to travel to New York as opposed to some other out-of-state forum.

*Hatu I*, at 17.

This reasoning applies with equal force here. Even assuming the Grouped Defendants saw and read the Customer Defendants' license plates, there was no reason for the Grouped Defendants to know that the Customer Defendants would be particularly likely to travel to New York. As the City itself acknowledges, the Customer Defendants "have on numerous occasions been observed in their vehicles in Maryland, Delaware, New Jersey and New York City." Compl. ¶ 60. Therefore, even if the allegations did support an inference of illegal distribution outside of Virginia, "they still would not support the inference necessary here: that the cigarettes were intended for New York." *Hatu I*, at 18.

## 2. The City Has Not Established Jurisdiction Over Defendants Sloan and Peters-Brandon

The City attempts more particularized allegations concerning Ms. Sloan and Mr. Peters-Brandon; however, they do not establish personal jurisdiction. Specifically, the City alleges that: (1) Defendant Debra Antico "generally place[d] her orders for cigarettes in telephone calls" with Mr. Peters-Brandon and Ms. Sloan; and (2) Ms. Sloan wrote an undated memorandum to Mr. Peters-Brandon and two Post-it notes concerning the arrest of Defendant Schmidt. Compl. ¶¶ 61(a), 67–69. These additional facts do not satisfy the requirement that either Defendant knew that the cigarettes "were destined for illegal distribution in New York." *Hatu I*, at 6, 24.

There are no assertions that Ms. Sloan or Mr. Peters-Brandon knew that Defendant Antico's orders were being transported to New York. Even accepting as true that Defendant Antico placed some orders for cigarettes with Ms. Sloan and Mr. Peters-Brandon, this fact does not lend itself to the inference, as described *supra*, that Defendants knew the cigarettes would be resold in New York. The undated memorandum does nothing to obviate this deficiency. According to the City, Defendant Schmidt was arrested on June 11, 2019. Compl. ¶ 61(e)(viii). Even assuming the quoted memorandum alerted Ms. Sloan and Mr. Peters-Brandon that the cigarettes were being shipped to New York—although there is nothing to infer that Mr. Peters-Brandon read or acted on said memo—the Complaint does not allege that any sales of under-taxed cigarettes occurred after June 11, 2019.[6] *See id.* ¶ 61. To the contrary, the memorandum and Post-it explicitly discuss *cancelling* orders in light of Defendant Schmidt's arrest. *Id.* ¶¶ 67–

---

[6]     Moreover, the communications allegedly written by Ms. Sloan appear to be notes that she took on calls she received from Defendant Schmidt and someone named Mary. Compl. ¶¶ 67–69. It is not evident that passing along such messages, even if they contained information about actions taken by law enforcement, is sufficient to establish knowledge or intent. *See Rosenheck v. Rieber*, 932 F. Supp. 626, 628 (S.D.N.Y. 1996) (dismissing RICO claims because allegation that defendant sent letters did not support inference that she had requisite intent).

68.  The only reasonable inference is that upon learning the cigarettes were being transported to New York, Ms. Sloan and Mr. Peters-Brandon stopped accepting further orders from the Customer Defendants.  The failure to adequately plead knowledge that the cigarettes were destined for New York is fatal to the City's assertion of jurisdiction over Defendants Sloan and Peters-Brandon.

### B.  RICO Claims

#### 1.  The City Has Not Established Jurisdiction Over Any of the Cigarettes Unlimited Defendants on Its RICO Claims

The RICO Act permits a court to exercise personal jurisdiction over foreign RICO defendants where: (1) "personal jurisdiction based on minimum contacts is established as to at least one defendant" and (2) a showing is made "that the 'ends of justice' so require" jurisdiction in a court foreign to some of the RICO defendants.  *PT United Can Co*., 138 F.3d at 70–71 (citing 18 U.S.C. § 1965(b)).  Here, although the City has met the first element, it has failed to demonstrate the second.

The "ends of justice" limitation on the prosecution of a civil RICO action in a court foreign to some defendants reflects Congress's "preference in § 1965 to avoid, where possible, haling defendants into far flung fora."  *Id*. at 72.  Thus, "it is generally accepted that 'ends of justice' jurisdiction is authorized only where the RICO claim could not otherwise be tried in a single action because no district court could exercise personal jurisdiction over all of the defendants."  *Related Companies, L.P. v. Ruthling*, No. 17-CV-4175, 2017 WL 6507759, at *14 (S.D.N.Y. Dec. 18, 2017) (citation and internal quotation marks omitted) (collecting cases); *see also Fernando v. Fernando*, No. 09-CV-1390, 2010 WL 3119729, at *10 (E.D.N.Y. Aug. 5, 2010) (collecting cases).

14

Here, there is no reason why this action could not have been brought in Virginia, where all parties have minimum contacts and the court would have personal jurisdiction.  *See DeSantis v. Hafner Creations, Inc*., 949 F. Supp. 419, 423–24 (E.D. Va. 1996) (finding that under Virginia Code § 8.01–328.1(A)(1), the exercise of personal jurisdiction is proper where "the asserted cause of action stems from a non-resident defendant transacting any business in th[e] Commonwealth") (citation and internal quotation marks omitted).  Therefore, Plaintiff's RICO claims against all the Cigarettes Unlimited Defendants should be dismissed for want of personal jurisdiction.

### 2. Jurisdiction Over the Grouped Defendants, Defendant Sloan, and Defendant Peters-Brandon on the RICO Claims Would Violate Due Process

Even if the Court finds that the City has satisfied both elements of RICO's statutory basis to exercise personal jurisdiction, the City has not satisfied the constitutional requirement of due process as to the Grouped Defendants, Ms. Sloan, and Mr. Peters-Brandon.  "There are two parts to the due process test for personal jurisdiction: the 'minimum contacts' inquiry and the 'reasonableness' inquiry."  *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 347 (S.D.N.Y. 2015).  The minimum contacts inquiry "requires that the Court determine whether a defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction over the defendant."  *Id.*  In determining whether minimum contacts exist, courts "must examine the quality and nature of the contacts under a totality of circumstances test, to determine whether the defendant has purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws . . . such that [the defendant] should reasonably anticipate being haled into court there."  *Id.* (citation and internal quotation marks omitted).

15

For the reasons stated *supra* Section II(A)(1)&(2), the City fails to allege that these

Defendants knew of the scheme or should have known that their allegedly tortious actions would

have had consequences in New York.  Since the City has failed to allege purposeful availment to

satisfy the minimum contacts test, the Court does not have personal jurisdiction over these

Defendants as to the RICO claims.[7]

## III.    THE COMPLAINT FAILS TO STATE A CCTA CLAIM

The City's claim under the CCTA should be dismissed for failure to state a claim.  The

CCTA makes it "unlawful for any person knowingly to ship, transport, receive, possess, sell,

distribute, or purchase contraband cigarettes."  18 U.S.C. § 2342(a).  "Contraband cigarettes" are

defined by the CCTA as "a quantity in excess of 10,000 cigarettes, which bear no evidence of the

payment of applicable State or local cigarette taxes in the State or locality where such cigarettes

are found."  *Id.* § 2341(2).  To prevail under the CCTA, the City must show that each defendant

"(1) knowingly shipped, transported, received, [sold, distributed, purchased], or possessed (2)

more than 10,000 cigarettes (3) that did not bear State or City tax stamps (4) under circumstances

where the law required the cigarettes to bear such stamps.  *City of N.Y. v. FedEx Ground*

*Package Sys., Inc.*, 351 F. Supp. 3d 456, 473 (S.D.N.Y. 2018) (citing 18 U.S.C. § 2342).

### A.    The CCTA Claims Against All Cigarettes Unlimited Defendants Should Be Dismissed Because the City Does Not Allege That the Cigarettes Were "Contraband" Under the CCTA

The Cigarettes Unlimited Defendants do not dispute that a person who knowingly helps

transport or sell contraband cigarettes violates the CCTA; but here, Plaintiff fails to adequately

---

[7]      Personal jurisdiction over these 13 Cigarettes Unlimited Defendants would also fail the
"reasonableness" test because of the substantial burden it would place on these individuals, all of
whom are Virginia residents.  *See generally Bristol-Myers Squibb Co. v. Superior Court of Cal.,
S.F. Cty.*, 137 S. Ct. 1773, 1776 (2017) ("The primary concern in assessing personal jurisdiction
is the burden on the defendant.") (citation and internal quotation marks omitted).

allege that the cigarettes at issue in this case were actually contraband.  What the CCTA
criminalizes is not the sale of cigarettes that later become "contraband"; it criminalizes
possessing or engaging in transactions with cigarettes that *are* "contraband."  Under the CCTA,
what makes a cigarette "contraband" is the fact that it does not have a stamp required in the
jurisdiction "where such cigarettes are found."  18 U.S.C. § 2341(2).  Therefore, to determine if a
defendant violated the CCTA, a court must determine if they "shipped, transported, received,
possessed, sold, distributed or purchased cigarettes" that lacked a tax stamp while the cigarettes
were located in a jurisdiction that required a tax stamp to be affixed to them.

The Complaint alleges that the Cigarettes Unlimited Defendants possessed and
distributed cigarettes in Virginia.  Compl. ¶ 4.  Since only a Virginia cigarette stamp was
required to be affixed to the cigarettes while they were in Virginia, and it is undisputed that the
cigarettes possessed a Virginia cigarette stamp, *id.*, when the Cigarettes Unlimited Defendants
possessed and distributed cigarettes to the Customer Defendants, the cigarettes were not
"contraband" under the CCTA.

While this should be the end of the inquiry, the City has previously sought (in at least two
instances, successfully) to expand the scope of CCTA liability beyond the plain meaning of the
statute by arguing that a defendant can be liable for violating the CCTA even if the cigarettes he
sold, shipped, or transported were not contraband at the time of the sale or shipment, if "the
cigarettes became contraband as a result of the sale and shipment."  *City of N.Y. v. Chavez*, 944
F. Supp. 2d 260, 265 (S.D.N.Y. 2013) (citation and emphasis omitted); *see also City of N.Y. v.
Hatu*, No. 18-CV-848, 2019 WL 2325902, at *11–12 (S.D.N.Y. May 31, 2019) ("*Hatu II*").

This interpretation of the statute, however, is at odds with the plain wording of the CCTA
which makes it a crime to possess or engage in transactions with cigarettes that lack a tax stamp

17

required in the jurisdiction *where the cigarettes are located*.  18 U.S.C. § 2341(2).  It is a

fundamental tenet of statutory interpretation "that courts must presume that a legislature says in a

statute what it means and means in a statute what it says there."  *City of N.Y. v. Gordon*, 1 F.

Supp. 3d 94, 103 (S.D.N.Y. 2013) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461–62

(2002)).  Thus, if a statute's text is unambiguous, its "language must ordinarily be regarded as

conclusive."  *Id.* (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102,

108 (1980)); *see also State of N.Y. v. Mountain Tobacco Co.*, No. 12-CV-6276, 2016 WL

3962992, at *16 (E.D.N.Y. July 21, 2016) (same).  The text of the CCTA is unambiguous:  Put

simply, a defendant cannot be liable for violating the CCTA where the cigarettes were not

contraband at the time of sale.

      Even assuming the language of the CCTA is ambiguous, the City's broad interpretation

contravenes the rule of lenity which requires statutes carrying criminal penalties, such as the

CCTA, to have any ambiguity resolved in favor of the defendant.  *Scottrade, Inc. v. BroCo*

*Investments, Inc.*, 774 F. Supp. 2d 573, 584 (S.D.N.Y. 2011) ("[W]hen a statute has both civil

and criminal application, this rule of lenity must be applied consistently to both.") (citing *Leocal*

*v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004).

**B.  The CCTA Claims Against the Grouped Defendants Should Be Dismissed Because the City Fails to Allege Other Requisite Elements of CCTA Violations**

**1.  The City Fails to Make Any Particularized Allegations That the Grouped Defendants Sold, Shipped, Transported, Received, Possessed, Distributed, or Purchased Under-Taxed Cigarettes**

      The City has not alleged that any of the Grouped Defendants sold, or otherwise

participated in the distribution of, under-taxed cigarettes.  While the Complaint lists twenty

alleged sales, none identify any of the Grouped Defendants as parties to the transactions.  *See*

Compl. ¶ 61.  Instead, each example simply states that the Customer Defendants "purchased

[cigarettes] from CU–Dale City." *Id.* This cannot suffice where the Complaint does not allege at which Cigarettes Unlimited store most of the Grouped Defendants work. *Id.* ¶¶ 18–23, 25–26, 28, 30, 52 (providing no location of employment for Ms. Lash, Mr. Riley, Ms. Riley, Ms. Biller, Ms. Clark, Ms. Fox, Ms. Pearson, Ms. Petties, Mr. Whitehead, and Ms. Windham). The one Grouped Defendant for whom a retail location is given, Mr. Whiting, is the manager of Cigarettes Unlimited's store in Stafford. *Id.* ¶ 29. Therefore, nowhere—other than in the "utterly conclusory" allegation that all three Cigarette Unlimited locations sold under-taxed cigarettes, *id.* ¶ 78—does the Complaint describe the Grouped Defendants "commit[ting] the offenses, much less how." *Franzone*, 2015 WL 2139121, at *9. Therefore, the CCTA claims against the Grouped Defendants should be dismissed for this reason alone.

### 2. The City Does Not Allege That the Grouped Defendants Sold More Than 10,000 Cigarettes

Even if the City has alleged that Defendants sold under-taxed cigarettes, it has not sufficiently alleged that each Grouped Defendant sold more than 10,000 such cigarettes, as required under the CCTA. The City's cause of action under the CCTA does not accrue until Defendants "knowingly [sell] [their] 10,001st unstamped cigarette." *FedEx*, 351 F. Supp. 3d at 477. But as discussed above, the Complaint does not name the Grouped Defendants as parties to any of the alleged sales. Here, the City neither adequately alleges that the Grouped Defendants sold more than 10,000 unstamped cigarettes nor that they did so knowingly.

### 3. The City Fails to Allege Scienter as to the Grouped Defendants

To commit the predicate act of violating the CCTA, the City must sufficiently allege that each Defendant knew that "they were taking [part] in a cigarette bootlegging enterprise" and that the cigarettes "were destined for illegal distribution in New York." *Hatu I*, at 6, 24. The City's Complaint fails on both counts for the reasons stated in Section II(A)(1).

### 4. The City's Complaint Violates Rule 8 of the Federal Rules of Civil Procedure as to the Grouped Defendants

The City lumps the Grouped Defendants together without distinction, thereby failing to give each defendant "fair notice of the claims" against them. *Franzone*, 2015 WL 2139121, at *6. As discussed, the Complaint does not allege a single particularized fact connecting the Grouped Defendants to the alleged sale of unstamped cigarettes in New York, but rather asserts only conclusions about unspecified "Cigarettes Unlimited Defendants" or "Cigarettes Unlimited's employees." In fact, other than to identify the Grouped Defendants as employees of Cigarettes Unlimited, the City fails to mention any of the Grouped Defendants by name anywhere in the Complaint. *See* Compl. ¶¶ 18–23, 25–26, 28–30, 52. This type of group pleading "is inadequate to state a claim" under Rule 8. *N.Y. v. Mountain Tobacco Co.*, 55 F. Supp. 3d 301, 315 (E.D.N.Y. 2014) (citation omitted) (collecting cases); *see also Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 356 (E.D.N.Y. 2014) ("[T]he Plaintiffs cannot hide behind 'group pleading' of the sort . . . that fails to distinguish between the defendants."). By "lumping" the Grouped Defendants together in each claim and providing "no factual basis to distinguish their conduct," the City's Complaint fails to satisfy this minimum pleading standard and should be dismissed. *Atuahene*, 10 F. App'x at 34.

### C. The CCTA Claims Against Defendants Sloan and Peters-Brandon Should Be Dismissed Because the City Fails to Plausibly Allege They Knew the Cigarettes Were Destined for Resale in New York

For the reasons stated in Section II(A)(2), the Complaint does not satisfy the requirement that either Ms. Sloan or Mr. Peters-Brandon knew that the cigarettes were destined for distribution in New York.

# IV. THE COMPLAINT FAILS TO STATE A SUBSTANTIVE RICO CLAIM

RICO makes it unlawful for a person to "conduct or participate in the conduct of the affairs of the enterprise" through a pattern of racketeering activity. 18 U.S.C. § 1962(c). To establish substantive RICO liability, "a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). As relevant here, "racketeering activity" includes trafficking in contraband cigarettes in violation of the CCTA. 18 U.S.C. § 1961(1). A pattern of racketeering activity is defined as "at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." *Id.* § 1961(5). Each element "must be met as to each individual defendant." *M'Baye v. New Jersey Sports Production, Inc.*, No. 06-CV-3439, 2007 WL 431881, at *6 (S.D.N.Y. Feb. 7, 2007).

## A. The Substantive RICO Claims Against All Cigarettes Unlimited Defendants Should Be Dismissed

For the reasons set forth above in Section III(A), the cigarettes at issue were not "contraband" pursuant to the CCTA. The Court should therefore dismiss the RICO claims because the City has not adequately pled the existence of predicate acts. *Hatu I*, at 26.

## B. The Substantive RICO Claims Against the Grouped Defendants Should Be Dismissed

The City's substantive RICO claims fail as to the Grouped Defendants for three additional reasons.

First, the City's claim fails because it has not adequately pled the existence of two or more predicate acts constituting a pattern of racketeering activity. As discussed *supra*, Plaintiff does not sufficiently allege one CCTA violation against the Grouped Defendants, so it certainly

21

cannot allege two, as required under the statute.  *See, e.g.*, *id.* (holding the City's allegations

"could not [] support[] liability under the CCTA or RICO" where they failed to adequately plead

scienter).

Second, as discussed *supra* Section III(B)(4), the City "rel[ies] impermissibly on group

pleading to allege the existence of predicate acts underpinning [its] RICO claim."  *In re Platinum*

*& Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 602 (S.D.N.Y. 2011).  Therefore, the

City's substantive RICO claim must be dismissed "for failure to adequately plead predicate

acts."  *Id.*; *see also Tooker v. Guerrera*, No. 15-CV-2430, 2016 WL 4367956, at *10 (E.D.N.Y.

Aug. 15, 2016) ("The Complaint also contains a series of allegations about the conduct of

'defendants' without specifying which particular Defendants were involved in such action. . . . It

is impossible for the Court to discern which defendants these allegations are asserted against in

the absence of any such specification.") (citations omitted); *Gross v. Waywell*, 628 F. Supp. 2d

475, 495 (S.D.N.Y. 2009) ("The particulars of the[] transactions are important not only to

establish whether substantively each predicate act alleged constituted an offense within the

meaning of the underlying . . . statutes, but also whether, as to each defendant, the number,

duration and timing of such offenses would be sufficient to satisfy the continuity element of the

RICO pattern of racketeering requirement, as well as the statute of limitations."); *Crab House of*

*Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d 193, 209 (E.D.N.Y. 2006) (granting motion

to dismiss against defendant where the allegations were "sweeping" and made "no attempt to

distinguish [him] from the other Individual Defendants, and attribute[d] no specific conduct to

him").

Finally, the City has failed to demonstrate that the Grouped Defendants "conduct[ed]" or

"participate[d] in the conduct of the affairs of the enterprise."  In *Reves v. Ernst & Young*, the

22

United States Supreme Court significantly limited the reach of section 1962(c) by holding that

liability for "conducting" or "participating in the conduct of" the affairs of an enterprise is

limited to persons who exercise a managerial role in the enterprise's affairs. 507 U.S. 170, 178–

79 (1993). Although the City supplies a laundry list of conclusory allegations that the

"Cigarettes Unlimited Defendants'" participated in the management and operation of the

enterprise, there are no such particularized allegations against the Grouped Defendants. *See,

e.g.,* Compl. ¶ 89. Instead, the City claims that some unknown subset of Cigarettes Unlimited

employees assembled telephone orders and loaded purchases into customers' cars. *Id.* ¶¶ 57–58.

These actions, while potentially providing "goods and services that ultimately benefit the

enterprise," are not enough to satisfy RICO's operation and management test. *United States Fire

Ins. Co. v. United Limousine Serv., Inc*., 303 F. Supp. 2d 432, 451–52 (S.D.N.Y. 2004) (citation

omitted); *see also Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 137 (E.D.N.Y. 2010) (same).

"At the end of the day, . . . 'the simple taking of directions and performance of tasks that are

'necessary or helpful' to the enterprise, without more, is insufficient to bring a defendant within

the scope of § 1962(c).'" *Crab House of Douglaston, Inc.*, 418 F. Supp. 2d at 207 (quoting

*United States v. Diaz*, 176 F.3d 52, 92 (2d Cir. 1999)). In the instant case, the City's allegations

are largely conclusory and the few factual allegations demonstrate that the Grouped Defendants

were "merely tak[ing] directions," not managing the affairs of the supposed enterprise. *United

States Fire Ins. Co.*, 303 F. Supp. 2d at 451–52.[8]

---

[8] This deficiency is not cured by Plaintiff's allegations that Mr. Whiting, and potentially
other Grouped Defendants, were in supervisory positions within Cigarettes Unlimited. The City
must "distinguish [a Grouped Defendant] in [their] legitimate capacity as a supervisor within
[Cigarettes Unlimited], and [a Grouped Defendant] in [their] illegitimate capacity as a director or
manager *of the enterprise*." *Crab House of Douglaston, Inc.*, 418 F. Supp. 2d at 208 (emphasis
added). In other words, where a Grouped Defendant's alleged official position at Cigarettes

**C. The Substantive RICO Claims Against Defendants Sloan and Peters-Brandon Should Be Dismissed**

The City's RICO claim fails as to Mr. Peters-Brandon and Ms. Sloan because the City has not adequately pled the existence of two or more predicate acts constituting a pattern of racketeering activity. *Hatu I*, at 26. As discussed *supra*, the City does not sufficiently allege that Mr. Peters-Brandon or Ms. Sloan had the requisite knowledge to commit the predicate act of violating the CCTA.

## V. THE COMPLAINT FAILS TO STATE A RICO CONSPIRACY CLAIM

To state a claim for RICO conspiracy, a plaintiff must state facts alleging: "(1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; [and] (3) that the co-conspirator knowingly participated in the scheme." *Fuji Photo Film, U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 312 (S.D.N.Y. 2009) (citation omitted). For the multiple reasons set forth in Section IV, *supra*, the City has failed to plead a substantive RICO claim against any of the Cigarettes Unlimited Defendants. This failure is also "fatal to [its] RICO conspiracy claim." *Franzone*, 2015 WL 2139121, at *10 (quoting *D. Penguin Bros., Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 669 (2d Cir. 2014)); *Tooker*, 2016 WL 4367956, at *11 (same).

## VI. THE COMPLAINT FAILS TO STATE A PACT ACT CLAIM

The PACT Act provides that "[a]ny person who sells, transfers, or ships for profit cigarettes or smokeless tobacco in [1] interstate commerce, whereby such cigarettes or smokeless tobacco are shipped [2] into a State [or] locality . . . taxing the sale or use of cigarettes or smokeless tobacco, or who advertises or offers cigarettes or smokeless tobacco for such a sale,

---

Unlimited was that of supervisor, "the fact that [they] directly supervised [someone] is true as a matter of rote, and hardly conjures the specter of enterprise-conductor." *Id.*

transfer, or shipment, shall" comply with certain filing and reporting requirements.  *N.Y. v. Grand River Enterprises Six Nations, Ltd.*, No. 14-CV-910, 2019 WL 516955, at *2 (W.D.N.Y. Feb. 11, 2019) (emphasis omitted) (quoting 15 U.S.C. § 376(a)).[9]

Only "delivery sales" are subject to the PACT Act's requirements.  A "delivery sale" occurs when "the buyer and seller are not in each other's physical presence at the time the buyer requests or receives the cigarettes."  *Red Earth LLC v. United States*, 657 F.3d 138, 141 (2d Cir. 2011) (citing 15 U.S.C. § 375(5)).  A person who makes a delivery sale is known as a "delivery seller."  15 U.S.C. §§ 375(5) & (6).  Here, the City alleges that Cigarettes Unlimited's sales of cigarettes to the Customer Defendants were "delivery sales" because the orders were placed by telephone.  Compl. ¶ 100.

### A.  The Grouped Defendants, Peters-Brandon, and Sloan Did Not Sell or Ship Cigarettes in Interstate Commerce

For the reasons substantially stated in Section III(A), the Grouped Defendants, Peters-Brandon, and Sloan did not sell or ship cigarettes "into a State . . . taxing the sale or use of cigarettes," *i.e.* New York, as required to establish liability under Section 376 of the PACT Act. *See Mountain Tobacco Co.,* 2016 WL 3962992, at *7–8 (holding that, in order to violate Section 376 of the PACT Act, a defendant must ship cigarettes in "interstate commerce," which involves "commerce between a State and any place outside the State"); *but see Hatu II*, 2019 WL 2325902, at *15.

---

[9]     *See Hatu II*, 2019 WL 2325902, at *15 ("The PACT Act prohibits a wide array of conduct, including delivering cigarettes into a state or locality without (1) first filing a statement with the Attorney General of the United States and the tax administrators of the state; (2) filing monthly reports of all cigarette shipments with the tax administrators of the state; (3) complying with state and local laws governing the sale of cigarettes; (4) complying with certain shipping and packaging requirements; and (5) using a method of shipping that requires the person who receives the delivery to provide age verification.").

### B.  Defendants Anita Lash, Mary Riley, Biller, Clark, Fox, Pearson, Peters-Brandon, Petties, Sloan, Whiting, Whitehead, and Windham Are Not "Delivery Sellers"

The City's claims under the PACT Act against all the Cigarettes Unlimited Defendants other than Cigarettes Unlimited and its two owners, John Lash and Stephen Riley, should be dismissed.  There is no case law to support classifying Anita Lash, Mary Riley, Biller, Clark, Fox, Pearson, Peters-Brandon, Petties, Sloan, Whiting, Whitehead, and Windham as "delivery sellers" under the PACT Act.  Ordinary employees have never been held liable as "delivery sellers"—only business entities and, occasionally, their owners.[10]  This is consistent with the very purpose of the PACT Act, which is to combat "[i]llegal tobacco vendors."  *Statements on Introduced Bills and Joint Resolutions*, 155 Cong. Rec. S5822-01, S5853 (2010) (statement of Sen. Herb Kohl, Vice Chairman, S. Comm. on the Judiciary); *see also* Press Release, The White House, Statement by the Press Secretary on the Federal Aviation Administration Extension Act and the Prevent All Cigarettes Trafficking Act, 2010 WL 1249836 (Mar. 31, 2010) (stating that the PACT Act imposes requirements on "*entities* that sell or ship cigarettes in interstate commerce") (emphasis added).

---

[10]     *See, e.g.*, *Hatu II*, 2019 WL 2325902, at *15 (suing entity and its principal); *Mountain Tobacco Co.*, 2016 WL 3962992, at *7–8 (noting that the PACT Act applies to "any *entity* shipping cigarette") (emphasis added); *United States v. Carman*, 186 F. Supp. 3d 657, 662 (E.D. Ky. 2016) (finding defendant-owners liable under the PACT Act where they "created companies to ship cigarettes to out-of-state customers without filing the required [PACT] Act reports"), *aff'd sub nom. United States v. Maddux*, 917 F.3d 437 (6th Cir. 2019); *City of N.Y. v. Wolfpack Tobacco*, No. 13-CV-1889, 2013 WL 5312542, at *3 (S.D.N.Y. Sept. 9, 2013) (suing entities and individuals who "own and operate" said entities); *Gordon v. Holder*, 826 F. Supp. 2d 279, 287 (D.D.C. 2011) (noting that defendant was a "delivery seller" because he "own[ed] a store and mail order business that sells cigarettes"), *aff'd* 721 F.3d 638 (D.C. Cir. 2013); *City of N.Y. v. Nexicon, Inc.*, No. 03-CV-383, 2006 WL 647716, at *8 (S.D.N.Y. Mar. 15, 2006) ("[I]t is clear that companies are the primary entities responsible for filing [PACT] Act reports."), *aff'd in part, rev'd in part and question certified sub nom. City of N.Y. v. Smokes-Spirits.com, Inc.*, 541 F.3d 425 (2d Cir. 2008), *and rev'd and remanded sub nom. Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1 (2010).

Moreover, the PACT Act imposes certain filing requirements only on "[a]ny person who sells, transfers, or ships *for profit* cigarettes . . . in interstate commerce." 15 U.S.C. § 376(a) (emphasis added). Here, to the extent the Complaint alleges that these Defendants made any "profit," it is confined to the vague allegation that "[c]ertain" unnamed Cigarettes Unlimited Defendants received a "tip" for loading cigarettes into vehicles. Compl. ¶ 66. This strained interpretation of "profit" is not supported by the PACT Act and cannot transform an ordinary employee into a "delivery seller."

The civil penalties for the PACT Act underscore that these Defendants are not meant to be subject to its requirements. They provide, *inter alia*, that the penalty for a "delivery seller" is "the greater of – (i) $5,000 in the case of the first violation, or $10,000 for any other violation; or (ii) for any violation, 2 percent of the gross sales of cigarettes . . . of the delivery seller during the 1-year period ending on the date of the violation." 15 U.S.C. § 377(b); *see also City of N.Y. v. Milhem Attea & Bros.*, No. 06-CV-3620, 2012 WL 3579568, at *33 (E.D.N.Y. Aug. 17, 2012) (stating that, in determining penalties under the PACT Act, the Court "take[s] note of the[] gross and net profits from [defendant's] business of selling unstamped cigarettes"). As mere employees of Cigarettes Unlimited, these 12 Defendants have no "gross sales" and, therefore, cannot be understood to be a "delivery seller" under the statute.

## C. The City Has Failed to State a PACT Act Claim Against Stephen Riley

Although Mr. Riley is an owner and the president of Cigarettes Unlimited, Compl. ¶ 19, there is no allegation that he made a "delivery sale" such that he violated the requirements of the PACT Act. *Cf. State of N.Y. v. Mountain Tobacco Co.*, No. 12-CV-6276, 2016 WL 324970, at *2 (E.D.N.Y. Jan. 26, 2016) (finding that New York State could not establish jurisdiction over the owner of a cigarette company for violating the CCTA because "[b]y grouping his activities in

27

with the alleged conduct of [the cigarette company]," the City "provide[d] no basis for the Court to determine whether [the owner] was a primary actor orchestrating the allegedly tortious conduct, or whether he was named in the complaint simply because his name appeared at the top of [the cigarette company's] masthead") (citation omitted); *Mountain Tobacco Co.*, 55 F. Supp. 3d at 313 (same) (collecting cases). The Complaint merely alleges that *other* Defendants received the orders over the phone and that customers paid for their orders in cash. Compl. ¶¶ 57–59, 61(a). There are no allegations that Mr. Riley, or any of the above-listed Defendants, sold any of the cigarettes, only that some unknown subset of them assembled orders and loaded the customers' cars. *Id.* ¶¶ 57–58. That is insufficient to state a claim under the PACT Act.

## CONCLUSION

For the foregoing reasons, with the exception of the PACT Act claims against Mr. Lash and Cigarettes Unlimited, the Court should dismiss all of the City's claims against the Cigarettes Unlimited Defendants because the City has failed to make a *prima facie* showing of personal jurisdiction and has failed to allege facts sufficient to state plausible claims.

Dated: New York, New York,
      October 14, 2019

                      SHER TREMONTE LLP

                      By: /s/ Justin M. Sher
                          Justin M. Sher
                          Alexandra G. Elenowitz-Hess
                      90 Broad Street, 23rd Floor
                      New York, New York 10004
                      Tel: 212.202.2600
                      Email: jsher@shertremonte.com

                      *Attorneys for the Cigarettes Unlimited Defendants*