UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


THE CITY OF NEW YORK,          *     Case No. 20-CV-05965(ENV)
                               *
              Plaintiff,       *     Brooklyn, New York
                               *     May 19, 2022
      v.                       *
                               *
OLD DOMINION TOBACCO           *
 COMPANY, INC.,                *
                               *
              Defendant.       *
                               *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

         TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
             BEFORE THE HONORABLE RAMON E. REYES, JR.
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:              SABITA L. KRISHNAN, ESQ.
                                HOPE LU, ESQ.
                                New York City Law Department
                                100 Church Street
                                New York, NY  10007


For the Defendant:              MARY G. W. METCALFE, ESQ.
                                AVI D. SCHICK, ESQ.
                                Troutman, Pepper, Hamilton,
                                 Sanders, LLP
                                New York, NY  10022




Proceedings recorded by electronic sound recording, transcript
produced by transcription service.


**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

```
1          (Proceedings commenced)

2          THE COURT:  I apologize.  Good afternoon.  This is

3     Magistrate Judge Reyes.  We're holding a telephone conference

4     in the case of The City of New York versus Old Dominion

5     Tobacco Company, docket number 20-CV-5965.

6          Counsel for the plaintiff, please state your name

7     for the record.

8          MS. KRISHNAN:  Good afternoon, Your Honor.  This is

9     Sabita Krishnan on behalf of The City of New York from the

10    Office of Corporation Counsel.

11         THE COURT:  Is there anyone else on for you, for the

12    City.

13         MS. LU:  Yes, Your Honor.

14         MS. KRISHNAN:  Yes, Your Honor.  My colleague --

15         Go ahead, Hope.

16         MS. LU:  Your Honor, this is Hope Lu, also with

17    plaintiff, City of New York, Office of Corporation Counsel.

18         THE COURT:  Okay.  And who is on for the defendant?

19         MS. METCALFE:  Good afternoon, Your Honor.  This is

20    Mary Grace Metcalfe with Troutman Pepper.  Also with me is Avi

21    Schick, Troutman Pepper.

22         THE COURT:  Good afternoon.

23         Okay.  So you have some discovery disputes that you

24    need to resolve, correct?

25         MS. KRISHNAN:  Yes, Your Honor.
```

1          MS. METCALFE:  Yes, Your Honor.

2          THE COURT:  All right.  So I'll hear from the City

3     first.

4          MS. KRISHNAN:  Thank you, Your Honor.

5          THE COURT:  Go through them one by one and we'll

6     deal with them serrate.

7          MS. KRISHNAN:  Sure.  So, Your Honor, the first

8     dispute is relating to plaintiff's request for discovery

9     relating to defendant's sales and communications with specific

10    customers.

11         And in this regard the complaint pleads allegations

12    that the defendant supplied its customers and retail stores

13    with large quantities of cigarettes knowing that those store

14    were selling to cigarette traffickers.

15         And the complaint includes an example of one such

16    store and that is Cigarettes Unlimited.  But the allegations

17    are not limited to defendant's sales to that particular retail

18    store.  The allegations are that defendant supplied multiple

19    customers with large quantities of cigarettes.

20         And the complaint also specifically alleges that

21    Altria, also known as Philip Morris, warned the defendant in

22    multiple communications about the quantity of its -- the

23    volume of it's sales to a number of customers.

24         And huge here is that plaintiff used those

25    communications from Altria to identify four customers that

1    repeatedly are included on these communications as customers

2    to whom defendant is selling in very large quantities.  And

3    we're seeking targeted and reasonable communication about the

4    defendant's sales and communications with those four stores.

5         And defendant's position appears to be that because

6    those four stores are not specifically mentioned in the

7    complaint that the plaintiff cannot seek such discovery.  And

8    that's simply not the case.

9         But in any case the complaint does allege that

10   Altria warned the defendant about its sales to specific

11   customers and we are selecting four of those customers that

12   were included on numerous warning lists.

13        And so we think this is targeted and reasonable

14   discovery.  We're not seeking discovery about defendant's

15   sales to all of its customers.  We've targeted our request to

16   these four and two other customers for which there's no

17   dispute.

18        And to the extent that defendant's position is based

19   in a dispute about the meaning of the communications from

20   Altria, then, you know, that's really a factual dispute and

21   it's not a basis for which defendant can use to refuse to

22   produce discovery about its sales to those stores.

23        So that's really the dispute, Your Honor, about the

24   discovery that is sought with respect to four specific

25   customers.

5

```
1            And I'll pause there.  I don't know if you want me
2   to go to the next dispute or if you want to hear from me.
3            THE COURT:  I want to take them one by one, so why
4   don't we hear from Ms. Metcalfe.
5            MS. METCALFE:  Thank you, Your Honor.  A couple of
6   quick points.
7            The City says that it specifically alleges that
8   Atlantic Dominion provided multiple cigarette retailers with
9   cigarettes in excess, that they were warned about the quantity
10  of these cigarettes, and that these warnings were tied to
11  cigarette trafficking and that's just not the case.
12           The City alleges that between April 2019 and May
13  2019 cigarette traffickers purchased cigarettes from a
14  cigarette retail store located in Spotsylvania County,
15  Virginia.  They have since informed --
16           THE COURT:  Paragraph 34?
17           MS. METCALFE:  Yes.
18           THE COURT:  Does it start with for example?
19           MS. METCALFE:  It does.  And that is why you'll see
20  that despite the fact that there is no allegation anywhere in
21  the complaint about FreeCo, FreeCo, one of the six stores
22  about which the City has sought discovery, is one to which
23  Atlantic Dominion has agreed to produce documents.
24           FreeCo, Your Honor may be aware, was brought up in
25  response to Atlantic Dominion's motion to dismiss the
```

1    complaint.

2              In opposition to the motion to dismiss the City for

3    the first time raised the issue of FreeCo also being a store

4    to which Atlantic Dominion sold cigarettes and also being a

5    store that they believed was involved in cigarette

6    trafficking.

7              Putting aside the impropriety of amending a

8    complaint in response to a motion to dismiss through the

9    opposition papers, Atlantic Dominion has agreed to produce

10   documents responsive to those Cigarettes Unlimited and FreeCo.

11             The other four retail stores are completely

12   separate.  There is no allegation from the City that these

13   stores engaged at all in cigarette trafficking.  There is no

14   allegation that these stores in any way are connected to the

15   allegations raised in the complaint or even the allegations

16   raised in opposition to the motion to dismiss.

17             And while the City tries to get around the fact that

18   -- well, let's back up a second.

19             The City bases this request on the emails from

20   Philip Morris that are tied to whether or not the volume of

21   cigarettes Atlantic Dominion is providing to retail stores all

22   within the guidelines for promotional money.  We've discussed

23   this at length in our motion to dismiss.

24             While the City selectively quotes one of these

25   emails in its complaint, we attach it in its entirety to the

1    motion to dismiss.  There is no mention of cigarette

2    trafficking.  It's very clear this is tied to the promotional

3    money.

4              And while the City says that this is a question of

5    fact, Your Honor, in fact, this is a question of the law.

6    Because to the extent that the City has referenced the

7    document in its complaint, it is part of the complaint and it

8    can be considered in its entirety.

9              And as a matter of law, if what is contained in the

10   document contradicts or disproves what the City says in its

11   complaint, then as a matter of law that document controls.

12   And the document itself does not anywhere mention that the

13   warning is tied to cigarette trafficking.  Again, very clear

14   it's tied to the promotional program in which Atlantic

15   Dominion was participating.

16             Atlantic Dominion is really trying to be reasonable

17   here.  Even though our motion to dismiss has been pending

18   since September 2nd, and even though we oppose any inclusion

19   of FreeCo in this dispute because they're not pled in the

20   complaint, we are participating in the discovery process as

21   reasonably as we can and in good faith by agreeing to FreeCo.

22   But that doesn't mean that we're opening the door to the City

23   conducting an unrestricted fishing expedition for retail

24   information unrelated to any allegation of trafficking.

25             MS. KRISHNAN:  Your Honor --

8

1          THE COURT:  Ms. Krishnan, do you want to respond?

2          MS. KRISHNAN:  Yes.

3          So the complaint states that Philip Morris, or

4    Altria, warned Atlantic Dominion on approximately 53 separate

5    occasions that the cigarette retail stores, or stores

6    identified in its emails, met the criteria Philip Morris had

7    established to conclude that the retailer was supplying

8    cigarette traffickers.

9          Now --

10          THE COURT:  Where is that information, please?

11          MS. KRISHNAN:  That's paragraph 45.

12          Now, counsel refers to the quoted language and the

13    email that contains that language, but the context behind that

14    email, and why it was sent, and the contours of the program

15    that she's referring to that defendant was participating in,

16    that is all subject to factual discovery.

17          And we have and have provided counsel with an

18    affidavit from Philip Morris explaining that, yes, indeed,

19    these communications were to warn the defendant about its

20    sales, large quantities of sales to specific customers.

21          So, you know, as I said, the meaning of this

22    communication is a factual dispute.  And we have alleged based

23    on the information that we have, that the purpose of those

24    communications were, among other purposes, to identify

25    specific customers for whom there were very large quantities

1    of sales.

2         And so we think this is not a fishing expedition.

3    We are using specific emails.  We have more than 53 of them,

4    but at least 53 occasions, and we've identified from those

5    occasions four stores.

6         Now, these emails from Philip Morris include well in

7    excess of four stores.  So we have gone through and we have

8    selected the ones that appear to repeatedly be included on

9    these warning lists.  So this is far from a fishing expedition

10   and it is directly connected to the allegations in the

11   complaint.

12        THE COURT:  What are the documents, the specific

13   documents, that you're seeking, because I don't have the

14   written discovery requests in front of me.

15        MS. KRISHNAN:  We are seeking documents relating to

16   the transactions with those customers and we are seeking

17   communications with the employees of that company relating to

18   the sales of cigarettes.

19        UNIDENTIFIED:  All right.  Your Honor, if I can just

20   clarify.  We're seeking all documents concerning

21   communications between Atlantic Dominion and these stores, all

22   documents concerning transactions between Atlantic Dominion

23   and these stores, all documents concerning communications

24   between Atlantic Dominion and any employee of these stores,

25   and so on and so forth.

1          This isn't a targeted search.  This is the broadest

2     possible set of requests for documents in Atlantic Dominion's

3     possession that touch upon these retailers in any way.

4          UNIDENTIFIED:  Your Honor, we made the same requests

5     relating to Cigarettes Unlimited and FreeCo and we worked with

6     counsel to address their concerns about those requests and

7     we're willing to do the same with respect to these requests.

8          THE COURT:  The discovery is relevant so you're

9     going to meet and confer on the extent of the production with

10    respect to these communications with the four stores, four

11    other stores I guess I should say, and what documents to be

12    produced.

13          Let's move on to the dispute regarding the time

14    frame.

15          MS. KRISHNAN:  Yes, Your Honor.

16          So we have sought discovery from January 2012 to the

17    present.  And the reason that we proposed that time frame is

18    because the discovery is in part related to defendant's

19    knowledge that it was selling cigarettes to its customers that

20    were then selling to cigarette traffickers.

21          And the evidence regarding that knowledge is not

22    limited by the statute of limitations, so transactions or

23    communications that occurred outside the statute of

24    limitations would be relevant to establishing defendant's

25    knowledge.

1          And, indeed, in connection with our opposition to

2    defendant's motion to dismiss, we submitted a declaration that

3    indicates retail stores used Atlantic Dominion, the defendant,

4    as their sole or primary supplier to obtain cigarettes well

5    excess in what -- in excess of what they could reasonably sell

6    locally and that that process went back as far as 2009.

7          And so we're not seeking discovery going back to

8    2009.  We've selected 2012 to the present.  And we think

9    that's the appropriate time frame because what we're talking

10   about here is not -- is the issue of knowledge and we're not

11   limited in that respect by the statute of limitations.

12          Now, again, we have --

13          THE COURT:  What is the statute of limitations?

14          MS. KRISHNAN:  I believe -- you know, I think we

15   might have a dispute about -- we might not agree -- I believe

16   our position is that it's five years.  But, in any case,

17   seeking discovery prior to the statute of limitations.

18          THE COURT:  So it would be -- it would be -- this

19   was filed in --

20          MS. KRISHNAN:  The end of 2020.

21          THE COURT:  Twenty-fifteen, and you're looking for

22   three years prior to that?

23          MS. METCALFE:  They're looking for eight years prior

24   to that, closer to nine, Your Honor.

25          THE COURT:  No, I mean, three years -- eight years

1    prior to the filing of the complaint, but three years before

2    the statute of limitations starts to -- starts to run.  That's

3    why I'm thinking it's eight.  I mean --

4            MR. SCHICK:  I think it's four years prior, Your

5    Honor, because they filed at the very end of calendar year

6    2020 and they're seeking --

7            THE COURT:  Oh, I see.  Yeah.  I see (indiscernible)

8    --

9            MR. SCHICK:  -- the beginning of the calendar year

10   2020.  So, yes.  So it's essentially -- it's four -- it's four

11   full years prior even under their version of the statute of

12   limitations.

13           THE COURT:  And what's the defendant's position on

14   the statute of limitations?  You don't -- you don't think it's

15   five years?

16           MR. SCHICK:  I would say we have not -- Your Honor,

17   we have not addressed that yet in any of our filings.  Our

18   position with respect to this request is going back, you know,

19   nine years for discovery where again it's really tenuous.

20   They're saying they want every communication and every, you

21   know, document relating to, you know, again, entities that are

22   not, you know, very well specified as we just heard before.

23   And so, you know, let them get --

24           Your Honor has just ruled that they have to -- that

25   we have to produce many years of documents and communications

1    and records with respect to four additional entities.  It's

2    hard-pressed, Your Honor, it would be hard-pressed to come

3    back and say, well, there's nothing there in the entire

4    statute of limitations period but let them go back years

5    later, but, you know, unless they want to build on something.

6              But, you know, we've now been ordered to make, you

7    know, a very substantial additional search and production on

8    four, you know, with respect to four retailers, and two we've

9    already had no dispute about, so they'll have, you know, a

10   full set of records for six stores that they say are at the

11   nexus of this trafficking.

12             And, you know, if they're not going to have any

13   knowledge documents in connection with this massive production

14   and search for these six entities, then I think, you know,

15   they can come back then and say Your Honor we need to go back

16   further.  I think they'll be hard-pressed to establish how,

17   you know, there's nothing going on in the limitations period,

18   but it's earlier.  But, you know, we can address that later.

19             I think to make the entity to go back at this point

20   in time while, you know, the motion to dismiss is pending and

21   while the existing order to do a massive search and production

22   for four additional retail stores is more than sufficient.

23             MS. METCALFE:  Especially because, again, Your

24   Honor, if you look at the complaint itself, the period that

25   they've identified for trafficking is 2019 to -- is April to

1    May of 2019, and in their letter they say 2019 to 2020.

2              So even going off of the allegations presented by

3    the City, there's no basis for suggesting that they could be

4    involved, they could have knowledge, when the trafficking

5    itself didn't even occur during that time period.

6              MS. KRISHNAN:  Your Honor, can I -- can I respond

7    briefly?

8              THE COURT:  Yes.

9              MS. KRISHNAN:  So the language about 2019 to 2020 is

10   again in the four example period.  As I noted in our papers in

11   opposition to the motion to dismiss, we have put in evidence

12   that this practice of defendant selling in extremely large

13   quantities to its customers went back to 2009.

14             Now, with respect to the suggestion that they --

15   that defendant produce documents within the period that

16   they've proposed and then we come back and consider whether

17   they should have to produce documents going back further, you

18   know, for -- part of this request involved a search for email

19   communications and that simply doesn't seem like an efficient

20   or reasonable way to proceed here.

21             If you're searching for email communications and

22   doing a collection, the most reasonable and efficient thing to

23   do is collect all of it, do a search, and then have a

24   discussion about what a reasonable and -- what's unreasonable

25   and what's reasonable, what's burdensome and not burdensome.

1          Now, with respect to non-email communications, we

2     really haven't heard anything about why this is so burdensome.

3     And to the extent that the position is that there is some

4     extreme burden from adding four additional years to the

5     collection, we simply haven't been told what that is.  And I

6     cannot see it with respect to email collection.  You collect

7     all the email and then you see what you have and then you talk

8     about burden.

9          MR. METCALFE:  But, Your Honor, with all due respect

10    to that, one of the first things you do in conducting an email

11    search is set time parameters.

12         THE COURT:  Sure.  So what you're going to do here

13    is set the parameter of January 1, 2014.  I'm cutting it right

14    down the middle.

15         So next issue?

16         MS. KRISHNAN:  Okay, Your Honor.  The next issue has

17    to do with the City's request for communications between

18    defendant and one of its suppliers, RJR, or Reynolds American.

19    And the complaint alleges that the trafficking is conducted by

20    traffickers purchase cigarettes in Virginia and they bring

21    them to New York City.

22         And as we included in papers in response to the

23    motion to dismiss, it's common knowledge in the industry that

24    Newport cigarettes are in high demand in New York City.

25    They're referred to in the industry as New York City

1    cigarettes.  And they're heavily trafficked from the south to

2    New York City.

3           And the manufacturer of Newport is RJR.  And we have

4    reason to believe that RJR would have had communications with

5    the defendant about the volume of the sales to certain

6    customers for two reasons.

7           One, the defendant has similar communications with

8    Altria, the other major manufacturer of cigarettes.

9           And two, one of defendant's customers, this is

10   FreeCo, which is mentioned earlier, has provided documents to

11   us that we are going to produce to the defendant in which that

12   company, FreeCo, reaches out to RJR to express concerns about

13   the volume of Newport cigarettes that -- the demand for

14   Newport cigarettes from certain of its customers and whether

15   FreeCo should be concerned about that.  And the supplier of

16   all of the Newport cigarettes was the defendant.

17          And so for those reasons we have reason to believe

18   that the defendant would have had these communications with

19   RJR about the volume of their sales to specific customers.

20          And as with requests for similar communications with

21   Altria, we are willing to negotiate on search terms,

22   custodians.  We're willing to have those discussions about

23   burden, but the defendant is unwilling to produce anything,

24   any communications with RJR.

25          THE COURT:  Have you --

1          MR. SCHICK:  Your Honor, if I could address that?

2     I'm sorry.

3          THE COURT:  Have you subpoenaed RJR?

4          MS. KRISHNAN:  We have not at this time.

5          THE COURT:  Why not?  Wouldn't RJR have those

6     communications too?

7          MS. KRISHNAN:  Certainly that is an avenue the City

8     could take.  We believe the defendant is -- you know, the

9     defendant is in the action, and the defendant should also have

10    those communications, so our first -- our first step in the

11    discovery process was to seek them from the defendant.

12         THE COURT:  So the defendant's position is what on

13    this?  That RJR has to be mentioned in the complaint for it --

14    for them to produce anything?

15         MR. SCHICK:  Your Honor, it's beyond that.  And this

16    -- if I could address this briefly, this again goes to the

17    quintessential fishing expedition.

18         As you can imagine, Your Honor, a wholesaler such as

19    our client would have an enormous volume of correspondence

20    with, you know, any of its suppliers.

21         We're in a position now where the Court has already

22    directed that every retail outlet identified by the City in

23    its discovery requests we now have to provide, you know,

24    documents, communications, sales, and all the like.

25         And so having obtained from this court just earlier

1    that ruling that any store that they thought of that was

2    supposedly engaged in trafficking, or as they said just sold a

3    volume of cigarettes which one should divine from that is up

4    to no good, the Court has already said we have to make

5    production of our communications, of our sales, and the like.

6              To now go and say, okay, now that you've given us

7    every store -- and it's not limited by manufacturer, right --

8    you know, if any of those six stores bought Newport

9    cigarettes, which is the brand that the City just mentioned,

10   then it will be covered.  But to require beyond that a

11   production involving a manufacturer when there's no specific

12   showing that --

13             And with all respect to the City, their -- all the

14   representation at this hearing a moment ago that there is a

15   document that they have not produced, but that they

16   characterized in a certain way when there were multiple rounds

17   of meet and confers and multiple rounds of letter writing to

18   the Court -- neither party was shy in the -- in the liberty --

19   in taking the liberty of uploading letters when they had

20   something else to say.

21             So the Court has received (indiscernible) letters

22   from the parties and we've had at least that many sessions

23   among the parties.  So to hear, well, we're relying on a

24   document that we haven't mentioned or shared before shouldn't

25   be taken into account at all.

1          And, again, you know, if any of these six stores,

2     you know, bought Newport cigarettes, they'll see it in the

3     records that we've just been directed to produce.  But to open

4     up beyond that --

5          And Your Honor is correct, if they think that the

6     targeted thing that -- that they wanted from RJR, let them ask

7     RJR for it.

8          MS. METCALFE:  And just very quickly on that point,

9     Your Honor mentioned a subpoena to RJR, based on the documents

10     the City's provided to us so far, the documents they received

11     from Altria, one pursuant to a subpoena, they were pursuant to

12     a request for information that the City sent to Altria after

13     this complaint was filed, and we'll get to those documents

14     later on this call.

15          I guess my question for Sabita, very quickly,

16     (indiscernible) subpoena, have you sent a request for

17     information to RJR similar to the one you sent to Altria?

18          THE COURT:  Don't (indiscernible).

19          MS. KRISHNAN:  Your Honor, I -- yeah.

20          THE COURT:  You don't have to respond to that.

21          Look, you're going to meet and confer on -- you're

22     looking for primarily emails, yes, Ms. Krishnan?

23          MS. KRISHNAN:  Yes.  We provided a proposed list of

24     search terms that we were willing to negotiate on, but, you

25     know, we didn't get that far.

1          THE COURT:  All right.  You're going to negotiate

2     those search terms.  I think this -- the communications with

3     RJR concerning, I don't know what the search terms are, but

4     volume, sales, and trafficking, whatever the buzz words are,

5     that you're looking for within reason that's relevant.

6          Now, I want to -- I want to -- the most interesting

7     issue to me is the next one, is communications with law

8     enforcement.  And I know there was this letter.  I know you're

9     both looking for that, so why don't you tell me about that,

10    Ms. Krishnan.

11         MS. KRISHNAN:  Sure.  So I'll start with our request

12    for communications defendant had with law enforcement

13    officials.  And I don't think that there's any dispute between

14    the parties that these communications would be relevant, but

15    the dispute really seems to be about search terms.

16         So we had requested that defendant produce documents

17    -- communications between the defendant and law enforcement

18    officials about cigarettes and defendant's position appears to

19    be that that's too broad and it has to be limited to

20    communications specifically that are explicitly about

21    cigarette trafficking.

22         And I think our position is that that's simply too

23    narrow.  Because, you know, as we understand it, that's not

24    all communications between law enforcement officials and the

25    defendant that would -- might be relevant to this issue would

1      explicitly reference cigarette trafficking.

2              For example, there might be requests for information

3      about defendant's sales to specific customers without an

4      explicit explanation that this is about cigarette trafficking.

5              And I think, again, you know, to the extent this is

6      about burden or overbreadth, I think we, as with all these

7      other requests, are willing to look at search term hits and

8      further negotiate.  But we think as a starting point the

9      search really needs to be for communications about cigarettes.

10             Now, that's the issue with respect to the

11     plaintiff's request for communications with law enforcement

12     officials.

13             I don't know if you want me to also address the

14     defendant's letter about their requests for plaintiff's

15     communications with law enforcement officials.

16             THE COURT:  No.  Let's deal with the first issue

17     first, then I'll hear from the defendant.

18             MS. KRISHNAN:  Okay.

19             MS. LU:  Your Honor, Atlantic Dominion sells

20     cigarettes and candy.  We don't expect there to be an enormous

21     amount of communications with law enforcement regarding candy.

22     We do, however, expect that virtually all of the

23     communications with law enforcement will touch upon cigarettes

24     in some way.

25             We proposed much of the search terms you just

1    described for RJR that we look at trafficking.  We're happy to

2    also include volume within a certain number of words of

3    cigarettes.  We think that would be reasonable.  But the City,

4    in our meet and confer discussions, indicated it would only

5    narrow its demand to those communications regarding

6    cigarettes.  And our position is that's far too broad.

7            THE COURT:  I think you're both -- you're both

8    somewhat unreasonable in this.  You're at the poles, polar

9    opposites, trafficking versus cigarettes.

10           One is going to be over broad, the other is going to

11   be too narrow, so you need to work -- you need to work to come

12   up with better or more or search terms.  It's relevant and it

13   goes both ways, right?  You each should be producing certain -

14   - producing this information, so roll up your sleeves and come

15   up with better search terms.

16           MR. SCHICK:  Your Honor, we certainly will undertake

17   to do so.  I think Ms. Metcalfe, as we've already suggested,

18   you know, documents related to cigarette volume.

19           Again, it's also because of the nature of how law

20   enforcement is defined.  Right?  Any filings, regular filings

21   that they make, just in terms of sales taxes, whatever, would

22   be encompassed.  But we're willing to work with the City on

23   this.  And we've already made proposals and we'll try to make

24   more as the Court just directed.

25           THE COURT:  Now, what about the City, the City

1    producing its communications with law enforcement?

2         UNIDENTIFIED:  Sure, Your Honor.

3         Now, I think as I explained in my letter, the City

4    regularly communicates with law enforcement officials in

5    furtherance of our common interest in prosecuting and

6    preventing cigarette trafficking.

7         And I was aware in my discussions with counsel that

8    there had been such communications relating to the defendant

9    and relating to the allegations in the complaint, but I was

10   not aware that there were email communications.

11        And so in my written responses to the defendant's

12   request, in our meet and confer discussions, I represented

13   that there were not such email communications.  And upon

14   collecting relevant email and reviewing it, I realize that I

15   was incorrect and that, in fact, there were email

16   communications with more than one law enforcement official

17   responsive to defendant's document requests.

18        Some of those communications, but not all, include

19   information that was shared pursuant to the common interest

20   and is in our view protected by the law enforcement privilege.

21        Now, we are reaching out to the law enforcement

22   officials to determine their position on this matter and our

23   intention is to confer with them and then make a determination

24   about which communication we think should be withheld and to

25   include them on a privilege log.

1          In addition to communication with the law

2     enforcement officials, there were communications in

3     furtherance of the law enforcement activity with other

4     individuals and those communications reflected the privileged

5     law enforcement information that we obtained from the law

6     enforcement officials.  Some of those communications included

7     the law enforcement, some did not.

8          And so what we are intending to do is have

9     conversations with the law enforcement officials about their

10    position about what is privileged and to produce anything that

11    is not.

12         And as I already noted, there are communications

13    that we intend to produce that are not privileged and to

14    produce a privilege log.

15         And at that point, we are willing to have further

16    meet and confer discussions with the defendant.  And we would

17    think that if there is any dispute that can't be resolved that

18    that would be the appropriate point at which to raise it with

19    the Court, after we've consulted with the law enforcement

20    officials, after we have produced the non-privileged

21    communications that we intend to produce and produced a

22    privilege log.

23         After defendants have reviewed and discussed it with

24    us, if there is still an issue in that defendant thinks that

25    things are being improperly withheld, we think that that's the

1    time period at which it should be brought to the Court's

2    attention.  And we can invite the law enforcement officials to

3    participate if they would like.

4            And at that point, we would be happy to have the

5    Court even review the withheld communications ex parte to

6    determine whether they -- whether the Court agrees with our

7    position on the privilege.

8            But our position is that we intend to produce

9    documents.  We believe there will be some that are withheld.

10   And we think that to the extent there's any dispute about

11   them, they can be -- that dispute should and can be addressed

12   at a later date.

13           MR. SCHICK:  Your Honor, may we be heard?

14           THE COURT:  of course.

15           MR. SCHICK:  Thank you.  So two main points.

16           The first is that there's no dispute that these are

17   highly-relevant, responsive documents.  There's no question

18   whether, you know, upon review, whether they will or won't

19   relate to the allegations in the complaint.  The City has

20   conceded that they directly relate to the allegations in the

21   complaint.

22           Now we go to is there any other -- is there any

23   basis to withhold them?

24           The City throws around the word law enforcement and

25   it's law enforcement responsibility.  But we need to be clear,

1    Your Honor.  This is not an instance in which -- since the

2    City is a plaintiff, we've requested that the City contact its

3    law enforcement agencies, it's sheriff's department, all sorts

4    of entities that might have information.

5         What this is, Your Honor, is the civil litigation

6    team bringing this lawsuit, brought a connected lawsuit,

7    quote, "Cigarettes Unlimited," to which they actually

8    threatened previously to add Atlantic Dominion.

9         In connection with the civil litigation against

10   Atlantic -- against Cigarettes Unlimited and its principals,

11   the lawyers handling this case subpoenaed, negotiated for,

12   settled with, obtained, documents to help their litigation.

13        There is absolutely no basis, Your Honor, for the

14   civil litigators and court counsel who have these documents in

15   connection with another civil litigation to withhold them

16   based on references to law enforcement.

17        Your Honor, I served for ten years, almost ten

18   years, eight years, I'm sorry, in the New York AG's Office.

19   There was clear line between the criminal folks and the civil

20   folks.  You couldn't obtain something from the criminal folks

21   for civil litigation.  But once you brought a civil

22   litigation, the fact that I worked for the State, for the

23   Office of the Attorney General, the fact that my colleagues

24   were in law enforcement, the fact that we had investigators

25   and criminal authority meant nothing, right?  We were a civil

1    -- we were a civil litigant subject to the same discovery

2    rules as everybody else.

3           This is not a City search to other agencies.  These

4    are documents this court team has, this court team collected

5    in connection with bringing this civil lawsuit and a related

6    civil lawsuit.

7           The suggestion now that they be allowed to withhold

8    them, the most highly-relevant documents, listen, either

9    they're going to say Atlantic Dominion did terrible things,

10   it's a risk we'll take, right, or they're going to undermine

11   the City's allegations, we're entitled to see those now while

12   the City is looking through all the Philip Morris, all the

13   RJR, all the six retail store documents.

14          This is documents they went to pursue, they asked

15   for in connection with the civil litigation.  If they want to

16   make a representation and sign an affidavit that they're

17   talking about documents that they asked the sheriff's

18   department in connection with our subpoena, we'll talk about

19   it.  But it's not that.  These are documents they've had in

20   connection with their civil investigation.

21          (Indiscernible) than anybody else.  The City's a

22   plaintiff, a civil plaintiff.  Maybe people are more

23   responsive to them, maybe people give them things without

24   subpoenas that other parties don't get, but that's it.

25   There's just no basis for them to say they'll withhold it,

1    they'll put on a log, we'll fight, then months down the line

2    they'll come back to you.

3           They're just desperately trying to both generate

4    evidence they don't have through broad discovery from us, and

5    desperately trying to withhold from us the most directly,

6    highly-relevant documents that they indisputably already have.

7           MS. KRISHNAN:  Your Honor, can I -- can I just

8    briefly respond to that?

9           THE COURT:  Briefly.

10          MS. KRISHNAN:  Yeah.  The documents that Mr. Schick

11   is referring to are not the documents that we're talking about

12   withholding.  We are going to produce all of the

13   communications with the individuals in the other litigation,

14   Cigarettes Unlimited.

15          We're going to produce our settlement agreements

16   with those individuals.  We're going to produce our

17   communications about the settlement agreements.  We're going

18   to produce -- in fact, those individuals didn't have any

19   documents, but we are going to produce documents that we

20   obtained from a sheriff in Virginia relating to that company.

21          So that's not at all what we're talking about here,

22   which is why I suggested the appropriate time to address this

23   issue is after they have received the documents.  And part of

24   the reason we haven't produced the documents is because of the

25   last issue that we need to talk about, the protective order.

1         But once they have those documents -- which

2    everything Mr. Schick just referred to we do intend to produce

3    -- and it's not what we're asserting is privileged.

4         And so that's why I suggested that the appropriate

5    time to deal with this is after they've received the documents

6    we're intending to produce, and they have the privilege log,

7    and they have -- they can see who we communicated with, and we

8    can have a more nuanced discussion about this once they know

9    what we produced and what we withheld.

10        THE COURT:  Thank you.

11        MR. SCHICK:  Your Honor, extremely briefly, Your

12   Honor.  We didn't say -- I didn't say documents that they got

13   from Riley and Lash.  I said documents they got in connection

14   with the lawsuits of Riley and Lash.

15        Frankly, it's even more outrageous that the City is

16   now saying we're going to cherry-pick law enforcement

17   documents we want you to see and produce them and we're going

18   to withhold documents we don't want you to see.

19        What the City didn't say now, what counsel didn't

20   say now, is that they didn't get these documents in connection

21   with their civil lawsuits and civil investigation.  She very

22   carefully said -- she very carefully said that's what she

23   received from Riley and Lash.

24        Your Honor, I don't know how it can be that they can

25   say we have a sheriff from Virginia, we want you to see that

1    document, but we have some other documents we don't want you

2    to see.  That's just not what the (indiscernible) --

3             THE COURT:  Yeah.  But they're going to -- they're

4    going to have to produce -- they're going to have to list on a

5    privilege log anything that they're withholding and you can

6    challenge it at that point after --

7             MR. SCHICK:  Can we --

8             THE COURT:  -- after meeting and conferring.

9    There's no way I can make a ruling that covers all bases at

10   this point.

11            MR. SCHICK:  Can we -- can we set --

12            THE COURT:  There's absolutely no way.

13            MR. SCHICK:  Can we set the time for when they have

14   to produce their privilege log and the information the log has

15   to contain now so we don't have to (indiscernible) --

16            THE COURT:  Information that's required in a

17   privilege log is settled law.  I'm not going to add anything

18   or take anything away from that.

19            You'll get -- the City will produce a privilege log

20   with all the relevant information that someone needs to assess

21   whether the assertion of the privilege is valid.  And if it

22   isn't, if it's not on the log, then you'll challenge it and

23   I'll make a ruling.

24            MR. SCHICK:  Can we set a timetable for that log?

25            THE COURT:  When are you going to -- when -- it

1    should be one they produce -- when they produce the other

2    documents.  Whenever their document production is due, the

3    privilege log indicating what has been withheld from that

4    production should be given.

5            So, Ms. Krishnan, when is the document production

6    due?

7            MS. KRISHNAN:  We don't have any deadlines in this

8    matter, but I expect that (indiscernible) --

9            THE COURT:  Wait a second.  Were written discovery

10    requests served?

11           MS. KRISHNAN:  Yes, Your Honor.  (Indiscernible) --

12           THE COURT:  You have 30 days from the date you get

13    them to produce the documents.

14           MS. KRISHNAN:  Yes.  And, Your Honor, we have been

15    trying to negotiate a protective order with a clawback

16    agreement for four months now.  So once we can finalize that

17    agreement, we will be in a position to produce documents I

18    would say within two weeks.  And we will include a privilege

19    log with that.

20           THE COURT:  Just one second.

21       (Pause)

22           THE COURT:  I'm just taking a look at this docket

23    sheet.  Just a second.

24       (Pause)

25           THE COURT:  So you have been producing documents

32

1    already?

2            MS. KRISHNAN:  We have produced.  We have done an

3    initial production.

4            What we haven't yet produced are the email

5    communications which we've been negotiating the protective

6    order and a clawback agreement which would be relevant to the

7    email communications.

8            And we also have several -- we have about 2,000

9    documents from Altria that we have been ready to produce since

10   January, but we have, again, been negotiating this protective

11   order issue.

12           THE COURT:  All right.  Let's table any schedule.

13   And I'm inclined to have you folks figure out a schedule and

14   tell me what it is at a later date.

15           But what is the problem with the -- with the

16   protective order?

17           MR. SCHICK:  Your Honor, from our perspective --

18           MS. KRISHNAN:  So at this point --

19           MR. SCHICK:  Okay.  I'm sorry.

20           MS. KRISHNAN:  At this point, I think we are likely

21   to resolve everything other than the issue that is addressed

22   in our letters.

23           And so the City obtained documents from Altria.

24   These were -- they're referenced earlier to requests for

25   information.  And we obtained them with the agreement that we

1      would maintain the documents that Altria produced to us as

2      confidential documents.

3              And even before the defendant served us with

4      document requests, we reached to Altria and asked them whether

5      in connection with this lawsuit that they -- their position

6      was that the documents were still confidential and if produced

7      should be treated as such and they said that was their

8      position and they wanted there to be a protective order in

9      place.

10             We proposed a protective order to defendant and the

11     main issue that we haven't been able to resolve is that it

12     includes a provision that would require confidential documents

13     to be filed under seal and defendant objects to that.

14             We reached out to Altria and we, you know, explained

15     the situation and they indicated that they believed that these

16     were confidential documents that needed to be filed under

17     seal.

18             So I spoke again with counsel and my proposal to

19     counsel was that we will produce the documents marked

20     confidential subject to the protective order we propose.  You

21     can take a look at all the documents, determine which, if any,

22     you would ever want to file, and if there are documents that

23     you want to file, one of two things might happen.

24             One, there is a provision in our proposal that if

25     you have the communication or you have the document yourself

1      in the same form, it's not subject to any additional

2      obligation.

3              So many of these documents that we have are email

4      communications between the defendant and Altria. And I

5      suggested you likely have all those and so they would not be

6      subject to protection or the requirement that they filed under

7      -- be filed under seal.

8              And I said to the extent that there are documents

9      that you want to use, that you don't have, that you don't

10     think should have to be filed under seal, don't think they're

11     confidential, our proposal includes a provision by which you

12     could challenge that designation with the Court and Altria

13     would have the opportunity at that point to come in and defend

14     their designation of the document as confidential.

15             But the defendant rejected that proposal and they do

16     not want to agree to anything that includes the requirement to

17     file anything under seal.

18             And so, you know, what we're asking Your Honor for

19     is the Court's intervention here. And if the Court thinks

20     that this issue of whether documents -- any document would

21     have to be filed under seal needs to be addressed right now,

22     then we would just ask that Altria be given the opportunity to

23     weigh in on why that's appropriate, either their documents,

24     and I think had we proceeded by subpoena, they would have had

25     that same opportunity. So that's the issue from our

1    perspective.

2            If the Court is inclined to decide this issue before

3    we've produced anything, then we would just ask that, you

4    know, Altria be given a brief opportunity to present their

5    position on this.

6            THE COURT:  Before you produce something, before you

7    produce anything further, you need a -- you need a protective

8    order, correct?

9            MS. KRISHNAN:  Yes.

10           MR. SCHICK:  And there's no dispute about that, Your

11   Honor.

12           THE COURT:  Right.  And so I would have to sign off

13   on that, which has -- which will -- they will have whatever

14   provisions about confidentiality, filing under seal, whatever.

15   So the issue is ripe.  We've got to resolve it.

16           MS. KRISHNAN:  Yes.  Yes.

17           THE COURT:  But is the defense -- I don't understand

18   the defendant's position that documents can be designated as

19   confidential, but the other side can just file them

20   (indiscernible) --

21           MR. SCHICK:  It's actually very (indiscernible) --

22           THE COURT:  -- (indiscernible)?

23           MR. SCHICK:  I don't think I've ever signed another

24   one, Your Honor.  Which is to say, the basis for and the

25   reason in civil litigation for people to seek confidentiality

1    means that documents can't be used for any purpose other than

2    the litigation.  That's quite standard.

3         I've never had a wholesale situation where someone

4    says everything I designate as confidential must be filed

5    under seal if you want to use it.

6         These are documents that the City has put at issue,

7    the city has quoted from and referenced in its complaint.

8         And, Your Honor, if the burden flips, that's fine.

9    Let the City have the burden, you know.  If the City wants to

10   say the following, you know, that if we want to use -- if we

11   want to use a document that they produced, you know, as

12   confidential, we can tell them and they could move the Court

13   to seek for to cause under seal.

14        But I can't be bound.  Your Honor, I have the burden

15   then if (indiscernible).  Whoever files under seal has the

16   burden of establishing to the Court why it's under seal.  I

17   don't believe this should be under seal at all.

18        THE COURT:  Yeah.  But that's a different issue.

19   That's a different issue.

20        Whoever has the burden is different than you can run

21   into court without any -- file with the Court any confidential

22   document without the other side having a say in it.

23        MR. SCHICK:  Your Honor, we've never disputed that.

24   The City's proposal has been throughout that it's our burden.

25   We agree that it can't be filed under seal.  We can make a

1    motion to the Court for relief from that.  That's been the

2    City's position throughout.

3          If the City is agreeing to what Your Honor is

4    suggesting, which is that the burden would be theirs or

5    Altria's to argue to the Court affirmatively why it must be

6    filed under seal, and that we give them, you know, some notice

7    before a filing, we are absolutely okay with that as long as

8    it's clear that it's the party seeking sealing that has the

9    burden.

10         THE COURT:  I wasn't suggesting who bears the

11   burden.  I was simply saying that what I understood the

12   defendant's position to be that you -- that either can

13   unilaterally file a document that has been designated as

14   confidential without any further action.  So I guess I

15   misunderstood what Ms. Krishnan was saying.

16         The dispute is who bears the burden of --

17         MR. SCHICK:  Correct.  I think -- I think I heard

18   her say earlier that if Your Honor is inclined to address this

19   issue today, which of course we are because we keep hearing

20   about it, then at least Philip Morris should have the chance

21   to try to convince the Court why it must be under seal.  And

22   we're okay with that.  Right?  This is their burden.  We'll

23   give them the notice.  And they'll come to the court if they

24   want to.

25         THE COURT:  Ms. Krishnan, do you want to hear

1    anything?  You want to say anything else?

2           MS. KRISHNAN:  Your Honor, I think, as I -- yeah.

3    Our position is that these are Altria's document.  They have

4    indicated in providing them to us that we must keep them

5    confidential and that they want them to be filed under seal.

6    We are --

7           THE COURT:  Forget about -- hold on.  Stop.  Forget

8    about Altria or anything.  The issue is not Altria's

9    documents.

10          The issue is what is the protective order?  Who is

11   the burden going to be on in a protective order?  Is it on the

12   party producing the confidential documents or the party

13   seeking to have the confidential documents filed with the

14   Court?

15          MS. KRISHNAN:  We don't have --

16          THE COURT:  It should apply -- it should apply --

17   the burden should apply regardless of whether it's Altria's

18   documents or FreeCo's documents or anything else.

19          MS. KRISHNAN:  Yes, Your Honor.

20          We don't object to the burden being on the person --

21   on the entity or the person who wants the documents to be

22   filed under seal.  We would not be the one making that

23   argument.

24          So to the extent the burden on the party that wants

25   to file it is simply to provide notice, we would not object to

1    that, but we would -- we would request that Altria have the

2    opportunity to object to that.

3              THE COURT:  That's fine.  I have no problem with

4    that.  But you have to give enough notice so that you can then

5    -- or whoever designated the documents confidential can turn

6    to the non-party who asked them to keep them confidential and

7    give them notice that, hey, defendants are going to file this

8    stuff with the Court, you've got two days to prove it should

9    be kept confidential and filed under seal or whatever the time

10   period is.

11             MR. SCHICK:  That works, Your Honor.

12             THE COURT:  Craft the protective order that way and

13   submit it me and I'll sign it.

14             MR. SCHICK:  Thank you, Your Honor.

15             THE COURT:  But, I want to -- look, I want to avoid

16   reviewing documents in camera and figuring out what should be

17   filed under seal, so, you know, before you come running, meet

18   and confer.  And if it's absolutely necessary that, you know,

19   something's got to be filed under seal or you need me to look

20   at it, so be it, but keep it to a minimum, please.  Okay?

21             What else do we need to discuss?

22             MR. SCHICK:  Your Honor, I think we're up to the --

23   the issue that the defendant has raised with respect to

24   plaintiff's responses (indiscernible).  We've dealt with, you

25   know, one of those, and that was law enforcement, but there

1    are other categories set forth in our correspondence.  And

2    with the Court's permission, Ms. Metcalfe will address them.

3            THE COURT:  Go ahead.  Ms. Metcalfe?

4            MR. METCALFE:  Oh, sorry.  I was on mute.  Hang on.

5    I just dropped my binder too.

6        (Pause)

7            THE COURT:  Hasn't everything been addressed?

8        (Pause)

9            MR. SCHICK:  I mean, I (indiscernible).  I guess it

10   depends if we look at the (indiscernible) and other things

11   through -- if that's all law enforcement issues, but I think

12   there were other things that they -- that they were

13   withholding unless -- unless that's been resolved by

14   (indiscernible).

15           MR. METCALFE:  The current (indiscernible), the ones

16   that we've addressed that were raised in the May 3rd letter

17   and then our responses I believe have been addressed.

18           The only other issue that was raised with the Court

19   was the one we submitted in our joint letter at the end of

20   last month that deals with correspondence and documents

21   exchanged between the City and two individuals that they've

22   identified as investigators.

23           Now, we met and conferred about that, and the City

24   has raised -- has given us some additional information and

25   provided updated responses.  We noted that the responses came

1     in last week, the evening before we were scheduled to have

2     this call.

3             And as noted in our letter to the Court yesterday,

4     we do have further concerns based on the City's amended

5     responses that we intend to meet and confer with them about,

6     but reserve the right to raise if those meet and confers fail.

7             THE COURT:  So you haven't met and conferred on

8     them.  You're going to.  And if you can't resolve it, then

9     you're going to raise it with me?

10            MR. METCALFE:  We're going to continue our meet and

11    confer.  And if we can't resolve it, we will raise it.

12            THE COURT:  All right.  So there's nothing for me to

13    decide right now?

14            MR. METCALFE:  Correct.  Thank you, Your Honor.

15            THE COURT:  Okay.  Thank you.  All right.

16            Anything else?

17            MS. KRISHNAN:  Not from the City, Your Honor.

18            THE COURT:  Okay.  I think we need a revised

19    discovery schedule, yes?

20            MS. KRISHNAN:  Yes, Your Honor.

21            THE COURT:  Why don't you get me one two weeks from

22    now.  I know you're still waiting on a decision from Judge

23    Vitaliano, but get me -- what is -- two weeks from now is --

24    June 3rd, I'd like to see a revised discovery schedule.  And

25    once I get it, I'll set dates for conferences.  Okay?

1          MS. KRISHNAN:  Your Honor, just to clarify, at our

2     conference in the fall, Your Honor had indicated that the

3     parties should proceed with document discovery, but that we

4     should not proceed to deposition.  Do you want --

5          THE COURT:  I said that?  I'm sorry, I forgot.  If I

6     said that, I said that.

7          And, yeah, it doesn't -- it doesn't make sense I

8     guess to incur the expense of depositions if Judge Vitaliano

9     does end up dismissing the case.  So why don't you -- do we --

10         All right.  If we're not going to do depositions, do

11    we -- do we even need a schedule for paper discovery because

12    you've served written requests?  Some of them have been

13    responded to.  You're going to respond to the rest of them

14    soon I would think.

15         And then what else is there after that?

16         MS. KRISHNAN:  Your Honor, I think it would be

17    useful for the parties to have some deadlines for documents.

18    We could negotiate that.

19         MR. SCHICK:  Your Honor, I would say as follows.

20    We're almost surely, and I say this with some hesitation, but

21    we're almost surely going to be back before Your Honor once we

22    receive the privilege log of withheld documents from the City.

23    And obviously it makes no sense to talk about depositions

24    before those disputes would be resolved anyway.

25         So, you know, I guess we would say, either we'll be

1    before Your Honor, and in the process of resolving those

2    disputes, we could then talk about the next phase of them,

3    but, you know, or we can tell Your Honor that, hey, somehow if

4    we -- if we resolve the issues of those withheld documents,

5    we'd have the Court's intervention, we could -- we could, you

6    know, notify the Court of that and then talk about the next

7    phase.

8           But it certainly makes no sense, you know, putting

9    aside the outstanding motion to dismiss, it makes no sense to

10   talk about a schedule for discovery when the City itself just,

11   you know, said earlier that, you know, presumably there's

12   going to be lots of give and take on a privilege log, and

13   disputes between the parties, and the likelihood, or at least

14   potential, but probably likelihood, that the Court will have

15   to get involved in deciding those disputes.

16          THE COURT:  Okay.  Why don't you --

17          MS. KRISHNAN:  Your Honor, I --

18          THE COURT:  Ms. Krishnan, go ahead.

19          MS. KRISHNAN:  Your Honor, we served our document

20   requests in December, and we have received far from a complete

21   production, so I think it would be useful for both parties to

22   have some deadlines.

23          I don't disagree with counsel's position that we

24   will likely be before you in the near future with respect to

25   these privilege log issues, but that can certainly be

1        incorporated in an agreed-upon schedule.

2                    THE COURT:  Okay.  Do so, and submit it by June 3rd.

3                    MR. SCHICK:  Thank you, Your Honor.

4                    THE COURT:  All right.

5                    MS. KRISHNAN:  Thank you, Your Honor.

6                    THE COURT:  Thank you, folks.  We're adjourned.

7            (Proceedings concluded)

8                    I, CHRISTINE FIORE, Certified Electronic Court

9        Reporter and Transcriber, certify that the foregoing is a

10       correct transcript from the official electronic sound

11       recording of the proceedings in the above-entitled matter.

12

13              *Christine Fiore*

14       _____        September 21, 2022

15          Christine Fiore, CERT

16

17

18

19

20

21

22

23

24

25