UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
THE CITY OF NEW YORK,

                                        Plaintiff,

-against-                                                        No. 20-cv-5965 (ENV-RER)

OLD DOMINION TOBACCO COMPANY,
INCORPORATED d/b/a ATLANTIC DOMINION
DISTRIBUTORS,

                                        Defendant.
------------------------------------------------------------------------ x

## JOINT STATUS REPORT

Pursuant to the Court's direction at the June 7, 2023 status conference and the Court's order

of that same day, the parties jointly submit the following status report.

On June 16, 2023, the Parties met and conferred by telephone regarding the (1) the

completeness of the City's production, including documents and information that the City's

productions refer to but have not yet been produced; and (2) the City's request that Atlantic

Dominion prepare and then produce spreadsheets containing the information contained in invoices

previously produced.[1]

### I.        The City's Production

#### A.  Atlantic Dominion's Position

While the City has produced some documents, its production to date has been woefully

inadequate and the City has now conceded to the spoliation of evidence.  In particular, the City

---

[1] By email this afternoon, the City said it objected to this description of the contents of the meet and confer, which is as discussed at the conference with the Court on June 7, 2023, but did not provide an alternative description.

conceded to having been in possession of full interviews with Atlantic Dominion's alleged coconspirators, and having created truncated excerpts, which it recently produced to Atlantic Dominion. Despite confirming its creation of the excerpts and representing that the City had and would produce the full interviews, the City today stated it no longer has them. Atlantic Dominion respectfully requests a conference[2] with this Court as soon as possible to discuss the spoliation of the interviews with the individuals the City alleges were its coconspirators in the trafficking.[3]

The City has acknowledged having electronic and other copies of interviews regarding Cigarettes Unlimited (the retailer alleged in the Complaint as being the entity to which Atlantic Dominion supposedly sold cigarettes it knew were going to be trafficked) but has failed to produce them. It has acknowledged receiving documents and communications from law enforcement or government officials that relate to Atlantic Dominion, the Complaint, and the allegations of cigarette trafficking, but has failed to produce them. It has acknowledged receiving documents and communications from other third parties – including the alleged traffickers, cigarette manufacturers, private investigators, and attorneys for these third parties – related to Atlantic Dominion and the allegations of cigarette trafficking, but has failed to produce them.

Each category was discussed during the meet and confer as follows:

**1. Interviews conducted by law enforcement**

The City concedes that it has copies of at least three interviews conducted by the Spotsylvania County Sheriff's Office related to the alleged cigarettes trafficking that the City

---

[2] Despite the City's request that it have until August 31, 2023 to continue its search, Atlantic Dominion believes a conference as soon as possible is necessary to discuss the contents of that review and its ability to conduct a forensic review of City's computers to locate the missing interviews and any other missing documents.

[3] The City's suggestion that it be barred from using the excerpts it created is a woefully inadequate sanction under the circumstance. Cigarettes Unlimited is the "Spotsylvania retailer" at issue in the City's complaint and the City previously threatened to add Atlantic Dominion to the Cigarettes Unlimited case, going as far as to circulate a draft complaint adding them as a defendant. Interviews in which the alleged coconspirators discussed the alleged trafficking without ever mentioning Atlantic Dominion is exactly the sort of evidence vital to Atlantic Dominion's defenses.

claims is at issue in this case. On May 11, the City produced short excerpts of some of these recordings. They each have a last modified date of April 26, 2023, which establishes the City last edited or modified the recordings that day.

The fullest recording contains part of an interview with John Lash, a defendant in the *Cigarettes Unlimited* case, and begins and ends mid-sentence. The City agreed to let us know whether it has or had a complete recording or transcript, and if it does to produce it. To date, we have not heard back from the City.

The six other recordings contain far shorter excerpts – most less than a minute long – from far longer interviews with unidentified participants. The City admitted that it had recently created the excerpts from more complete recordings, that it should easily be able to find the full recordings, and that it would identify the participants in the interim. To date, the City has not provided any of those more complete recordings or any further information.

In fact, despite follow up, Atlantic Dominion did not receive any response from the City on this point until it circulated its proposed positions this afternoon. The City is now indicating that it no longer has the recordings.

**2. Interviews conducted by the City**

In addition to interviews conducted by law enforcement, the City's production includes discussions of, or pieces of, multiple other relevant interviews conducted by the City. These include references to contacting alleged traffickers and retail store employees, as well as more concrete details for interviews conducted by Zoom, including:

| Date | Interviewee | Relevance |
|---|---|---|
| 6/25/2020 | Stephen Riley | Defendant in *Cigarettes Unlimited* and owner of Cigarettes Unlimited |
| 5/3/2021 | | |
| 12/29/2020 | Darren Broughton and Elizabeth Wickert | Altria employees contacted about Atlantic Dominion |
| 4/12/2021 | Justin Freeman | Principal of FreeCo Inc. |
| 6/4/2021 | | |
| 7/14/2021 | | |
| 11/1/2021 | | |

for which no transcripts, notes, or – with one exception – recordings have been produced. The City said that (i) it would search again for material related to the Riley interviews but did not believe there were any notes; (ii) there were no recordings, notes, or transcripts for the interviews with Mr. Freeman but that Mr. Freeman's attorney had been in attendance; and (iii) there was an additional interview that it had not previously disclosed to Atlantic Dominion.

To date, the City has not provided any more information or documents related to the interviews listed above.

### 3. Documents received from law enforcement and government attorneys

The City's production references communications with and information provided by the Cumberland County Sheriff's Office, the Spotsylvania County Sheriff's Office, and the United States Attorney's Office for the Eastern District of North Carolina. The City stated that it never received any documents or information from the United States Attorney's Office for the Eastern District of North Carolina or the Cumberland County Sheriff's Office.

The City did concede that it had received documents and information from the Spotsylvania County Sheriff's Office. Among other materials, the City said that it asked a Mr. Thomas Lesnak to review two boxes of documents and information, which had been obtained by the Spotsylvania County Sheriff's Office from Lash and Riley. Mr. Proshansky advised that (1) Mr. Lesnak reviewed the contents of the boxes and told him that there was nothing in them for the City, after

which he (2) directed Mr. Lesnak to give the boxes back to Mr. Riley.  Of course, the question is whether there was anything in those boxes for Atlantic Dominion.  As with the interviews, that was a decision for Atlantic Dominion to make, not Mr. Proshansky.

**4. Documents received from alleged traffickers and other third parties**

The City's production identifies and references documents and communications it received from various third parties, including Justin Freeman, the *Cigarettes Unlimited* defendants*,* investigators and Philip Morris/Altria.  The City said that (i) it produced everything it had received from Mr. Freeman and Altria, (ii) it would check and confirm for documents, communications, and information received from one of the investigators; and (iii) other than what it had already acknowledged receiving, it did not have any other relevant or responsive documents, communications, or information from any third parties.

For the reasons detailed below, Atlantic Dominion has grave concerns about the accuracy of the City's responses and the completeness of its production.

**5. Atlantic Dominion's concerns and the City's response**

Atlantic Dominion explained during the meet and confer that the City's position was inconsistent with the content of the documents it had previously produced. For example,

> o despite the City's position that it never interviewed – directly or indirectly – any defendants in the *Cigarettes Unlimited* case aside from Lash, Riley, and one repeat trafficker, the City produced a communication with the attorneys for defendants in the *Cigarettes Unlimited* case in which Mr. Proshansky wrote that "**we plan to contact the former Cig Unlimited folks** who were jour [sic] clients - **Peters-Branden, Fox etc**. Only to see what they can tell us about AD."  Mr. Proshansky similarly stated in an email to Tom Lesnak "**I want to contact some of the other store folks** — the clerks and managers and see what they have to say – they may have had convos with the AD delivery guys that could be revealing."

> o despite the City's position that it never received anything from the United States Attorney's Office for the Eastern District of North Carolina, Mr. Proshansky sent an email to the attorneys in *Cigarettes Unlimited* stating "Probably helpful to our

discussion to let you know that the criminal investigation of AD is not going to go forward . . . **The discovery and witnesses have been released to me.**"

o   despite Mr. Proshansky saying that he had "never heard" of Cumberland County and asserting that the City did not receive documents from the Cumberland County Sheriff's Office, the City's production includes (i) an email exchange between Mr. Proshanksy and Frank Brostrom, whom the City identifies as its investigator, in which Mr. Brostrom mentioned a "big case that we handed to the Cumberland County Sheriff after I developed 2 informants[.] I have a lot of old Intel and will refresh it." and Mr. Proshanksy responded "This sounds promising. I'm eager to hear whatever you find out." and (ii) a document titled "2018-INT-0793 11082018 **Cumberland Cnty SO** LE Contact Intl - Intelligence Report - (ID 156457).pdf" that states "Investigator Frank R. Brostrom spoke with a law enforcement contact who is a Detective with the Cumberland County Sheriffs Office (CCSO). **The contact provided information to Investigator Brostrom** as a subject matter expert and to check Altria databases for additional information."  Moreover, the City is still withholding as privileged an "email chain" received by Mr. Proshansky with the subject "**Re: Cumberland County SO**."[4]

o   despite the City's representation that it never interviewed any employees of Altria, it  produced( i) an email chain with the two Altria employees listed above in which Mr. Proshansky scheduled and the rescheduled a discussion of "the availability of information concerning Atlantic Dominion to the City;" ( ii) an invitation to the two Altria employees listed above for a Zoom call titled "**Atlantic Dominion**" with the message "See you tomorrow!;" and (iii) an email from one of the Altria employees listed above to Mr. Proshansky sent a month after the Zoom invitation beginning "**I wanted to follow up on our discussions related to Atlantic Dominion**…"

o   despite Mr. Proshansky's representation that (i) that there was no one in attendance at the interviews with Justin Freeman other than Freeman's attorney and (ii)  there were no transcripts, recordings or notes concerning the interview, the City produced an email exchange between Mr. Proshansky and Mr. Brostrom that reads as follows

   Proshansky: I have a Zoom interview scheduled with Justin Freeman for next Monday at 3 pm if that works for you both.

   Brostrom: **Yes I will be there** and I read the emails. Do y'all want to talk before the interview?

---

[4] This is both in the privilege log the City provided prior to the June 7, 2023 status conference where it represented to the Court that the log was complete, as well as on the new privilege log the City provided on June 14, 2023, which reversed its position that the log that was the subject of the status conference was complete  Moreover, and as will be more fully discussed in Atlantic Dominion's forthcoming motion to compel related to the City's privilege assertion, each time the City releases a few previously withheld documents it reproduces and replaces unchanged documents as well – containing hundreds or thousands of previously produced documents – making it more difficult to ascertain what is newly produced and extremely expensive and time consuming to review.  Such sharp discovery practices would not be countenanced from a private party and New York City should not be permitted to act this way.

> Proshansky: Definitely. And you are going to do an outline of qus?
>
> Brostrom:  yes I will for sure. **I will have something well before then that you can add to if you want to**

as well as a Zoom invitation titled "Justin Freeman Interview" from Mr. Proshansky to Mr. Brostrom.

Atlantic Dominion referenced the documents underlying these discrepancies and others, by Bates number, in its letters to the City in March 2023 in expressing its concerns.  Mr. Proshansky advised that the City would review the cited documents and amend its answers if necessary, but to date we have not heard back.

Indeed, the City has not event provided the documents and information it conceded during the meet and confer that it has in its possession. Thus, the City has not provided the full recordings from which it created the short interview excerpts that it created in April, or produced any transcripts for those interviews.  Nor has it identified the participants.  Similarly, the City has not provided any further information regarding the documents and information it obtained from the Spotsylvania County Sheriff's Office but returned to Mr. Riley.

Instead, last Friday evening, the City circulated "files from USB drives obtained from the Spotsylvania Sheriff in connection with search warrants executed on John Lash and Stephen Riley" which it indicated it was "processing … for a more proper production" at a later date. That date has not yet arrived, but what the circulated material contains 6,760 files.  While certain of the files cannot be accessed in the form the City provided it, it appears that more than 4,000 of the files – that is, the majority of the material – are Lash and Riley family photographs and home videos, while another several hundred are other graphics-related files.

On Monday, June 26, the City circulated one further recorded interview it had conducted with Thomas Guglielmo, another defendant in *Cigarettes Unlimited*, again indicating that a

7

properly produced version would follow.  And while Atlantic Dominion is still awaiting both "proper productions," we note that Mr. Guglielmo specifically commented on deposition testimony provided by Debra Antico, another *Cigarettes Unlimited* defendant, the existence of which directly contradicts the City's representations that there were no other documents, communications, or information from the other *Cigarettes Unlimited* defendants.

More fundamentally, despite our requests during at the court conference and at the meet and confer, the City still has not provided any indication about the scope of its search for relevant and responsive documents and information, how much it has left to produce or when the production will be made.  Nor has it provided any further information about what documents it previously had in its possession custody, or control, but can no longer produce, and why.

At bottom, Atlantic Dominion's concern is this:  Mr. Proshansky is (1) the custodian and author of many of the responsive documents and communications; (2) counsel representing the City in this matter; (3) the individual directing the search for documents; and (4) the boss of the two City attorneys who currently appear in this matter, and the boss of the two City attorneys who previously appeared for the City in this case.

As both client and boss, it is unclear whether or to what extent Mr. Proshansky's emails and electronic and other records and files have been searched for responsive material, or if they have been searched by anyone other than himself. This is particularly of concern given Mr. Proshansky's remark at the meet and confer that responsive information may be stored in less than obvious locations because it was created or received during the pandemic.

The City should be ordered to search for the above categories of documents, to certify in writing how the search was conducted and by whom and whether any of the requested documents

do not exist (and if they once did, why they no longer do), and produce all responsive documents by **July 31, 2023.**

### B.  The City's Position

Pursuant to the Court's direction at the June 7, 2023 status conference, the Parties met and conferred by telephone on Friday June 16th for approximately one hour to answer Defendant's questions concerning the City's production of documents related to a City investigation and litigation of a closed case, *City of New York* v. *Cigarettes Unlimited*, No. 1:19-cv-03998-ILG-RLM (E.D.N.Y.).[5] Counsel for both sides agreed that the session was productive. The City answered an abundance of questions concerning its investigations and the materials obtained in connection with the *Cigarettes Unlimited* case and subsequently produced documents from several USB drives and one recorded video interview, and continues to search for additional documents.

Atlantic Dominion's counsel asked detailed questions about possible interviews of certain persons connected with the *Cigarettes Unlimited* case that Atlantic Dominion believed had taken place and been recorded and/or transcribed. The City was also queried about materials that Atlantic Dominion believed the City had obtained from the Spotsylvania Sheriff pursuant to search warrants or from the *Cigarettes Unlimited* defendants during settlement negotiations (including materials that Atlantic Dominion believed the City might have viewed or accessed but did not retain copies of). Eric Proshansky was asked virtually all of the questions during the conference and responded in detail to the best of his recollection. The City agreed to conduct additional searches, in particular for full-length recordings of certain interviews of Stephen Riley and Julius

---

[5] *Cigarettes Unlimited* concerned the trafficking of cigarettes to New York City from retail stores in Virginia. The case was brought to the City by the Spotsylvania County (Virginia) Sheriff's office, which also provided most of the evidence. *Cigarettes Unlimited* settled before significant discovery had occurred and while a motion to dismiss for lack of personal jurisdiction was still pending. The case gave rise to the City's interest in Atlantic Dominion, the sole wholesale supplier of cigarettes to Cigarettes Unlimited.

9

Peters-Brandon that had been conducted by the Spotsylvania County Sheriff's office, excerpts from which had been transcribed and filed in connection with the motion to dismiss in *Cigarettes Unlimited. See* ECF Nos. 37-4 & 37-5 in Case No. 1:19-cv-03998 (E.D.N.Y.).

Although the City explained at the June 16th meet and confer that many documents Atlantic Dominion believed existed in fact did not, the City has since conducted additional searches of each of Eric Proshansky's two office computers and the Law Department's shared network drive and internal document management system. On Friday June 23, Plaintiff produced the contents of four USB drives obtained from the Spotsylvania Sherriff in connection with search warrants executed on John Lash and Stephen Riley. The materials had been reviewed previously by the City and deemed non-responsive, but were produced in an abundance of caution. On Monday June 26, Plaintiff produced a recorded video interview with Thomas Guglielmo, a cigarette trafficker in *Cigarettes Unlimited* who had no knowledge pertaining to Atlantic Dominion.[6] With respect to Defendant's request for full-length recordings of the interviews of Stephen Riley and Julius Peters-Brandon, Plaintiff's counsel has been unable to locate copies on its computer systems and has requested them from the Spotsylvania Sheriff.[7]

The discovery disputes regarding the City's production in this case center on Atlantic Dominion's largely irrelevant—for purposes of document production—focus on the closed *Cigarettes Unlimited* case. Often misconstruing the import of fragmentary comments by the City's counsel in emails concerning Cigarettes Unlimited, Atlantic Dominion suspects the existence of

---

[6] In view of the time required for document processing for a formal production, Plaintiff's counsel provided the recorded Guglielmo interview and the documents from the USB drives to Defendant as zip files as soon as they were available. The files are still being processed and Plaintiff's counsel expects to make a formal production shortly.

[7] Counsel for the City have expended numerous hours searching for, reviewing, and producing these documents, even though their relevance to this matter is unclear and most likely tangential at best. In contrast, Atlantic Dominion's counsel has refused to even hold a meet and confer conference call regarding its refusal to produce electronic sales data which is of core relevance to the case.

materials that actually never existed, as explained by the City during the June 16th call. Atlantic Dominion's misconceptions have been compounded by its insistence on written inquisitions addressing suspected (but non-existent) items of discovery in place of the easier and more rapid resolution available by a call to the City's counsel, never undertaken until the Court's admonition to do so.

We address below, item-by-item, the misapprehensions that Atlantic Dominion continues to hold, even following the explanations at the meet and confer. It is worth noting at the outset is that the City has laid out virtually all of its relevant evidence against Atlantic Dominion in the City's opposition to the motion to dismiss.[8] With respect to the *Cigarettes Unlimited* case, the relevant evidence that emerged there was confined to the testimony of Cigarettes Unlimited's two owners, John Lash and Stephen Riley, both of whom testified in video interviews conducted by the City and long since produced to Atlantic Dominion that Atlantic Dominion executives assured Lash and Riley that Cigarettes Unlimited could sell unlimited quantities of cigarettes to out-of-state buyers.[9]

To address Atlantic Dominion's specific concerns:

1. **Interviews conducted by law enforcement**

   a. The purportedly "incomplete" interview of John Lash was produced precisely as received from the Spotsylvania Sheriff. We already explained to counsel that the interview was apparently chaotic—for reasons that can be heard on the tape

---

[8] We say "virtually" all because the City has not filed an affidavit of a former Atlantic Dominion employee (already produced to Atlantic Dominion) in which the employee describes Atlantic Dominion executives' knowledge that cigarettes Atlantic Dominion supplied to certain North Carolina stores were bootlegged to the City.

[9] Stephen Riley was interviewed twice, first by the Spotsylvania County Sheriff and second by the City. Riley made his statement concerning Atlantic Dominion in the second, non-excerpted interview. Riley did not mention Atlantic Dominion during the first interview, excerpts from which were filed in connection with the motion to dismiss in *Cigarettes Unlimited* and also produced. As noted, counsel for the City have asked the Spotsylvania Sheriff for the full recording.

itself, which explains its mid-sentence beginning and end.[10] The interview contains nothing about Atlantic Dominion and the City had no role in creating it and did not edit it.

b.   Atlantic Dominion is correct that <u>two</u> (not six) other interviews were produced in the form of excerpts made by the City from tapes provided to the City by the Spotsylvania Sheriff.[11] We have been unable to locate the full tapes as originally received from the Spotsylvania Sheriff. We have contacted the Spotsylvania Sheriff's office to ask for replacement copies. To the extent we cannot locate the full interview, we would not seek to introduce the excerpts into evidence, which in any event do not refer to Atlantic Dominion.

2. **Interviews conducted by the City**

a. **Stephen Riley:** The City provided Atlantic Dominion with a video recording of the complete interview of Steven Riley conducted by the City**.** We have not located any notes were taken during the interview, and in any event any such notes would have been protected work product.

b. **Elizabeth Wickert and Darren Broughton:** The City informed Atlantic Dominion that no "interviews" at all were conducted or recorded of Elizabeth Wickert or Darren Broughton, neither of whom had to the City's knowledge any knowledge at all of Atlantic Dominion. Both individuals had access to or had curated Altria, Inc.'s investigative database, from which we sought and

---

[10] As explained to Atlantic Dominion's counsel, John Lash's wife was present at the interview and apparently suffered a fainting spell requiring the summoning of the local EMTs, who are also heard on the tape.

[11] Each of the two interviews is separated into three files, but only two individuals were interviewed. The interviews, conducted by the Spotsylvania County Sheriff, were of Stephen Riley, a Cigarettes Unlimited owner, and Julius Peters-Brandon, a Cigarettes Unlimited employee. *See* ECF Nos. 37-4 & 37-5 in *Cigarettes Unlimited*, No. 1:19-cv-03998 (E.D.N.Y.). Atlantic Dominion is not mentioned.

obtained records of Altria's investigation of Atlantic Dominion. Those records have all been produced to Atlantic Dominion.

c. **Justin Freeman:** The City did not record interviews with Justin Freeman, as we informed Atlantic Dominion at the June 16th meet and confer, and notes related to interviewing Justin Freeman have been appropriately logged as protected work product.

3. **Documents received from law enforcement and government attorneys**

a. **Tom Lesnak:** Atlantic Dominion' comments with respect to City investigator Tom Lesnak are unfounded. Mr. Lesnak reviewed documents from the Spotsylvania Sheriff's office that had been seized from the Cigarettes Unlimited stores and determined that there was nothing in them that bore on *this case.* For that reason, the records were returned to the Sheriff. Atlantic Dominion is not entitled to the production of third-party documents merely because they were reviewed by the City in the course of its investigation. Atlantic Dominion is fully capable of serving a subpoena on the Spotsylvania Sheriff for documents not in the City's possession, which the City had no obligation to retain. Counsel's incorrect statement that Atlantic Dominion has the "right" to decide whether documents are relevant or not would open an opponent's investigations to completely open-ended review, including documents not retained as part of the investigation.

4. **Documents received from alleged traffickers and other third parties**

a. As noted, the City informed Atlantic Dominion that it had produced the materials received from various third parties. The City did indeed interview

13

(and with one exception, did not record) the various traffickers in the *Cigarettes Unlimited* case. The declarations of those individuals are in the record of the *Cigarettes Unlimited* case. It is evident from the declarations that the traffickers provided no information relevant to Atlantic Dominion's business. To the City's knowledge, the declarants are all available to be interviewed by Atlantic Dominion.[12]

5.   Atlantic Dominion's "concerns" appear to be driven by a misapprehension of aspirational statements by the City's counsel as to events that never came to pass. The City did *wish* to conduct certain interviews referenced by Atlantic Dominion *but never did*, in part because the *Cigarettes Unlimited* case settled and the ongoing pandemic made continued investigations difficult. The statement as to "discovery and witnesses released to me" indicates that the City was permitted by the U.S. Attorney for the Eastern District of North Carolina to interview Justin Freeman, a potential witness in the U.S. Attorney's office's investigation of Atlantic Dominion. The reference to "discovery" to be turned over to the City is to Justin Freeman's documents, which have been produced to Atlantic Dominion. The City did not obtain any documents from the Cumberland County Sheriff. The City's investigator (former FBI agent Frank Brostrum) had provided Cumberland County with information used to prosecute Atlantic Dominion customer Justin Freeman for cigarette trafficking. Mr. Brostrum had retained some (but not all) of his historical reports concerning Mr. Freeman, which he provided to the City and which the City has produced to Atlantic Dominion, to the

---

[12] The one trafficker interview that was recorded (of Mr. Guglielmo) was of particular interest to the City as he had been a defendant in a prior City cigarette trafficking case and subject to a consent decree. That interview has been produced to Atlantic Dominion.

extent not privileged. As noted above, the referenced emails with Altria concerned access to an Altria database in which a complete set of Mr. Brostrum's reports had been maintained, but which Altria has since deleted. The conversations were not "interviews" concerning Atlantic Dominion but were discussions of how to locate Altria documents. The limited universe of documents obtained have been produced to Atlantic Dominion. The USB drives were produced by the City in an abundance of caution, to avoid further unfounded accusations, and consist of materials seized by the Spotsylvania Sheriff from John Lash and Stephen Riley in searches of their homes and personal computers. Atlantic Dominion appears not to have yet reviewed them but is now free to do so to determine if the family photos, personal tax returns, Cigarettes Unlimited employee records and other such materials are relevant.

Despite having responded to the above concerns, the City does not object to Atlantic Dominion's request for relief as we have no reason to resist conducting a further search. Our sole request is that the production date of anything discovered be set no earlier than August 31st in view of a long-planned family vacation and the absence of any urgency given the continued pendency of the motion to dismiss.

## II.   Atlantic Dominion's Production

### A.  The City's Position

During the Friday June 16 meet and confer, Atlantic Dominion refused to meaningfully discuss the City's outstanding requests that Atlantic Dominion produce electronic documents concerning its transactions with FreeCo, Cigarettes Unlimited, Bonnie's Bounty, Armstrong, T's Corner, and Village Tobacco.[13] The City's subsequent attempts to schedule another call have been rebuffed. Accordingly, the City respectfully requests that the Court order Atlantic Dominion to produce electronic data reflecting sales to the six retailers at issue in our document requests for the entire relevant time period.

Previously, the City had repeatedly requested (*see, e.g.,* Jan. 11, 2023 Status Report, ECF No. 54) that Atlantic Dominion provide information regarding the software it uses to invoice customers and maintain sales records. On February 15, 2023, Atlantic Dominion indicated that it uses software provided by TurningPoint Systems that requires command-line queries to generate reports and asserted that it would be unduly burdensome to generate any such reports using the command-line interface, but offered to produce reports that had already been generated.[14] On April 19, 2023, the City's counsel wrote a letter insisting that Atlantic Dominion "produce reports generated from the Turning Point system reflecting sales to the six retailers at issue in our document requests for the entire relevant time period" and, to the extent Atlantic Dominion claimed that doing so would be unduly burdensome, that it substantiate that assertion by providing

---

[13] *See* Requests 2, 4, 6, 8, 10, 12 of Plaintiff's First Set of Requests for Production. Such discovery is highly relevant because Atlantic Dominion sold cigarettes to these six retailers in sufficiently large quantities such that Phillip Morris USA Inc. flagged those entities to Atlantic Dominion on several occasions in 2019 and 2020. Any assertion by Atlantic Dominion that it believed its cigarettes were only being sold locally cannot be assessed without knowing the quantity of cigarettes Atlantic Dominion sold to different retailers at different times. The City has repeatedly explained the importance of this evidence.

[14] As of today, Atlantic Dominion has produced a total of six spreadsheets documenting sales to a total of three Cigarettes Unlimited locations from January 2017 through February 2018 (and for one location, through July 2019).

a "detailed explanation as to the nature of the claimed burden" (in part by specifying "which specific software package…Atlantic Dominion uses" and providing "information or documentation regarding the command-line interface, the process for generating reports, and the relevant query syntax"). The City specifically cited several legal authorities for each of these requirements.[15]

On June 16, after approximately an hour of Mr. Proshansky answering detailed questions from Atlantic Dominion's counsel about the City's productions and related investigations, Atlantic Dominion refused to provide any of this requested information on the grounds that it needed to see additional caselaw.

On Wednesday June 21, counsel for the City emailed Atlantic Dominion's counsel asking when they were available to meet and confer about the questions asked in the April 19 letter as well as their overall position regarding these document requests. Atlantic Dominion's counsel responded on June 22 claiming that the June 16 conference "also covered" what they mischaracterized as "the City's request for an additional copy of the invoices, in a different form" and refused to state their availability for a discussion until they had received additional caselaw. The next day, counsel for the City sent an email explaining once again the difference between "a spreadsheet from which one can quickly see trends, and thousands of scanned invoices that would

___

[15] Specifically, the City cited Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment (information ordinarily maintained "in a way that makes it searchable by electronic means… should not be produced in a form that removes or significantly degrades this feature"); *N. Shore-Long Island Jewish Health Sys. v. Multiplan, Inc.*, 325 F.R.D. 36, 51 (E.D.N.Y. 2018) ("Courts regularly require parties to produce reports from dynamic databases" because "requiring a party to query an existing dynamic database for relevant information" is not the same as requiring it "to create completely new documents"); *Tigi Linea Corp. v. Prof'l Prods. Grp., LLC*, No. 4:19-cv-00840-RWS-KPJ, 2021 U.S. Dist. LEXIS 92071, at *17-18 (E.D. Tex. May 14, 2021) (compelling the production of "sales information created in the ordinary course of business" and noting that "production would be relatively easy" because "employees routinely retrieve the requested information" from the Oracle database); and *Martinez v. City of N.Y.*, No. 16 CV 79 (AMD) (CLP), 2017 U.S. Dist. LEXIS 205854, at *2-3 (E.D.N.Y. Dec. 14, 2017) (a party resisting discovery must "show specifically how each request is burdensome . . . by submitting affidavits or some detailed explanation as to the nature of the claimed burden") (citations omitted).

need to be manually tabulated" and citing 10 authorities demonstrating that querying a commonly

used database does not constitute the creation of a new document.[16] The June 23 email also

---

[16] Plaintiff's counsel cited the following authorities in their June 23 email: _Salcedo v. Milton S. Hershey Med. Ctr._, No. 1:19-cv-02201, 2023 U.S. Dist. LEXIS 38180, at *13 (M.D. Pa. Mar. 7, 2023) ("querying an existing electronic database to export relevant information does not require the creation of a new document"); _Mervyn v. Atlas Van Lines, Inc._, No. 13 C 3587, 2015 U.S. Dist. LEXIS 144376, at *21 (N.D. Ill. Oct. 23, 2015) ("requiring a party to query an existing database to produce reports for opposing parties is _not_ the same as requiring the creation of a new document" and "requiring the creation of new code does not necessarily create an undue technical burden" even though it would take "two weeks of active work to provide relevant data that Atlas is required to produce"); _N. Shore-Long Island Jewish Health Sys. v. Multiplan, Inc._, 325 F.R.D. 36, 51 (E.D.N.Y. 2018) ("To the extent MultiPlan can input search parameters and produce varying configurations of this raw data, and to the extent the data is otherwise discoverable, MultiPlan cannot avoid production without a more thorough showing that production would be unduly burdensome or costly… conclusory allegations that production would require a complicated departure from ordinary business protocol does not meet the burden established in Rule 26(b)(2)(B)"); _Apple Inc. v. Samsung Elecs. Co._, No. 12-CV-0630-LHK (PSG), 2013 U.S. Dist. LEXIS 116493, at *34 (N.D. Cal. Aug. 14, 2013) (while "a party should not be required to create completely new documents, that is not the same as requiring a party to query an existing dynamic database for relevant information. Courts regularly require parties to produce reports from dynamic databases, holding that the technical burden . . . of creating a new dataset for [ ] litigation does not excuse production"); _In re eBay Seller Antitrust Litig._, No. C 07-1882 JF (RS), 2009 U.S. Dist. LEXIS 132817, at *7 (N.D. Cal. Oct. 28, 2009) (requiring production of records regarding transactional data from dynamic database because "The Federal Rules of Civil Procedure clearly contemplate the production of information from dynamic databases", even though the required production could be characterized as "the Creat[ion of] a New Dataset of Historical Records"); _Adams v. Target Corp._, No. 1:21-cv-3352, 2021 U.S. Dist. LEXIS 154110, at *7-8 (N.D. Ill. Aug. 16, 2021) (granting motion to compel where the requested information "already exists in the bowels of Target's electronic data storage systems" but "does not currently exist in the format requested" and "Target would have to query those databases to recover the information and then put the data into a form in which it can be produced", because "the process Target would have to follow here is not analogous to creating a new document that does not otherwise exist as much as it is an exercise in figuring out how to produce existing information in a useable form"); _In re Honeywell Int'l, Inc. Sec. Litig._, 230 F.R.D. 293, 296 (S.D.N.Y. 2003) (defendant's accountants were required to produce electronic version of audit work papers and quarterly reviews of financial statements because hard copies already produced were essentially incomprehensible, as it was impossible to determine which attachment belonged with a particular work paper, and accountants failed to provide adequate means to decipher how documents are kept in usual course of business); 7 Moore's Federal Practice - Civil § 34.12[3]-[4][b] (3rd ed. 2013) (explaining that "if it is more cost efficient for a party to process the requested information in the form of a computer disc rather than a printout of the same information," "a party may be ordered to produce information in an electronic format" even if "a printout of the information has already been produced, and even when it is argued that the electronic information does not exist in the requested format"); _McGlone v. Centrus Energy Corp._, No. 2:19-cv-2196, 2020 U.S. Dist. LEXIS 138449, at *9 (S.D. Ohio Aug. 4, 2020) (refusing to quash subpoena on grounds that "responding to the subpoena will require ODH to create a document that currently does not exist"); _Conn. Fair Hous. Ctr. v. Corelogic Rental Prop. Sols., LLC_, No. 3:18-CV-705 (VLB), 2020 U.S. Dist. LEXIS 11867, at *22 (D. Conn. Jan. 24, 2020) (recognizing that the dispositive question is "whether [a producing party] would need to generate new documents to produce the requested reports or if instead it would only need to formulate new queries for an existing database" and ultimately denying motion to compel on grounds that the requested "reports would be new documents, rather than queries of old ones" because "how each offense is categorized—information necessary to answer the requests—does not currently exist for the vast majority of offenses in CrimSAFE's database").

explained the need to discuss "the specific database software, the protocols for entering queries and generating reports, what information is or is not stored in the database, and whether that information is coextensive with the information in any documents that have already been produced" and again asked when Atlantic Dominion's counsel were available to meet and confer. To date Atlantic Dominion's counsel have neither provided any additional information about their database software, nor clarified their position as to whether they've fully responded to the document requests in question, nor provided any times they are available to confer.

Accordingly, the City respectfully seeks an order compelling Atlantic Dominion to produce electronic data from its TurningPoint systems reflecting sales to the six retailers at issue in our document requests for the entire relevant time period.

### B.  Atlantic Dominion's Position

In contrast to the deficiencies in the City's production discussed above, Atlantic Dominion has produced the documents and information sought by the City, as modified by their agreement and the Court's direction.  The only open issue is the City's demands that Atlantic Dominion create electronic versions of invoices already produced as they existed.

Following the conference with the Court in May 2023, as well as the Parties' meet and confers that spring and summer, Atlantic Dominion collected and produced years' worth of documents concerning sales to six cigarette retailers.  In addition to communications with and about these retailers, the productions included years of invoices documenting transactions with these retailers.  These invoices are searchable and produced as they were maintained electronically in the normal course of business.

On December 5, 2022, counsel for the City emailed counsel for Atlantic Dominion suggesting that "Atlantic Dominion no doubt maintains electronic databases of its transactions

through which these invoices were produced" and requesting "that Atlantic Dominion produce its transaction records related to each of the 6 retailers it has produced invoices for in spreadsheet or other electronic form as soon as possible."

In response, counsel for Atlantic Dominion again confirmed with their client that that the records of the transactions had been produced in the form they are kept electronically in the normal course of business.  Counsel for Atlantic Dominion further confirmed that Atlantic Dominion does not maintain a spreadsheet of transaction records such as the one the City requested in its email and cited black letter law that a party need not create documents that do not exist in order to comply with a discovery demand that has already been satisfied.[17]  Atlantic Dominion agreed to produce any existing reports or spreadsheets containing the information at issue, and has since done so.

The City argues that Atlantic Dominion should still be required to compile these reports. At the meet and confer on June 16, counsel for Atlantic Dominion noted that it had not seen that any authority requiring a party to create documents for the purpose of production in discovery where the information sought has already been produced as it was maintained in the normal course of business.  We asked the City to send any authority that supports its position.

On June 23, the City circulated a number of cases for Atlantic Dominion's review.  These cases, however, are largely inapplicable.  Where parties in New York have been ordered to search a database and generate a report, it has been because the information had not otherwise been produced,[18] had been produced in a manner other than as kept in the normal course of business,[19]

---

[17] *See Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, No. 01 CIV. 7677 (SAS), 2002 WL 31309232, at *4 (S.D.N.Y. Oct. 15, 2002) (citing *Gen. Elec. Co. v. Macejka*, 252 A.D.2d 700, 701, 675 N.Y.S.2d 420, 420 (1998) ("it is axiomatic that a party may not be compelled to create documents in order to comply with discovery demands")).

[18] *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 52 (E.D.N.Y. 2018) (addressing "data that has not yet been produced.").

[19] *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 296–97 (S.D.N.Y. 2003) ("This Court finds that PWC's prior production of its workpapers is insufficient because they were not produced as kept in the usual course of business.").

20

or had been produced in a way that was unusable.[20]   In fact, the case law the City circulated

distinguishes between such cases and case where the information has already been provided.[21]

Here, Atlantic Dominion has produced the information in question as it is kept in the

normal course of business and the Federal Rules of Civil Procedure do "not require the responding

party to alter their record keeping to meet the [opposing party's] discovery categories."  *Bailey v.*

*Brookdale Univ. Hosp. Med. Ctr.*, No. CV162195ADSAKT, 2017 WL 2616957, at *3 (E.D.N.Y.

June 16, 2017) (quoting *Hill v. Stewart*, No. 10CV538S, 2011 WL 4439445, at *5 (W.D.N.Y. Sept.

23, 2011).  Moreover, consistent with the Federal Rules, courts throughout the Second Circuit have

repeatedly held that "[a] party is not required to 'produce the same electronically stored

information in more than one form.'"  *A & R Body Specialty & Collision Works, Inc. v. Progressive*

*Cas. Ins. Co.*, No. 3:07CV929 WWE, 2014 WL 4437684, at *3 (D. Conn. Sept. 9, 2014) (quoting

Fed R. Civ. P. 34(b)(2)(E)(iii)).[22]   The City has not presented any reason to deviate from Atlantic

Dominion's obligations under the Federal Rules.

In addition to the forgoing distinctions, the cases the City cites repeatedly emphasize the

need of the requesting party for the information at hand.[23]   The City has not articulated any pressing

---

[20] *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 296–97 (S.D.N.Y. 2003) ("Specifically, plaintiffs argue that the workpapers were produced in a way that makes it impossible to determine which attachment belongs with a particular workpaper.").

[21] *See, e.g., N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 52 (E.D.N.Y. 2018) (discussing *A & R Body Speciality and Collision Works, Inc. v. Progressive Cas. Ins. Co.* in which "The court … declined to order defendants to merge data they had already produced…").

[22] *See also Elhannon LLC v. F.A. Bartlett Tree Expert Co.*, No. 2:14-CV-262, 2017 WL 1382024, at *7 (D. Vt. Apr. 18, 2017) ("Therefore, if ESI data is produced in one form, then the responding party need not re-produce it in the Plaintiff's preferred form."); *Mamakos v. United Airlines, Inc.*, No. CV147294JFBAKT, 2018 WL 4861392, at *3 (E.D.N.Y. Sept. 28, 2018) ("'A party need not produce the same electronically stored information in more than one form'" (quoting Fed R. Civ. P. 34(b)).

[23] *Mervyn v. Atlas Van Lines, Inc.*, No. 13 C 3587, 2015 WL 12826474, at *6 (N.D. Ill. Oct. 23, 2015) ("Mervyn needs this data for Plaintiff's expert to determine whether, and to what extent, the owner-operators' in the putative class were damaged by the terms in the PVOs."); *In re eBay Seller Antitrust Litig.*, No. C 07-1882 JF (RS), 2009 WL 3613511, at *3 (N.D. Cal. Oct. 28, 2009) ("Plaintiffs contend that the data eBay has provided thus far does not cover the entire class period and is aggregate data rather than the raw data needed to create the statistical models necessary for their case.").

need related to its case against Atlantic Dominion.  And, given the production to date by the City, it will never be able to do so.  There is nothing in the City's production that indicates any of these stores engaged in cigarette trafficking with Atlantic Dominion as a co-conspirator.  In fact, for the four stores – which are neither named nor referenced in any pleading or filing – there is no connection evident between the retailers and the City's claims at all.

The City only circulated its account of this issue at a quarter to 3:00 this afternoon.  Atlantic Dominion disputes that it refused to meaningfully discuss the City's request during the June 16 hearing.  Atlantic Dominion explained that the case law it had seen was inapposite to the City's position and asked the City to circulate the basis for its authority.  The City agreed, without raising the questions of burden that it does now, and then waited a week to circulate any case law.  In response to the City's request for a further discussion, Atlantic Dominion proposed circulating the Parties respective positions and received no substantive response until the nearly 3:00 this afternoon.

Atlantic Dominion should not be required to create documents for production or reproduce in another form ESI that was produced in the manner it was kept in the normal course of business.

Dated:   New York, New York
         June 30, 2023


HON. SYLVIA O. HINDS-RADIX                TROUTMAN PEPPER HAMILTON
Corporation Counsel of the               SANDERS LLP
  City of New York                       *Attorneys for Defendant*
*Attorney for Plaintiff*


By:  */s/ Eric Proshansky*               By:  */s/ Avi Schick*
Krista Friedrich                         Avi Schick
Eric Proshansky                          Mary Grace W. Metcalfe
Aatif Iqbal                              870 Third Ave
Assistant Corporation Counsel            New York, NY 10022
100 Church Street                        (212) 704-6000
New York, New York 10007
(212) 356-2610