**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

THE CITY OF NEW YORK

                    Plaintiff,

    v.

OLD DOMINION TOBACCO COMPANY,
INCORPORATED d/b/a ATLANTIC
DOMINION DISTRIBUTORS,

               Defendant.

Case No. 1:20-cv-05965

**DEFENDANT'S MEMORANDUM OF LAW**
**REGARDING THE INSUFFICIENCY OF PLAINTIFF'S**
**PRIVILEGE LOG AND TO COMPEL PRODUCTION**

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

Avi Schick, Esq.
Mary Grace W. Metcalfe, Esq.
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6000
avi.schick@troutman.com
marygrace.metcalfe@troutman.com

*Attorneys for Defendant*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............................... 2

STANDARD FOR ATTORNEY WORK PRODUCT AND PRIVILEGE LOGS ...................... 4

ARGUMENT ....................................................................................................................... 5

    A.   THE THIRD PRIVILEGE LOG FAILS TO IDENTIFY ALL THE
    DOCUMENTS AND COMMUNICATIONS THAT THE CITY IS
    WITHHOLDING. .......................................................................................... 6

        1.   THE CITY HAS FAILED TO LOG ALL WITHHELD
        COMMUNICATIONS. ....................................................................... 6

        2.   THE CITY IS WITHHOLDING ADDITIONAL, UNLOGGED
        DOCUMENTS AS "NONRESPONSIVE." ........................................... 9

    B.   THE DESCRIPTIONS PROVIDED BY THE CITY DO NOT COMPLY
    WITH THE REQUIREMENTS IN THE FEDERAL AND LOCAL RULES ....... 11

        1.   THE CITY'S DESCRIPTIONS FAIL TO ESTABLISH THE
        DOCUMENTS QUALIFY AS ATTORNEY WORK PRODUCT. ................... 11

        2.   THE THIRD PRIVILEGE LOG FAILS TO ESTABLISH THAT
        ANY APPLICABLE PRIVILEGE WASN'T WAIVED. .................................. 14

    C.   RELIEF ............................................................................................. 19

CONCLUSION .................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aiossa v. Bank of Am., N.A.*,
  2011 WL 4026902 (E.D.N.Y. Sept. 12, 2011) ...........................................................5

*Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*,
  252 F.R.D. 163 (S.D.N.Y. 2008) ...............................................................................4

*Amadei v. Nielsen*,
  2019 WL 8165492 (E.D.N.Y. Apr. 17, 2019) ..........................................................20

*BreathableBaby, LLC v. Crown Crafts, Inc.*,
  2013 WL 3350594 (D. Minn. May 31, 2013) .............................................................7

*In re Bystolic Antitrust Litig.*,
  2021 WL 878568 (S.D.N.Y. Mar. 9, 2021) .............................................................6, 7

*Cafex Commc'ns, Inc. v. Amazon Web Servs., Inc.*,
  2018 WL 1737686 (S.D.N.Y. Feb. 8, 2018).............................................................7, 9

*Carpenter v. Churchville Greene Homeowner's Ass'n*,
  2011 WL 4711961 (W.D.N.Y. Sept. 29, 2011) .........................................................14

*Chevron Corp. v. Donziger*,
  2013 WL 4045326 (S.D.N.Y. Aug. 9, 2013).........................................................2, 12

*Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*,
  331 F.R.D. 218 (E.D.N.Y. 2019) ...............................................................................5

*Cyris Jewels v. Casner*,
  2016 WL 2962203 (E.D.N.Y. May 20, 2016) ......................................................10, 11

*Go v. Rockefeller Univ.*,
  280 F.R.D. 165 (S.D.N.Y. 2012) ...............................................................................4

*In re Grand Jury Proc.*,
  219 F.3d 175 (2d Cir. 2000)......................................................................................19

*In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*,
  318 F.3d 379 (2d Cir. 2003)......................................................................................4

*Grinnell Corp. v. ITT Corp.*,
  222 F.R.D. 74 (S.D.N.Y. 2003) ................................................................................12

*Howell v. City of New York*,
   2007 WL 2815738 (E.D.N.Y. Sept. 25, 2007) ...................................................................10

*Khan v. Midland Funding LLC*,
   956 F. Supp. 2d 515 (S.D.N.Y. 2013).............................................................................5

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*,
   295 F.R.D. 28 (E.D.N.Y. 2013) ..............................................................................19

*Phillips v. City of New York*,
   2016 WL 11671471 (E.D.N.Y. Jan. 8, 2016) ...........................................................5

*Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.*,
   254 F.R.D. 238 (E.D. Pa. 2008)...........................................................................6

*Ricoh Co. v. Aeroflex Inc.*,
   219 F.R.D. 66 (S.D.N.Y. 2003) .....................................................................14, 17

*S.E.C. v. Yorkville Advisors, LLC*,
   300 F.R.D. 152 (S.D.N.Y. 2014) ...........................................................................12

*Sia Chue Yang v. Schwarzenegger*,
   2010 WL 11587074 (N.D. Cal. May 12, 2010) ........................................................6

*Sidari v. Orleans Cnty.*,
   2000 WL 33407343 (W.D.N.Y. Oct. 3, 2000) ........................................................16

*In re The City of New York*,
   607 F.3d 923 (2d Cir. 2010)...................................................................................16

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
   2021 WL 1968325 (S.D.N.Y. Mar. 31, 2021) ..........................................................5

*U.S. v. Schwimmer*,
   892 F.2d 237 (2d Cir. 1989)...................................................................................16

*Uni-Sys., LLC v. United States Tennis Ass'n, Inc.*,
   2019 WL 11663799 (E.D.N.Y. Oct. 28, 2019)........................................................4

*United States v. Davita, Inc.*,
   301 F.R.D. 676 (N.D. Ga. 2014).............................................................................7

*In re Universal Serv. Fund Tel. Billing Pracs. Litig.*,
   232 F.R.D. 669 (D. Kan. 2005)...............................................................................7

*Universal Standard Inc. v. Target Corp.*,
   331 F.R.D. 80 (S.D.N.Y. 2019) ............................................................................20

*In re Vioxx Prods. Liab. Litig.*,
   501 F. Supp. 2d 789 (E.D. La.2007) ..........................................................................................6

*Walker v. United States*,
   2021 WL 4988151 (E.D.N.Y. Aug. 10, 2021) ..........................................................................19

**Other Authorities**

Federal Rule of Civil Procedure Rule 26(a) ....................................................................................4

Federal Rule of Civil Procedure Rule 26(b) ....................................................................................4

Local Civil Rule 26.2 ......................................................................................................................5

On June 7, 2023, Plaintiff the City of New York represented to this Court that its privilege log was not subject to any further review or revision.  Plaintiff urged that if Defendant believed the log was insufficient, it should file a motion.  Despite that representation, on June 14, 2023 the City sent over a privilege log with more than two dozen entries deleted and dozens others revised.

Because this most recent privilege log is still deficient, Defendant Atlantic Dominion hereby moves to compel the City to (1) provide a proper and complete privilege log that identifies all documents that have been withheld and includes the complete sender, recipient and subject matter information; and (2) produce documents that have been improperly withheld as privileged.

## PRELIMINARY STATEMENT

The City's third privilege log is still riddled with deficiencies and still serves as the City's basis for withholding relevant and responsive documents that cannot legitimately be characterized as privileged.  In particular:

- The City has not identified all the documents it is withholding.  Email chains are listed in such a way that individual communications are improperly omitted from the log, and the City is withholding documents and communications, including attachments to emails, without providing any explanation or justification.

- The descriptions in the log are incomplete.  The log does not detail the contents, recipients or the basis for the withholdings as required by the Federal and Local Rules.  Instead, the City has provided the same vague description nearly verbatim for the majority of the documents withheld.  This description is identical to the one previously provided for documents the City has since admitted are not privileged.

- The City is improperly withholding documents.  The log and the City's production reveal that the City has repeatedly waived privilege for documents it is withholding, either by providing them to third parties or by relying on them in its own filings.

The current log does not allow Atlantic Dominion to fully understand what documents and communications the City is withholding.  Because the City has not complied with its obligations under the Federal and Local Rules, the Court should direct the City to produce the documents for which no valid assertion of privilege exists, and to finally provide a complete log.

1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In May 2020, the City threatened to add Atlantic Dominion as a defendant in the then-pending case *The City of New York v. Cigarettes Unlimited, L.C.* (19-cv-3998) (the "*Cigarettes Unlimited* case"). Affidavit of Kevin Barney ("Barney Aff.") at ¶ 1. Over the summer and fall of 2020, the City proposed a possible resolution without litigation that would include the retention by Atlantic Dominion of Vincent Lesnak to serve as an independent, third-party monitor. *Id.* ¶ 3.

Atlantic Dominion met with Lesnak and his colleague Teresa Hinson in August 2020 to discuss the proposed monitorship. Barney Aff. ¶ 4. At that meeting, Lesnak made a number of statements that concerned Atlantic Dominion. *Id.* ¶¶ 6-7. Atlantic Dominion told the City it was concerned about Lesnak, and questioned why the City was demanding they pay Lesnak a fee of nearly half-a-million-dollars. *Id.* ¶¶ 8, 10. Atlantic Dominion suggested that other monitor candidates be identified, but the City insisted that Lesnak must be hired. *Id.* ¶ 9.

In October 2020, while Atlantic Dominion and the City were still discussing a resolution and monitorship, the City settled the *Cigarettes Unlimited* case. The 21 defendants named therein paid an aggregate amount of less than $200,000 to resolve that case.

The City commenced this action on December 8, 2020, and a motion to dismiss pursuant to 12(b)(2) and (6) was fully submitted by September 2, 2021. While the motion to dismiss has been pending, the Parties have engaged in document discovery.

During a conference before this Court on May 19, 2022, counsel for Atlantic Dominion expressed concern that the City was withholding documents from its production. The Court held that the City would "have to list on a privilege log anything that they're withholding" and ordered that the privilege log contain "all the relevant information that someone needs to assess whether the assertion of the privilege is valid." Doc. 52 at 4-5 & 19-21.

2

The City circulated its first privilege log in the fall of 2022, and the entries on this log were the subject of correspondence and discussion between counsel through January 2023.  When Atlantic Dominion raised its concerns regarding the information missing from the City's logs during a conference before this Court on February 1, 2023, the Court instructed the City not to "hide the ball" and the City indicated that revised logs would be provided to Atlantic Dominion.

The City circulated revised logs on February 17, 2023.  Though that revised privilege log (the "Second Privilege Log") included information not previously disclosed, it still did not contain "all the relevant information that someone needs to assess whether the assertion of the privilege is valid," included documents that could not possibly be privileged, and contained entries that made it impossible to ascertain the nature and number of documents being withheld.  *See* Affirmation of Mary Grace W. Metcalfe ("Metcalfe Aff.") at Ex. A.

Atlantic Dominion raised these issues in letters dated February 27, March 8, and March 22 and, though the City indicated a response was forthcoming, Atlantic Dominion's concerns had still not been addressed when the Parties appeared before this Court for a conference on June 7, 2023.

During that Conference, the City represented to the Court that it had no further changes to make to its privilege log and that Atlantic Dominion should file a motion if it believed that there were deficiencies in the City's log.  The Court set a briefing for Atlantic Dominion's motion,[1] and stated that the prevailing party would be entitled to its costs and fees incurred in making the motion.

On June 14 the City reversed course and provided an updated privilege log (the "Third Privilege Log").  Metcalfe Aff. at ⁋ 5, Ex. B.  Twenty-five documents that had been withheld by the City pursuant to its First and Second Privilege Logs were produced on June 15.  *Id.* ⁋ 6.

---

[1] The Court initially set June 23, 2023 as the date by which Atlantic Dominion needed to file its motion, but at the request of the City, the due date was adjourned to July 7, 2023.

While this production and revised log cured some of the deficiencies repeatedly raised by Atlantic Dominion's letters and referenced during the June 7 conference with the Court, the Third Privilege Log still does not contain all the necessary and required information. Most egregiously, the City has not identified all the documents it is withholding, has used the same vague description regardless of the contents of the document, and is still withholding documents it exchanged with third parties, including counsel in other actions.

### STANDARD FOR ATTORNEY WORK PRODUCT AND PRIVILEGE LOGS

The City has abandoned its prior assertions of law enforcement and common interest privilege. Each of the 170 entries listed on the Third Privilege Log is now being withheld as attorney work product. "Under Rule 26(b)(3), the party asserting work product protection 'bears the burden of establishing its applicability to the case at hand' [which] includes demonstrating that the doctrine applies and that it has not been waived." *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003)). "To invoke the work product doctrine, the party withholding discovery must show that the withheld material is: (1) a document or tangible thing; (2) that was prepared in anticipation of litigation; and (3) was prepared by or for a party, or by his representative." *Uni-Sys., LLC v. U.S. Tennis Ass'n, Inc.*, No. 17-CV-147-KAM-CLP, 2019 WL 11663799, at *3 (E.D.N.Y. Oct. 28, 2019).

Where a party seeks to withhold documents as attorney work product, its "initial obligation is to prepare an index of withheld documents providing the specific information required by Fed.R.Civ.P. 26(b)(5) and Local Civil Rule 26.2." *Go v. Rockefeller Univ.*, 280 F.R.D. 165, 174 (S.D.N.Y. 2012). Federal Rule of Civil Procedure 26(b)(5) requires "that a party withholding discovery on the basis that the requested information is privileged or subject to work product protection must produce a log that 'describes the nature of the documents, communications, or

4

tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" *Phillips v. City of New York*, No. 15-CV-1795-JBW-CLP, 2016 WL 11671471, at *6 (E.D.N.Y. Jan. 8, 2016).  In turn, "Local Civ. R. 26.2(a)(2)(A) ordinarily requires that the privilege log identify, for each document withheld, the type of document, its general subject matter, date, author, addressees, and any other recipients, and, where not otherwise apparent, the relationship of the author, addresses, and recipients to each other." *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 18-CV-4044-BCM, 2021 WL 1968325, at *3 (S.D.N.Y. Mar. 31, 2021).  In these logs, "[t]he subject matter descriptor is ordinarily required to be fairly specific." *Id.*

Put simply, "the log must 'provide information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege.'" *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK JCF, 2013 WL 4045326, at *2 (S.D.N.Y. Aug. 9, 2013).  A privilege log is deficient where it "does not provide enough specific information to allow [a party] to understand much less challenge the designation." *Khan v. Midland Funding LLC*, 956 F. Supp. 2d 515, 518 (S.D.N.Y. 2013).

"In assessing the adequacy of a privilege log, courts must also ask whether it suffices to establish each element of the privilege or immunity that is claimed." *Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 331 F.R.D. 218, 227 (E.D.N.Y. 2019).  A privilege log is therefore also inadequate where it "merely includes information such as the author, recipients, and the subject heading line, and then conclusorily asserts that the described documents are privileged." *Aiossa v. Bank of Am., N.A.*, No. CV 10-01275 JS, 2011 WL 4026902, at *10 (E.D.N.Y. Sept. 12, 2011).

## ARGUMENT

The City's Third Privilege Log is fundamentally flawed in two ways.  First, despite the City's representations to the contrary, the Third Privilege Log does not identify all of the

documents the City is currently withholding.  Second, where the City does list the documents and communications it is withholding as attorney work product, the descriptions provided in the Third Privilege Log are insufficient.  The vast majority of the log entries do not provide Atlantic Dominion with sufficient information to determine whether the City has a proper basis for asserting privilege; whether any privilege has been waived; or whether the contents of the documents provide a basis to challenge any claim of privilege.

## A.   The Third Privilege Log fails to identify all the documents and communications that the City is withholding.

The Third Privilege Log does not identify all the documents the City is withholding.  A review of the Third Privilege Log alongside the City's production establishes that the City's logging of email chains does not fully disclose all of the communications that are being withheld. And the City's productions, including the supplemental production made on June 15, indicate that the City is withholding additional documents that it has not included on the Third Privilege Log.

## 1. The City has failed to log all withheld communications.

Courts across the country have held that "[e]ach email in an email thread 'is a separate communication, for which a privilege may or may not be applicable.'"  *In re Bystolic Antitrust Litig.*, No. 20-CV-5735 (LJL), 2021 WL 878568, at *4 (S.D.N.Y. Mar. 9, 2021).[2]  Therefore, when

---

[2] *See also Sia Chue Yang v. Schwarzenegger*, No. C 09-2306 CW (JL), 2010 WL 11587074, at *1 (N.D. Cal. May 12, 2010) ("The Court further orders Defendants to identify each individual email, not merely email 'strings.' Each email is a separate communication, for which a privilege may or may not be applicable."); *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 812 (E.D. La. 2007) ("Simply because technology has made it possible to physically link these separate communications . . . does not justify treating them as one communication and denying the demanding party a fair opportunity to evaluate privilege claims raised by the producing party"); *BreathableBaby, LLC v. Crown Crafts, Inc.*, No. 12-CV-94 PJS/TNL, 2013 WL 3350594, at *10 (D. Minn. May 31, 2013) ("Individual logging of each e-mail in a string makes it easier to evaluate and challenge any claims of privilege over numerous e-mails in a string."); *Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.*, 254 F.R.D. 238, 240–41 (E.D. Pa. 2008) ("[E]ach message of the string which is privileged must be separately logged in order to claim privilege in that particular document"); *United States v. Davita, Inc.*, 301 F.R.D. 676, 685 (N.D. Ga. 2014) ("A string of emails, after all, is not just a single communication. It reflects a series of different communications . . . . Logging the details of only the ultimate, top, email would not accurately state how many separate communications are included in the withheld document, and who received which of those communications. Such an approach may deprive Plaintiffs, and a reviewing Court, of the

compiling a privilege log, "[e]ach communication with respect to the asserted attorney-client privilege or work-product protection must be identified separately, including each e-mail message within an e-mail string because each e-mail message contains a separate communication for which no privilege or protection may be applicable." *Cafex Commc'ns, Inc. v. Amazon Web Servs., Inc.*, No. 17-CV-1349-VM-KNF, 2018 WL 1737686, at *9 (S.D.N.Y. Feb. 8, 2018) (noting lack of "any authority for the proposition that a party may aggregate all e-mail communications in a string claiming privilege for the aggregate while describing, in the privilege log, only the most recent e-mail communication in the string"). Logs that do not do so "limit the ability of the parties and the Court to effectively evaluate the basis of the privilege asserted." *In re Bystolic Antitrust Litig.*, 2021 WL 878568, at *4.

More than half of the entries in the Third Privilege Log either begin with or state in their entirety some version of the following:

> Communication (email chain) regarding this litigation (related to factual investigation of FreeCo) between Plaintiff's counsel and Frank Brostrom, an investigator engaged by Plaintiff to perform investigative tasks in connection with this and other litigation.

Metcalfe Aff. at ¶¶ 7-8, Ex. C. Though the description of the "factual investigation" is sometimes changed to include other cigarette retailers and/or Atlantic Dominion, and the name of the investigator varies, not one of these entries indicates how many emails in these chains are being withheld; their dates, senders and recipients; or an individualized basis for the asserted privilege. As a result, Atlantic Dominion does know how many documents the City is actually still withholding, much less which and why.

The concrete nature of the problem can be demonstrated by Atlantic Dominion's ongoing

---

ability to assess the claim of privilege."); *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 232 F.R.D. 669, 674 (D. Kan. 2005) (explaining that counsel "should list each e-mail within a strand as a separate entry").

review of the City's most recent production.  The documents include NYC_0012552 and NYC_0012543, two emails in a chain dated November 23, 2021, with the subject matter "RE: [EXTERNAL] Email."  Both of these documents were previously withheld as privileged (using the same language quoted above),[3] and were only produced on June 15.  Metcalfe Aff. at ¶ 9, Ex. D.  These newly-produced documents demonstrate that the City did not identify every email in the chain in two prior logs.  Specifically, the City omitted the initial email in the chain, in which Mr. Brostrom provides Mr. Proshansky with the "Company email and Password" for cigarette retailer FreeCo Inc. as well the "Personal email" and password for its owner Justin Freeman, both of whom the City claims engaged in cigarette trafficking and corresponded with Atlantic Dominion.  *Id.*

Based on the City's logs, Atlantic Dominion would never have known that this email – which both identifies sources of discoverable material relevant to the City's allegations and calls into question the completeness of the initial disclosures the City served two weeks after this exchange – either existed or was being withheld.  The log deprived Atlantic Dominion of the information necessary to mount a challenge to the City's withholding.

This issue can also be seen in NYC_0012531, also produced June 15, which is one of a couple of branching email chains with the subject "Re: Justin Freeman," most of which are dated April 6, 2021.  Metcalfe Aff. at ¶ 9, Ex. E.  The initial email in the chain – in which Mr. Proshansky simply states, "I have a Zoom interview scheduled with Justin Freeman for next Monday at 3 pm if that works for you both." – was produced, and the third email in the chain was initially logged as privileged with the same explanation[4] listed above.  But the second email in which Mr. Brostrom states only, "Yes I will be there and I read the emails. Do y'all want to talk before the interview?"

---

[3] *See* Metcalfe Aff. Ex. A at DMNL00241_000014321 & DMNL00241_000013497.
[4] *See* Metcalfe Aff. Ex. A at DMNL00241_000006389.

was both withheld and omitted from the prior two logs.  *Compare* Metcalfe Aff. Ex. E *with id.* Ex. A.  Again, Atlantic Dominion would never have known this email – which identifies discoverable material[5] – either existed or was being withheld.

In total, 95 of the 170 entries in the Third Privilege Log are identified as an "email chain" without specifying the number of emails in the chain, their dates, their sender, their recipient(s), or difference in their contents.  Metcalfe Aff. at ₽ 9, Ex. C.  The Third Privilege Log therefore is still deficient as it does not properly identify how many documents the City is still withholding, which ones, or why.  *See, e.g.*, *Cafex Commc'ns, Inc.*, 2018 WL 1737686, at *9 (finding logs aggregating emails in strings "deficient and misleading").

**2. The City is withholding additional, unlogged documents as "nonresponsive."**

During the conference with the Court on June 7, the City represented that it was no longer redacting any documents and that all documents it was still withholding were identified in the Second Privilege Log.  But a review of the City's production reveals that this is not the case.  In addition to withholding documents on the basis of attorney work product as identified in the Third Privilege Log, the City is apparently withholding dozens of other documents as "non-responsive."

This can be seen in the documents the City produced June 15,[6] which include an email sent from Mr. Proshansky to Assistant United States Attorney Sebastian Kielmanovich on March 5, 2021, with the subject "atlantic."  Metcalfe Aff. ₽ 11, Ex. G.  While the body of the email does not appear to contain any text aside from Mr. Proshansky's signature, the email lists nine attachments

- Justic Freeman Summary.msg.msg;
- Atlantic Dominion Case.msg.msg;

---

[5] In addition to identifying both a non-attorney witness to the interview as well as relevant emails, the exchange contradicts the City's representations during the June 16, 2023 meet-and-confer that no one other than Mr. Freeman, his counsel, and counsel for the City attended Mr. Freeman's interviews.

[6] As a further example, the City's production on June 15 also includes a not-previously produced document withheld for privilege (NYC_0012545), which has an attachment that is withheld as "non-responsive."  (NYC_0012550).  Metcalfe Aff. at ₽ 12, Ex. E.  Neither NYC_0012545 nor NYC_0012550 appear in the Third Privilege Log.

- Fwd_.msg.msg;
- Fwd_.msg.msg;
- Atlantic Dominion.msg.msg;
- Atlantic Dominion.msg.msg;

- 23 to 27.msg.msg;
- _msg;
- email #2.msg.msg

Because these attached emails also included attachments, this email conveyed a total of 37 documents to Kielmanovich.  Metcalfe Aff. at ¶ 11, Ex. G.  The first of these documents has been withheld for privilege and was included on the Third Privilege Log, and documents two through fifteen have been produced.  But the remaining 22 documents have been withheld with slip sheets saying "non-responsive document" inserted into the production.  *Id.*

No list or log of the documents the City is withholding as "nonresponsive" has been provided, and the lack of information makes it impossible to confirm the nature and contents of the documents the City is withholding, or even how many.

It is unclear how documents which relate to or accompany others discussing Atlantic Dominion, the alleged trafficking, or witnesses thereto, can possibly be non-responsive.  In any event, "[i]t is not the practice of this court to permit parties to selectively excise from otherwise discoverable documents those portions that they deem not to be relevant."  *Howell*, 2007 WL 2815738, at *2.[7]

The withheld documents should be produced.  *See, e.g., Cyris Jewels*, at *5 (E.D.N.Y. May 20, 2016) (upholding order that the City produce information previously withheld as irrelevant and noting that "[t]he City's unilateral action has apparently raised the plaintiff's suspicions, and has deprived the [opposing party] of context").

---

[7] *See also Cyris Jewels v. Casner*, No. 12-CV-1895-KAM-SLT, 2016 WL 2962203, at *4 (E.D.N.Y. May 20, 2016) ("The City has cited no authority – and the court has found none – upholding a party's right to redact from admittedly responsive and relevant documents information based on that party's unilateral determinations of relevancy.").

**B.    The descriptions provided by the City do not comply with the requirements in the Federal and Local Rules.**

The entries for the documents and communications which the City has included on the Third Privilege Log do not meet the requirements imposed by the Federal and Local Rules.  The vast majority of the documents have been withheld as a "Communication regarding this litigation" with an "investigator engaged by Plaintiff" and "related to factual investigation of" either Atlantic Dominion or a cigarette retailer.[8]  This perfunctory description, endlessly repeated throughout the Third Privilege Log, does not provide Atlantic Dominion with the necessary information to understand what has been withheld, whether there are grounds to assert privilege, whether the privilege has been waived, and – if valid – whether the privilege can or should be challenged.

This is particularly concerning where information contained elsewhere in the Third Privilege Log or the City's production suggests that many of the documents were never privileged, that any applicable privilege was waived, and that, regardless of the applicability of any privilege, there are grounds to challenge the City's withholding based on substantial need.

**1. The City's descriptions fail to establish the documents qualify as attorney work product.**

Though the City produced some additional communications with its investigators more than a week after the June 7 conference with this Court, it still is withholding as Attorney Work Product 128 emails and email chains with individuals it describes as "investigators engaged by Plaintiff to perform investigative tasks in connection with this and other litigation."

The City lists 10 of these communications as with Vincent Lesnak,[9] 15 as with both Vincent Lesnak and Tom Lesnak,[10] and 103 as with Frank Brostrom.[11]  Aside from differences in which investigator or entity is at issue, the City has used the same description quoted above for

---

[8] For one entry, no explanation has been provided at all.  Metcalfe Aff. Ex. B at DMNL00241_000013929.
[9] Metcalfe Aff. at ¶ 12, Ex. H.
[10] Metcalfe Aff. at ¶ 13, Ex. I.
[11] Metcalfe Aff. at ¶ 14, Ex. J.

almost all of the withheld communications, and it previously used the same descriptions for documents in the Second Privilege Log for which it has since withdrawn its assertions of privilege.

"In order to satisfy the requirements of the [Federal and Local Rules], the index of documents withheld must, as to each document, set forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 158 (S.D.N.Y. 2014). Here, the descriptions do not set forth individualized facts for each of the documents that would establish they meet the elements of attorney work product. *See, e.g.*, *Grinnell Corp. v. ITT Corp.*, 222 F.R.D. 74, 78 (S.D.N.Y. 2003) (explaining that descriptions in privilege log, including "Memo re: documents reviewed at Grinnell's San Francisco's attorneys' offices. . . . do not on their face indicate that the documents reveal . . . mental impressions or . . . litigation strategy").

Moreover, a privilege log "rife with vague descriptions, such as 'Email concerning litigation status and strategy,' 'Email concerning litigation status and strategy re [instant] litigation,' [and] 'Email concerning litigation status and strategy re [Defendant],'" does not meet the requirements of the Federal and Local Rules because "[t]hese entries and similar ones give little guidance to the plaintiff as to whether a privilege is properly asserted." *Chevron Corp.*, 2013 WL 4045326, at *2.[12] These are exactly the sort of vague descriptions utilized by the City in the Third Privilege Log, where almost 130 of the 170 documents being withheld are described only as "Communication" – whether email or email chain – "regarding this litigation (related to factual investigation of Atlantic Dominion [and/or some combination of cigarette retailers])."

Each of these descriptions fails to meet the requirements for a privilege log under the

---

[12] *See also In re Int. Rate Swaps Antitrust Litig.*, No. 16-MC-2704 (PAE), 2018 WL 4179450, at *2 (S.D.N.Y. Aug. 23, 2018) (finding descriptions such as "Email requesting legal advice regarding draft talking points," "Document containing non-public supervisory information," and "Email chain reflecting confidential attorney-client communications with Artmann, Christian" as deficient and requiring "additional context").

Federal and Local Rules, but the ones involving Vincent and Tom Lesnak raise additional concerns.[13]  As set forth above, over the summer and fall of 2020, the City proposed and argued for the retention of Vincent Lesnak by Atlantic Dominion as an independent third-party monitor. Barney Aff. at ¶¶ 3-11.  Yet the documents the City is still withholding include material[14] exchanged in October 2020, before the City commenced this action and while discussions of Lesnak's service as an independent monitor were ongoing.

Similarly, the City is withholding an email chain with the subject "Re: AD FINANCIALS" which, while sent at least in part on December 27, 2020 – the same month the City filed its Complaint – appears to continue a conversation begun in August 2020, in which Lesnak indicated that he was going to have another, undisclosed third-party review and opine on Atlantic Dominion's financial information.[15]

Despite Atlantic Dominion repeatedly raising the issue, the City has offered no explanation of how materials exchanged with the person the City demanded Atlantic Dominion retain as an independent monitor could possibly be privileged.  *See, e.g.*, *Carpenter v. Churchville Greene Homeowner's Ass'n*, No. 09-CV-6552T, 2011 WL 4711961, at *10 (W.D.N.Y. Sept. 29, 2011) ("communications from non-parties to counsel for parties in a lawsuit generally do not qualify as attorney work product," and "[t]here is no legal basis to shield from disclosure a non-party's thoughts about a litigation that do not reveal counsel's opinions or strategies.").

---

[13] Separately, in the joint status report filed June 30, 2023, the City represented to the Court that Mr. Brostrom "had provided Cumberland County with information used to prosecute Atlantic Dominion customer Justin Freeman for cigarette trafficking. Mr. Brostrum had retained some (but not all) of his historical reports concerning Mr. Freeman, which he provided to the City and which the City has produced to Atlantic Dominion, to the extent not privileged." Doc. 64 at 14-15.  The City has not identified which of the "reports" from Mr. Brostrom that it is still withholding are "historical reports" that it now concedes were neither created for the City nor in anticipation of this litigation. Nor has it offered any explanation of how they could be privileged.

[14] See Metcalfe Aff. Ex. B at DMNL00241_000012820.  Because the communications being withheld is an "email chain," Atlantic Dominion has no way of knowing how many communications are at issue, when they were sent, or between whom, or if there were attachments that are being withheld.

[15] *Compare* Metcalfe Aff. Ex. B at DMNL00241_000006151 *with id.* Ex. K (in which Lesnak states he is "going to have [his] Wall Street guy give his impression of this company.")

The communications with Tom Lesnak are similarly problematic.  The City has withheld communications – including those that may reveal potential witnesses[16] and sources of discoverable material[17] – on the grounds that Tom Lesnak is an investigator "engaged by Plaintiff." But during the meet and confer on June 16, 2023, counsel for the City conceded that Tom Lesnak has not been formally retained by the City, has no contract or agreement with the City, and is not being compensated by the City.  Metcalfe Aff. at ¶ 16.  It is unclear, therefore, how he can possibly be "engaged" as an "investigator" as the City claims.  And "it is a stretch to apply the attorney work product privilege to documents created by a third party and then sent to counsel for a party" where no "agreement exists" between the attorney and the third party.  *Ricoh Co. v. Aeroflex Inc.*, 219 F.R.D. 66, 69 (S.D.N.Y. 2003).

**2. The Third Privilege Log fails to establish that any applicable privilege wasn't waived.**

Though the descriptions above do not provide adequate information for Atlantic Dominion to determine whether a basis to assert privilege exists, other data in the Third Privilege Log and in the City's productions suggest that any such privilege may have been waived by the City's dissemination of the allegedly privileged material and by its reliance on the withheld documents in opposition to Atlantic Dominion's pending Motion to Dismiss.

Each of Plaintiff's privilege logs has identified documents the City was seeking to withhold despite their having been exchanged with AUSA Sebastian Kielmanovich.  In the wake of the June 7 conference with the Court, the City indicated that it would no longer withhold communications on the grounds of law enforcement privilege or common interest and produced additional documents.  Despite this representation, the City is still withholding an email chain with

---

[16] *See, e.g.,* Metcalfe Aff. Ex. B at DMNL00241_000012465 (an email between Mr. Proshanksy and Messrs. Lesnak titled "this may be our guy to talk to re AD").
[17] *See, e.g.,* Metcalfe Aff. Ex. B at DMNL00241_000010199 (email between Mr. Proshanksy and Messrs. Lesnak titled "CU Files").

the subject "Fwd. Justic [*sic*] Freeman Summary" that was repeatedly shared with Kielmanovich, including as an attachment to the emails to Kielmanovich titled "atlantic" and "Atlantic Dominion" discussed above.[18]   And though the Third Privilege Log indicates this email is being withheld as attorney work product, the description still reads:

> Communication (email chain) regarding this litigation (related to factual investigation of FreeCo, Atlantic Dominion) between Plaintiff's counsel and Frank Brostrom, an investigator engaged by Plaintiff to perform investigative tasks in connection with this and other litigation. Plaintiff's counsel shared this communication and/or document with Sebastian Kielmanovich, a federal law enforcement official, in furtherance of the common interest in the prosecution of cigarette trafficking shared by federal law enforcement and Plaintiff.

As an initial matter, to the extent – contrary to its recent representations – that the City is still seeking to invoke the law enforcement privilege, it "must show that the documents in question contain (1) information pertaining to 'law enforcement techniques and procedures,' (2) information that would undermine 'the confidentiality of sources,' (3) information that would endanger 'witness and law enforcement personnel,' (4) information that would undermine 'the privacy of individuals involved in an investigation,' or (5) information that would seriously impair 'the ability of a law enforcement agency to conduct future investigations.'"   *In re The City of New York*, 607 F.3d 923, 948 (2d Cir. 2010).

Similarly, the common interest privilege "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel."   *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989).   The City has not established the basis for either privilege, nor can it.[19]

---

[18] The withheld email chain appears in the Third Privilege Log four times.   *See* Metcalfe Aff. Ex. B at DMNL00241_000010028, DMNL00241_000012735, DMNL00241_000010266, & DMNL00241_000012417.
[19] The Third Privilege Log also contains eight entries in which the "email chain…between plaintiff and Frank Brostrom … also includes discussion of Plaintiff's counsel's communications with Sebastian Kielmanovich, a federal law enforcement official, regarding a criminal investigation in North Carolina. Those communications were in

Regardless, by sharing the email chain – which presumably relates to Justi[n] Freeman – with AUSA Kielmanovich the City waived any work product privilege that may attach to these communications.  *See, e.g.*, *Sidari v. Orleans Cnty.*, No. 95-CV-7250, 2000 WL 33407343, at *8 (W.D.N.Y. Oct. 3, 2000) (attorney work-product privilege waived where "plaintiffs' counsel turned the tape over to the United States Attorney with knowledge that the Assistant U.S. Attorney prosecuting John Walsh intended to use the tape" in an ongoing case.).

The Third Privilege Log similarly lists as withheld the email "Atlantic Dominion Photographs" and attachment from Frank Brostrom to counsel for the City and copying Mike Fitzpatrick (mike@fitzlawgreenville.com), again with the following description:

> Communication (email chain) regarding this litigation (related to factual investigation of FreeCo, Atlantic Dominion) between Plaintiff's counsel and Frank Brostrom, an investigator engaged by Plaintiff to perform investigative tasks in connection with this and other litigation.

Despite the Local Rules requiring log entries to identify "recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other," the City does not disclose the identity or relationship of Mike Fitzpatrick.  Documents within the City's production, however, indicate that Mike Fitzpatrick was an attorney representing Justin Freeman in the criminal case brought by the United States Attorney's Office for the Eastern District of North Carolina.

The description provided in the Privilege Log – which does not address Mr. Fitzpatrick's inclusion in the email chain at all – fails to explain either how an email from a non-attorney copying an attorney for a third party could possibly be protected as attorney work product to begin with or why the inclusion of Mike Fitzpatrick did not act to waive whatever privilege might have existed.

---

furtherance of the common interest in the prosecution of cigarette trafficking shared by federal law enforcement and Plaintiff."  Metcalfe Aff. at ¶ 15.  Again, because the description does not articulate facts that would meet the elements either of attorney work product or common interest, the description fails to establish a basis for the withholding of this information.  In addition, as with the City's other descriptions, the one at issue here is the same as the ones for documents over which the City is no longer asserting privilege.  *See, e.g.*, Metcalfe Aff. at Ex. A at DMNL00241_000010283.

*See, e.g., Ricoh Co.*, 219 F.R.D. at 70 ("the practicalities of litigation suggest that Defendants waived protection for these e-mails under the work product doctrine when counsel shared his observations with a third-party who was likely to be an independent witness in the case").

Additionally, the context and data provided by the Third Privilege Log suggests that the City has waived any privilege it had with regard to a number of documents by relying on their contents in opposition to Atlantic Dominion's pending Motion to Dismiss. The Third Privilege Log lists 18 different documents authored by Frank Brostrom[20] withheld as attorney work product with the following description:

> Investigative report (related to factual investigation of Atlantic Dominion, FreeCo) drafted for purposes of this litigation by Frank Brostrom, an investigator hired by Plaintiff to perform investigative tasks in connection with this and other litigation.

Though there is nothing in these descriptions to distinguish these documents from each other – which, again, in and of itself renders the Third Privilege Log deficient – the other data within the chart indicates that the majority of these are unique and distinct documents. In fact, the names of the documents and the contexts of the emails to which they are attached suggest considerably more information about these documents than the descriptions.

For example, the documents "WSSLLC-2021-202-06072021 - Larry R Freeman, Jr.docx" and "WSSLLC-2021-202-06072021 - Brian Bullard.docx" have been withheld with the above captioned description but the file names appear to reference both a date – June 7, 2021 – and the names of two FreeCo employees – Larry R Freeman, Jr and Brian Bullard – upon whose affidavits the City relied in opposing the pending Motion to Dismiss. Both of these documents are attached to a withheld email titled "Brian Bullard and Richie Freeman Interviews" that Frank Brostrom sent to counsel for the City[21] on June 7, 2021 – that is, a little over a month before the affidavits by

---

[20] Metcalfe Aff. at ¶ 21.
[21] Metcalfe Aff. Ex. B at DMNL00241_000006349.

these individuals were executed.  *Compare* Metcalfe Aff. at Ex. B at DMNL00241_000006349 *with* Docs. 29-3 & 29-4.  These circumstances strongly suggest that additional interviews were conducted by Frank Brostrom and that the contents of these interviews were relied upon by the City in seeking to avoid the dismissal of its case.

More concerningly, similar documents have been withheld that reference current and former employees of Atlantic Dominion, such as "WSSLLC-2021-202-08042021 - Charles Herring002 .docx" attached to the withheld email titled "Follow up telcall with Witness Charles Herring on 8/4/2021" from Brostrom to counsel for the City on August 5, 2021[22] and "WSSLLC-2021-202-06072021 - Steven Craig Criss.docx" attached to attached to the withheld email titled "STEVEN CRAIG CRISS" from Brostrom to counsel for the City on June 8, 2021.[23]  In the case of Charles Herring, the City and Mr. Brostrom prepared an affidavit that Mr. Herring disputed as inaccurate and ultimately was not filed.

The existence of interviews by Mr. Brostrom of Messrs. Herring, Criss, Bullard and Larry Freeman would directly contradict the representation Mr. Proshansky made at the June 16 meet and confer that no such interviews took place.  Metcalfe Aff. at ¶ 17.  More immediately, Atlantic Dominion would have excellent grounds for challenging the withholding of documents related to these interviews because, in partially disclosing the contents of the interviews and relying upon them, the City has waived any privilege that may have attached to these documents.  *See Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 47 (E.D.N.Y. 2013), *aff'd,* 29 F. Supp. 3d 142 (E.D.N.Y. 2014) ("Assuming *arguendo* that the communications reviewed *in camera* were privileged (most of which were not), Defendants would have waived that privilege by asserting [their] affirmative defense"); *In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000) ("[F]airness

---

[22] Metcalfe Aff. Ex. B at DMNL00241_000014226 & DMNL00241_000014227.
[23] Metcalfe Aff. Ex. B at DMNL00241_000012485 & DMNL00241_000012486.

considerations arise when the party attempts to use the privilege both as 'a shield and a sword.' In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.").

Because these descriptions neither provide sufficient information to allow Atlantic Dominion to understand what is being withheld nor establish that the privilege the City seeks to invoke was not waived, these entries in the Third Privilege Log are also deficient.

## C.    Relief

"Courts in this circuit have refused to uphold a claim of privilege 'where privilege log entries fail to provide adequate information to support the claim,' or where 'no privilege log has been produced.'"  *Walker v. United States*, No. 18-CV-2829-ARR-CLP, 2021 WL 4988151, at *3 (E.D.N.Y. Aug. 10, 2021).   More specifically, "[c]ourts in this circuit have found that 'the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege.'"  *Amadei v. Nielsen*, No. 17-CV-5967-NGG-VMS, 2019 WL 8165492, at *5 (E.D.N.Y. Apr. 17, 2019).   "The same principle applies to the omission of critical information that would allow for a challenge to a claim of privilege."  *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 85 (S.D.N.Y. 2019).

It has been over a year since the City was directed to provide a log with "all the relevant information that someone needs to assess whether the assertion of the privilege is valid."  Doc. 52 at 19-21.  But even after numerous letters, repeated conferences, and the production of three logs, the City still has failed to provide a privilege log that allows Atlantic Dominion to assess and challenge the privilege being asserted over the vast majority of its documents.  The City has waived any privilege it may assert over the documents it has repeatedly failed to log and the

19

"communications" and "investigative reports" for which it has failed to provide the information necessary to evaluate the asserted privilege.

The City should be directed to produce the documents it is withholding. *Amadei*, 2019 WL 8165492, at *6 (upholding finding of waiver and order to produce documents where party repeatedly failed to produce a proper log over six months).  And, in accordance with this Court's June 7 Order, Atlantic Dominion should be awarded its costs and fees in preparing this motion.

## CONCLUSION

Plaintiff has repeatedly failed to provide an appropriate privilege log.  The documents identified above, a full list of which is attached as Exhibit M to the Metcalfe Affirmation, should be produced, a complete log listing all the remaining withheld documents should be provided, and Atlantic Dominion should be awarded its costs and fees in bringing this motion.

Dated: New York, New York
      July 7, 2023

TROUTMAN PEPPER
HAMILTON SANDERS LLP

By: */s/ Avi Schick*
    Avi Schick
    Mary Grace W. Metcalfe
    875 Third Avenue
    New York, New York 10022
    Tel: (212) 704-6000
    avi.schick@troutman.com
    marygrace.metcalfe@troutman.com

    *Attorneys for Defendant*
