UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                                 Plaintiff,

                -against-                             Civ. No. 20-cv-5965 (ENV-RER)

OLD DOMINION TOBACCO COMPANY,
INCORPORATED d/b/a ATLANTIC DOMINION
DISTRIBUTORS,

                                 Defendant.

------------------------------------------------------------------------- x

## DECLARATION OF ERIC PROSHANSKY

Eric Proshansky, under penalty of perjury pursuant to 28 U.S.C. § 1746, states as follows:

          1.      I am an Assistant Corporation Counsel in the Office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, attorney for Plaintiff the City of New York ("City"). I make this declaration based on my personal knowledge to provide the Court with the broader context of this action, and in particular with the comprehensive role of City investigator, Vincent Lesnak, in the City's initiative against contraband cigarettes. Atlantic Dominion seeks to controvert Mr. Lesnak's status as an investigator and agent of this office whose communications with Corporation Counsel attorneys are protected work product.

          2.      The City has for nearly two decades pursued a comprehensive litigation strategy through the Office of the Corporation Counsel to address the rampant tax evasion and injury to the public health brought on by cigarette traffickers illegally transporting cigarettes from southern states for sale in the City. Trafficking is intended to evade payment of the substantial New York State and City tax that exceeds by approximately $50 *per carton* the negligible tax

imposed by tobacco-growing states such as North Carolina and Virginia, the principal sources of cigarettes "bootlegged" into the City (and the situs of both of Atlantic Dominion's stores). The New York legislature has for decades maintained a cigarette tax far above the national average less for fiscal reasons than as a public health measure based on the well-established relationship between high cigarette taxes and smoking reduction. Regrettably, that policy is thwarted by traffickers, to the extent that more than 50% of cigarettes consumed in the City are bootlegged into the City. No tax is incorporated into the purchase price, allowing a carton of bootlegged cigarettes to be sold for approximately $50 less than the $110 carton price in New York, impairing the deterrent effect of maintaining a steep price on smoking.

3.      The City's actions intended to eliminate the flow of contraband cigarettes[1] into the City are cited below not to illustrate the extensive efforts to remedy tax evasion but to illustrate the role played by Vincent Lesnak as an investigator/consultant for the City in each of the cited cases. Mr. Lesnak has provided investigative services for the past ten years, since 2013, to the City of New York, almost exclusively in connection with cigarette-trafficking cases.[2]  I do

---

[1] Under federal law, cigarettes found in a jurisdiction without the tax stamps of that jurisdiction (if any) are "contraband cigarettes." See 18 U.S.C. § 2341 et seq.

[2] *City of N.Y. v. Dennis*, 2022 U.S. Dist. LEXIS 689 (S.D.N.Y. Jan. 3, 2022); *City of N.Y. v. United States Postal Serv.*, 519 F. Supp. 3d 111 (E.D.N.Y. 2021); *City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576 (S.D.N.Y. May 31, 2019); *City of N.Y. v. FedEx Ground Package Sys.*, 351 F. Supp. 3d 456 (S.D.N.Y. 2018); *City of N.Y. v. Gordon*, 2018 U.S. Dist. LEXIS 86676 (S.D.N.Y. May 22, 2018); *New York v. UPS*, 253 F. Supp. 3d 583 (S.D.N.Y. 2017); *City of N.Y. v. YRC Worldwide Inc.*, 2015 U.S. Dist. LEXIS 961 (E.D.N.Y. Jan. 6, 2015); *City of N.Y. v. LaserShip, Inc.*, 33 F. Supp. 3d 303 (S.D.N.Y. 2014); *City of N.Y. v. Wolfpack Tobacco*, 2013 U.S. Dist. LEXIS 129103 (S.D.N.Y. Sep. 9, 2013); *City of N.Y. v. Chavez*, 2013 U.S. Dist. LEXIS 207951 (S.D.N.Y. July 19, 2013). The several City cases prior to this date, *see. e.g.*, *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154 (2d Cir. 2011); *City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115 (2d Cir. 2010) pre-date Mr. Lesnak's work for the City.

not recall any party ever arguing before that the City's communications with him related to these investigations are not protected work product.

4.      Vincent Lesnak has during his work for the City worked with and retained TPI Group, Inc., a company owned and operated by his brother, former Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") agent Thomas Lesnak.   Thomas Lesnak has had a long career in conducting tobacco trafficking investigations, both while at ATF and for private industry and the City has consulted with him jointly with Vincent Lesnak on many occasions in addition to in connection with Atlantic Dominion. Thomas Lesnak's work for the City is also work-product and hence privileged.

5.      Vincent Lesnak's investigative work for the City has been, is currently, and was during the Atlantic Dominion investigation performed pursuant to a contract with the City. The City has paid Vincent Lesnak both for investigative services and for consulting on issues involving cigarette trafficking.  Earlier in their relationship with the City Messrs. Lesnak consulted with the City *pro bono*.

6.      Mr. Kevin Barney's declaration in this matter (*Dkt. No.* 70) is rife with misinformation and appears intended to generate irrelevant controversy through innuendo. At the commencement of this case, the City and Atlantic Dominion attempted to negotiate a consent agreement by which Atlantic Dominion would agree to a monitorship through which Atlantic Dominion's cigarette sales would be audited by a monitor appointed by the City and Atlantic Dominion's personnel would be educated and trained in methods intended to prevent or mitigate cigarette trafficking in which Atlantic Dominion had a role. In other cases, the City has successfully implemented as a condition of settlement monitoring measures with defendants

intended to prevent future instances of cigarette trafficking, whether intentional or inadvertent. By way of example, Mr. Lesnak developed and participated in a monitorship of the Yellow Freight Company, instituted in connection with settlement of a City suit against that company for transporting contraband cigarettes.  The City also insisted on independent oversight as a condition of settlement with FedEx Ground Package System, Inc. following a successful action against that company, and developed an oversight committee with the United States Postal Service following a successful action against USPS, so there was nothing unusual about a suggested monitorship of Atlantic Dominion.

7.      The City proposed and insisted on Vincent Lesnak as a monitor not merely because of the City's experience with his work, but because he is a known subject-matter expert in the arcane world of cigarette smuggling. Mr. Lesnak has provided briefings on cigarette trafficking to a United States senator, the ATF, the New York Attorney General's office, the Department of Homeland Security, the Ontario Provincial Police, the Royal Canadian Mounted Police, and many other law enforcement agencies.  Coincidently Mr. Lesnak is presently briefing the United States Customs & Border Patrol in Miami on detection of illegally-imported e-cigarettes.  In light of Mr. Barney's innuendo that Mr. Lesnak saw the monitorship as a money-making venture, it is worth noting that all or virtually all of Mr. Lesnak's briefings to government entities are provided by Mr. Lesnak at no charge, as has been much of his work for the City.  Mr. Lesnak does do paid investigative work for private industry.

8.      The implication in Mr. Barney's declaration that the proposal for Mr. Lesnak's appointment was personally motivated is deeply offensive to me as well as to Mr. Lesnak. It is both flatly untrue and a smear tactic having no bearing on the merits of the privilege issue or this case. Vincent Lesnak is a colleague with whom I have worked for ten years, not my "friend,"

4

nor did we ever "vacation together." Mr. Lesnak would deny having said that to Mr. Barney. The offer by the City to have Mr. Lesnak serve as a monitor was based on my past experience in multiple cases with his investigative expertise and extensive knowledge of cigarette trafficking.

9.     In sum, Mr. Lesnak and the Office of the Corporation Counsel have a long-standing engagement through which he has performed investigative work for numerous matters ultimately brought by the City, including this case against Atlantic Dominion, such that his investigative work product and his communications with City attorneys are protected from disclosure.

Eric Proshansky
Assistant Corporation Counsel

Dated: July 21, 2023
New York, NY

5