**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
Civil Action No. 20-cv-5965

-------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                                 Plaintiff,

                   -against-

OLD DOMINION TOBACCO COMPANY,
INCORPORATED d/b/a ATLANTIC DOMINION
DISTRIBUTORS,

                              Defendant.

-------------------------------------------------------------------- x

**PLAINTIFF THE CITY OF NEW YORK'S MEMORANDUM OF LAW**
**<u>IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL</u>**

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
 City of New York
*Attorney for Plaintiff the City of New York*
100 Church Street
New York, New York 10007
(212) 356-2610


*Of Counsel*:   Krista Friedrich
               Aatif Iqbal
               Eric Proshansky

## <u>TABLE OF CONTENTS</u>

Preliminary Statement ........................................................................................................ 1

Argument .......................................................................................................................... 2

   A.  Defendant's Arguments Regarding the Adequacy of the City's Privilege Log
Have Never Been Raised with the City and Have No Merit ..................................... 2

       I.      Atlantic Dominion Failed to Raise its Requests that the City
Individually Log Emails within Chains and Non-Responsive Attachments
in the Meet-and-Confer Process ............................................................................ 3

       II.     The City's Privilege Log Complies with the Local Rules and
Provides Adequate Information for Atlantic Dominion
to Challenge its Assertions of Work Product Protection ..................................... 5

       III.    A Privilege Log Need Not Include Non-Responsive Documents,
Nor Is a Party Required To Produce Non-Responsive Documents In Discovery ............. 8

   B.  The Descriptions in the City's Privilege Log Comport with the
Federal Rules of Civil Procedure and the Local Civil Rules ..................................... 9

       I.      The Descriptions In The City's Privilege Log Establish That Work Product
Protection Applies To The City's Communications With Its Investigators
Performing Investigative Work Related To This And Other Litigation ......................... 10

       II.     The City's Investigators Are In Fact Investigators ............................................... 12

       III.    The City's Privilege Log Provides Adequate Detail ............................................ 14

       IV.    The City Has Not Waived Work Product Protection ............................................ 16

Conclusion ...................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actos Antitrust Litig.*,
340 F.R.D. 549 (S.D.N.Y. 2022) ............................................................................7

*Agoado v. Midland Funding*,
No. CV 14-18 (WFK) (AKT), 2021 U.S. Dist. LEXIS 182593 (E.D.N.Y. Sept.
23, 2021) ..................................................................................................................5

*Am. Oversight v. United States DOJ*,
45 F.4th 579 (2d Cir. 2022) ............................................................................17, 21

*Briese Lichttechnik Vertriebs GmbH v. Langton*,
272 F.R.D. 369 (S.D.N.Y. 2011) ..........................................................................20

*In re Bystolic Antitrust Litig.*,
No. 20-cv-5735 (LJL), 2021 U.S. Dist. LEXIS 44042 (S.D.N.Y. Mar. 9, 2021)....................8

*CaféX Communs., Inc. v. Amazon Web Servs.*,
No. 17-CV-1349(VM)(KNF), 2018 U.S. Dist. LEXIS 52100 (S.D.N.Y. Feb.
8, 2018) ....................................................................................................................8

*City of N.Y. v. Dennis*,
2022 U.S. Dist. LEXIS 689 (S.D.N.Y. Jan. 3, 2022) ...........................................13

*City of N.Y. v. YRC Worldwide Inc.*,
2015 U.S. Dist. LEXIS 961 (E.D.N.Y. Jan. 6, 2015) ...........................................13

*F.T.C. v Grolier, Inc.*,
462 U.S. 19 (1983)..................................................................................................12

*Feacher v. Intercont'l Hotels Grp.*,
No. 3:06-CV-0877, 2007 WL 3104329 (N.D.N.Y. Oct. 22, 2007) .......................11

*In re Grand Jury Proceedings*,
219 F.3d 175 (2d Cir. 2000)............................................................................20, 21

*Grinnell Corp. v. ITT Corp.*,
222 F.R.D. 74 (S.D.N.Y. 2003) .......................................................................15, 16

*Hasemann v. Gerber Prods. Co.*,
No. 15-CV-2995 (MKB) (RER), 2018 U.S. Dist. LEXIS 222926 (E.D.N.Y.
Oct. 25, 2018) .........................................................................................................15

*Hickman v. Taylor*,
329 U.S. 495 (1947)................................................................................10

*Howell v. City of N.Y.*,
No. CV-06-6347 (ERK)(VVP), 2007 U.S. Dist. LEXIS 71063 (E.D.N.Y. Sep.
25, 2007) ..................................................................................................9

*Jewels v. Casner*,
No. 12-cv-1895 (KAM)(SLT), 2016 U.S. Dist. LEXIS 66405 (E.D.N.Y. May
20, 2016) ..................................................................................................9

*Koumoulis v. Indep. Fin. Mktg. Grp.*,
295 F.R.D. 28 (E.D.N.Y. 2013)..............................................................21

*MEDINOL v. Bos. Sci. Corp.*,
214 F.R.D. 113 (S.D.N.Y. 2002) ......................................................16, 18

*N.Y. Times Co. v. United States DOJ*,
939 F.3d 479 (2d Cir. 2019)....................................................................20

*NAACP v. E. Ramapo Cent. Sch. Dist.*,
No. 17 Civ. 8943, 2019 U.S. Dist. LEXIS 42849 (S.D.N.Y. Mar. 14, 2019)..........................17

*New York v. UPS*,
253 F. Supp. 3d 583 (S.D.N.Y. 2017)......................................................13

*Ricoh Co. v. Aeroflex Inc.*,
219 F.R.D. 66 (S.D.N.Y. 2003) ..............................................................18

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
Nos. 08-01789 (SMB), 10-04292 (SMB), 2017 Bankr. LEXIS 3638 (Bankr.
S.D.N.Y. Oct. 17, 2017)....................................................................18, 21

*SEC v. Yorkville Advisors, LLC*,
300 F.R.D. 152 (S.D.N.Y. 2014) ......................................................15, 16

*Shih v. Petal Card, Inc.*,
565 F. Supp. 3d 557 (S.D.N.Y. 2021)......................................................15

*Shinnecock Indian Nation v. Kempthorne*,
652 F. Supp. 2d 345 (E.D.N.Y. 2009) .....................................................20

*Sidari v. Orleans Cty.*,
95-CV-7250, 2000 U.S. Dist. LEXIS 15126 (W.D.N.Y. Oct. 3, 2000) ................18

*In re Steinhardt Partners*,
L.P., 9 F.3d 230 (2d Cir. 1993)...............................................................17

*United States v. Schwimmer*,
892 F.2d 237 (2d Cir. 1989)...........................................................................17

*In re Visa Check/MasterMoney Antitrust Litig.*,
190 F.R.D. 309 (E.D.N.Y. 2000) .....................................................................17

*Zang v. Daxi Sichuan, Inc*,
18-CV-06910-DG-SJB, 2023 U.S. Dist. LEXIS 34104 (E.D.N.Y. Mar. 1,
2023) ...................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)..........................................................................................7

Fed. R. Civ. P. 26(b)(2)(C)(i) ...............................................................................11

Fed. R. Civ. P. 26(b)(3)....................................................................................10, 21

Fed. R. Civ. P. 37(a) ...............................................................................................5

Local Civil Rule 26.2 ..........................................................................................6, 15

Plaintiff the City of New York (the "City") respectfully submits this memorandum of law in opposition to the motion (Dkt. Nos. 68-71) by Defendant Old Dominion Tobacco Company, Incorporated d/b/a Atlantic Dominion Distributors ("Atlantic Dominion"), which seeks to compel the City to again revise its privilege log and to produce certain documents that Atlantic Dominion argues have been improperly withheld.[1]

## PRELIMINARY STATEMENT

After all the back and forth about the City's privilege log during a lengthy meet and confer process spanning roughly six months, Atlantic Dominion now moves to compel primarily on the basis of two very specific complaints that it has never mentioned before: (1) that the City's privilege log is deficient because certain emails are logged as email "chains" without a separate entry being provided for each individual email in the chain, and (2) that the City failed to log non-responsive documents that were attached to communications withheld for privilege. Its motion to compel on these issues should be denied based on its failure to raise them even once in the meet-and-confer process.

Nor do Atlantic Dominion's arguments hold water on the merits. The City's privilege log comports with the Federal Rules and the Local Civil Rules. There is no obligation to log non-responsive documents on a privilege log, and the Local Civil Rules explicitly allow categorical privilege logs that otherwise meet applicable requirements. Atlantic Dominion's remaining arguments do not cite governing law (except in the context of the common interest rule and law enforcement privilege, which the City is not asserting) and make little attempt to apply the out-of-context quotations from the cases they do cite. Instead they consist of (1) personal innuendo

---

[1] *See* Defendant's Memorandum of Law dated July 7, 2023 (ECF No. 69) ("AD Mem.").

intended to imply improper motives on the part of the City and its agents, with no relevance to document production or privilege issues; (2) repeated assertions that investigators long engaged by the City for investigations that led to this case are somehow "non-parties"; (3) speculation (based largely on seemingly precise citations to specific documents that do not support any of the assertions premised upon them) that the City secretly conducted interviews with certain witnesses and then somehow "partially disclos[ed] the contents of the interviews and rel[ied] upon them" in opposing Defendant's Motion to Dismiss; and (4) vague generalizations about the City somehow using the "contents" of unspecified "interviews" simultaneously as a sword and shield.

Atlantic Dominion's decision to raise new complaints concerning the City's production for the first time by motion to compel instead of consultation is consistent with its course of conduct throughout document discovery. The City has revised its privilege log twice to accommodate Defendant's concerns, produced additional documents in an attempt to reach compromise, and provided detailed explanations outside of formal discovery in response to counsel's questions. Atlantic Dominion has responded largely by ignoring the City's explanations and using the City's compromise efforts as fodder for ever-more-inscrutable complaints and speculative theories—while flatly refusing to meet and confer about its own refusal to produce basic transactional records.

## ARGUMENT

### A.    Defendant's Arguments Regarding the Adequacy of the City's Privilege Log Have Never Been Raised with the City and Have No Merit

Atlantic Dominion's primary arguments against the adequacy of the privilege log have never been mentioned before: (1) that the City's privilege log is deficient because certain emails are logged as email "chains" without a separate entry being provided for each individual email in

- 2 -

the chain, and (2) that the City failed to log non-responsive documents that were attached to communications withheld for privilege. Atlantic Dominion's motion to compel on these issues should be denied based on its failure to raise them even once in the meet-and-confer process, and because the City's privilege log comports with the Federal Rules and the Local Civil Rules.

## I.  Atlantic Dominion Failed to Raise its Requests that the City Individually Log Emails within Chains and Non-Responsive Attachments in the Meet-and-Confer Process

As noted in its motion papers, Atlantic Dominion has sent numerous letters to the City complaining about the City's privilege logs. *See* AD Mem. at 3 (mentioning letters dated February 27, March 8 and March 22). While those letters raised a host of complaints and accusations about the City's privilege logs and related discovery issues, in none of those three letters (attached as Exs. C, D, E to the Declaration of Aatif Iqbal, filed herewith) did Atlantic Dominion ever request that the City individually log emails contained within email chains, nor did it request that the City log nonresponsive documents that were withheld from the production. Atlantic Dominion also did not raise either of those issues in the letters it sent to the City complaining about its original privilege logs on January 9, 2023 and January 27, 2023 (Iqbal Decl. Exs. A, B), or in its letters to the Court on April 11, 2023 (ECF No. 56) or June 1, 2023 (ECF No. 62), or in the joint status reports filed with the Court on January 11, 2023 (ECF No. 54) and March 10, 2023 (ECF No. 55).

As part of the City's multiple attempts to resolve this dispute without the need for judicial intervention, descriptions of withheld documents were supplemented in the second version of the City's privilege log produced on February 17, 2023, and included (among other things) an indication for those log entries reflecting communications as to whether that description applied to an "email" or an "email chain." *See* City of New York's Privilege Log (Withheld Documents),

- 3 -

Revised 02/17/2023 (ECF No. 71-1) (the "First Revised Privilege Log").[2] The same is true of the further revised privilege log produced on June 13, 2023. *See* City of New York's Privilege Log (Withheld Documents), Revised 06/13/2023 (ECF No. 71-2) (the "Second Revised Privilege Log").[3] Thus, Atlantic Dominion has been aware since at least February 17 that the City was not separately logging each email in every email chain on its privilege log. But Atlantic Dominion never requested that the City do so prior to bringing this motion.

Similarly, the slipsheets indicating that a family member of a responsive document was excluded from the production as non-responsive[4] have been present in the City's production since at least February 2023. Atlantic Dominion offers no explanation to the Court for why it did not request in the meet-and-confer process that the City treat non-responsive attachments differently.

Thus, as a threshold matter, Atlantic Dominion's motion challenging the sufficiency of the City's privilege log should be denied for failure to satisfy its obligation to meet and confer under Fed. R. Civ. P. 37(a)(1), Local Civil Rule 37.3(a), and Rule III(C)(1) of the Court's Motion and Individual Practice Rules. Though Rule 37(a)(1) requires that a motion to compel "include a certification that the movant has in good faith conferred or attempted to confer with the person or

---

[2] This is evident on the very first page of the First Revised Privilege Log. The first five documents are described as "Communication (email chain)..." whereas the sixth document is described as "Communication (email)..." ECF No. 71-1 at 1. Overall, of the 196 entries on the First Revised Privilege Log, 108 are described as "Communication (email chain)..." and 33 are described as "Communication (email)..."

[3] Of the 170 entries on the Second Revised Privilege Log, 95 are described as "Communication (email chain)..." and 30 are described as "Communication (email)..."

[4] For context, there are only 95 of these slipsheets in the City's productions to date. The City does not object to re-reviewing these documents for responsiveness and producing any documents found to be responsive by August 31, 2023.

party failing to make disclosure or discovery in an effort to obtain it without court action," Atlantic Dominion submitted no such certification with its motion, and indeed could make no such certification because it has never before raised these two issues which apparently form the basis of its argument that the City's log is missing required entries. That fact alone dictates that the first prong of Atlantic Dominion's motion should be decided in the City's favor. *See, e.g.*, *Agoado v. Midland Funding*, No. CV 14-18 (WFK) (AKT), 2021 U.S. Dist. LEXIS 182593, *5 (E.D.N.Y. Sept. 23, 2021) ("Plaintiffs maintain that [defendant] did not even attempt to contact them to try to resolve the issues raised by the instant motion. . . . Failure to comply with the Local Rules is sufficient grounds to warrant denial of a motion."); *Zang v. Daxi Sichuan, Inc*, 18-CV-06910-DG-SJB, 2023 U.S. Dist. LEXIS 34104, *3 (E.D.N.Y. Mar. 1, 2023) (describing motion to compel "denied for failure to include a certification that the parties met and conferred pursuant to Rule 37(a)").

### II. The City's Privilege Log Complies with the Local Rules and Provides Adequate Information for Atlantic Dominion to Challenge its Assertions of Work Product Protection

Local Civil Rule 26.2 encourages parties to find "[e]fficient means of providing information regarding claims of privilege." Subsection 26.2(c) specifically allows for logging by groups and categories rather than document-by-document:

> For example, when asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the information required by this rule by group or category. A party receiving a privilege log that groups documents or otherwise departs from a document-by-document or communication-by-communication listing may not object solely on that basis, but may object if the substantive information required by this rule has not been provided in a comprehensible form.

The entries describing email chains on the City's privilege log comply with the directives and the spirit of Local Civil Rule 26.2. Because categorical logging is presumptively appropriate, the

question is not whether each email in an email chain is technically a separate communication, but whether the City's log (which treats the emails within email chains categorically) provides sufficient information under the rule. The Advisory Committee Note to Local Civil Rule 26.2 is instructive on this point:

> With the advent of electronic discovery and the proliferation of e-mails and e-mail chains, traditional document-by-document privilege logs may be extremely expensive to prepare, and not really informative to opposing counsel and the Court. There is a growing literature in decisions, law reviews, and other publications about the need to handle privilege claims in new and more efficient ways. The Committee wishes to encourage parties to cooperate with each other in developing efficient ways to communicate the information required by Local Civil Rule 26.2 without the need for a traditional privilege log. Because the appropriate approach may differ depending on the size of the case, the volume of privileged documents, the use of electronic search techniques, and other factors, the purpose of Local Civil Rule 26.2(c) is to encourage the parties to explore methods appropriate to each case. The guiding principles should be cooperation and the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. *See also* The Sedona Cooperation Proclamation, available at www.TheSedonaConference.org, whose principles the Committee endorses.

The aspects of the City's privilege log that Atlantic Dominion complains about here are a result of standard eDiscovery practice, commonly known as "threading" or "inclusive only email review," undertaken to facilitate efficient email review within eDiscovery platforms. *See generally* https://help.relativity.com/RelativityOne/Content/Relativity/Analytics/Inclusive_emails.htm. The threading results in the suppression of emails lower down in a chain with non-unique content, so that they need not be reviewed as standalone documents. "The Federal Rules of Civil Procedure

do not contain provisions regarding the use of email threading, nor do the Local Civil Rules of this Court." *In re Actos Antitrust Litig.*, 340 F.R.D. 549, 551 (S.D.N.Y. 2022).[5]

Had Atlantic Dominion raised this particular concern with the City at any point prior to filing its motion on July 7, 2023, the City could have worked with its eDiscovery team to propose methods of providing additional information, such as providing a count of the number of emails within each withheld email chain or exporting additional metadata fields reflecting the individual emails included within a chain. Had the issue been raised at the outset of discovery in the context of negotiating an ESI protocol, the City could even have considered the feasibility of a different style of email review. At this point in time, the burden and expense of any modification to the standard threading procedure used to facilitate the City's email review would far outweigh any likely benefit to Atlantic Dominion in its quest to challenge the City's privilege logs. *See* Fed. R. Civ. P. 26(b)(1). Notably, Atlantic Dominion has not raised any objection to the City's use of threading in relation to the responsive emails that have been produced—a practice which, of course, reduces costs and increases efficiency of review on the part of the recipient as well as the producing party.

Moreover, the in-circuit cases on which Defendant relies for its argument regarding email chains are inapposite. *CaféX Communs.* is inapposite because the City's privilege logs correctly identify each email chain as an "email chain" rather than simply describing the most recent email. *CaféX Communs., Inc. v. Amazon Web Servs.*, No. 17-CV-1349(VM)(KNF), 2018 U.S. Dist.

---

[5] In the *In re Actos* litigation, the court addressing a dispute over threading noted that "[t]he issue arises here because [a party] made its initial rolling productions using email threading even though the Discovery Protocol, by its terms, did not permit such approach." *In re Actos Antitrust Litig.*, 340 F.R.D. 549, 551 (S.D.N.Y. 2022). Here, there is no such negotiated discovery or ESI protocol in place.

LEXIS 52100, at *32 (S.D.N.Y. Feb. 8, 2018) (rejecting "the proposition that a party may aggregate all e-mail communications in a string claiming privilege for the aggregate *while describing, in the privilege log, only the most recent e-mail communication in the string*") (emphasis added). And *In re Bystolic Antitrust Litig.* did not address a protective order or a motion to compel—it arose at the start of discovery in the context of ongoing negotiations over an ESI protocol, and the Court set forth an ex ante rule for the parties to follow going forward. *See In re Bystolic Antitrust Litig.*, No. 20-cv-5735 (LJL), 2021 U.S. Dist. LEXIS 44042, at *12 (S.D.N.Y. Mar. 9, 2021).

### III. A Privilege Log Need Not Include Non-Responsive Documents, Nor Is a Party Required To Produce Non-Responsive Documents In Discovery

There is no requirement under the Federal Rules of Civil Procedure or the Local Rules that a privilege log must contain entries for documents not produced on relevance grounds. *In re Bystolic Antitrust Litig.*, on which Defendant relies elsewhere in its motion, in fact explicitly allowed parties to "withhold documents that are attached to emails that are entirely non-responsive" because this "will create efficiencies in discovery and will not prejudice either party." *Id.* at *6-7.

The only two cases Atlantic Dominion cites in support of its challenge to the City's treatment of non-responsive attachments concerned the redaction of non-responsive material within relevant documents, not the withholding of entire documents that are nonresponsive. *See Howell v. City of N.Y.*, No. CV-06-6347 (ERK)(VVP), 2007 U.S. Dist. LEXIS 71063, at *6-*8 (E.D.N.Y. Sep. 25, 2007); *Jewels v. Casner*, No. 12-cv-1895 (KAM)(SLT), 2016 U.S. Dist. LEXIS 66405 (E.D.N.Y. May 20, 2016). The City has not performed responsiveness redactions, but has provided slipsheets indicating that an attachment was wholly nonresponsive where some family members were produced. The purpose of the slipsheets is to provide information to the receiving

- 8 -

party: to clarify the existence of a family relationship between documents even where some of the documents need not be produced (and therefore need not be logged with the assertion of a privilege) because they are not responsive.

As with the email chain issue discussed above, had Atlantic Dominion raised its concerns with the City about the nonresponsive attachments prior to bringing this motion, the City could likely have offered a compromise involving the provision of metadata for nonresponsive attachments, the logging of nonresponsive attachments, or simply the production of some or all of the nonresponsive attachments.

**B.**     **The Descriptions in the City's Privilege Log Comport with the Federal Rules of Civil Procedure and the Local Civil Rules**

The second prong of Atlantic Dominion's argument, while styled as a challenge to the descriptions within the existing entries in the City's privilege log, seems to contain three different types of argument. First, Atlantic Dominion contends that the City has improperly used the same descriptive language to refer to multiple entries on its privilege log and that the descriptions are vague. Second, Atlantic Dominion makes a set of arguments challenging the substance of the City's work product assertions: specifically, that the City cannot assert work product protection over communications with its investigators performing investigative work related to this litigation. Finally, Atlantic Dominion argues that to the extent work product protection applies to the documents listed on the City's privilege log, the City has waived that protection with respect to some of the withheld documents either by sharing material with third parties or by relying on the material in opposing Atlantic Dominion's motion to dismiss this action. None of these arguments have merit and Atlantic Dominion's attempts to compel production of the City's protected work product should be denied.

I.    **The Descriptions In The City's Privilege Log Establish That Work Product Protection Applies To The City's Communications With Its Investigators Performing Investigative Work Related To This And Other Litigation**

Under Rule 26(b)(3), "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). The Supreme Court has emphasized that the work product doctrine allows a lawyer to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel" so that he can "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). "No legitimate purpose is served by ... forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary," rather than requiring the adversary to obtain such information through "direct interviews with the witnesses themselves." *Id*. at 512-13. Work product can take the form of "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways"—all of which is protected because "[w]ere such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten." *Id*.; *see also id*. at 513 (production of attorney's account of witness statements is justified only in "rare" cases and is not appropriate when potential for "direct interviews with the witnesses themselves" is possible); *Feacher v. Intercont'l Hotels Grp.*, No. 3:06-CV-0877 (TJM/DEP), 2007 WL 3104329, at *3 (N.D.N.Y. Oct. 22, 2007) (holding that the transcript of a witness interview conducted by non-attorney investigator was protected work product); *cf*. Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring a court to limit discovery

that "can be obtained from some other source that is more convenient, less burdensome, or less expensive").

The plaintiff in this case is the City of New York, represented by attorneys from a division of the New York City Law Department that exists for the purpose of litigating affirmative cases on behalf of the City. When investigators work with this division, their purpose is necessarily the prospect or furtherance of litigation. Thus where a communication is between counsel for the City in this matter and an investigator working on behalf of the City, and the subject matter of the communication is the investigation of facts related to Atlantic Dominion or a retailer to which Atlantic Dominion sold cigarettes, nothing more should be required to establish a document as work product. The descriptions of which Atlantic Dominion complains (for example, "Communication (email chain) regarding this litigation (related to factual investigation of FreeCo, Atlantic Dominion) between Plaintiff's counsel and Frank Brostrom, an investigator engaged by Plaintiff to perform investigative tasks in connection with this and other litigation") establish each of the necessary elements of work product protection. Tellingly, Atlantic Dominion cites no cases in which a court denies work product protection to such communications between a party and its investigators related to the litigation at hand. This is not a close question.

The fact that some of the documents at issue predate the filing of this action (*AD Mem.* at 13) does not mean they are not entitled to work product protection. As a matter of law, work product "protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *F.T.C. v Grolier, Inc.*, 462 U.S. 19, 25 (1983). As a matter of fact, the City reasonably anticipated litigation against Atlantic Dominion long before its complaint was filed in December 2020. The New York City Law Department utilizes an electronic file management system called LawManager that assigns a unique number to each matter. The

number assigned to this lawsuit is 2017-000153, reflecting that a matter was opened in anticipation of this litigation in 2017. *See* Iqbal Decl. ¶ 10.

## II.  The City's Investigators Are In Fact Investigators

Cigarette trafficking from the low-tax southern states served by Atlantic Dominion damages both the City fisc, through tax losses, and impairs City public health efforts to encourage smoking cessation. *See* Declaration of Eric Proshansky ("Proshansky Decl.") ¶ 2. The City's nearly two-decade effort has expended considerable resources to protecting against bootlegging but limitations on law enforcement resources, particularly related to non-violent crimes, have required the City to retain private investigators, a role filled since 2013 by Vincent Lesnak, a retired police officer, and Thomas Lesnak, a retired Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") agent with long experience in domestic and international tobacco trafficking investigations undertaken for ATF and private industry. Messrs. Lesnak have each served as consultants, at no charge, to numerous law enforcement agencies, in the United States and abroad, among them the ATF, the New York Attorney General's office, the Department of Homeland Security, the Ontario Provincial Police, the Royal Canadian Mounted Police, and many others. Proshansky Decl. ¶ 7.

Vincent Lesnak has during his work for the City worked with and retained TPI Group, Inc., a company owned and operated by his brother, Thomas Lesnak, with whom the City has consulted jointly with Vincent Lesnak on many occasions in addition to the case against Atlantic Dominion. Proshansky Decl. ¶ 4.

Atlantic Dominion's arguments seeking to controvert the privileged status of the City's communications with the Messrs. Lesnak are meritless. Both of them have a long-standing confidential relationship with City attorneys as both consultants and investigators in furtherance

of extensive City efforts to combat contraband cigarette trafficking, serving as such on many cases brought by the City against transporters of contraband cigarettes into the City, for example the *City of N.Y. v. Dennis*, 2022 U.S. Dist. LEXIS 689 (S.D.N.Y. Jan. 3, 2022); *New York v. UPS*, 253 F. Supp. 3d 583 (S.D.N.Y. 2017); *City of N.Y. v. YRC Worldwide Inc.*, 2015 U.S. Dist. LEXIS 961 (E.D.N.Y. Jan. 6, 2015), and in many cases without published decisions. In none of these cases were challenges to the City's work-product produced in connection with their work even raised, much less successfully. Proshansky Decl. ¶ 3.

The investigative and consulting work performed for the City by the Lesnaks has been performed pursuant to written City contracts, notwithstanding the fact that in earlier years (prior to the inception of this case) both of them performed work on a *pro bono basis*, guided by the notion that as former law enforcement officers they wished to assist present law enforcement efforts. Proshansky Decl. ¶ 5.

The City's privilege logs have repeatedly made clear that the Lesnaks are "investigators engaged by Plaintiff to perform investigative tasks in connection with this and other litigation." *See, e.g.*, First Revised Privilege Log (ECF No. 71-1) at 3, row 18. Defendant's entire argument to the contrary appears to be that any communications with "the person the City demanded Atlantic Dominion retain as an independent monitor" cannot "possibly be privileged" (AD Mem. at 13). Defendant has never explained the rationale for this argument beyond citing inapposite cases holding generally that communications with "non-parties" are not protected. An investigator engaged by an attorney for investigative tasks is not a "non-party."

If the rationale behind this argument is that the City somehow waived work product protection by *offering* Vincent Lesnak as a monitor—an offer never accepted—it is baseless. Had Atlantic Dominion agreed to a monitoring process, the privilege issues might be different, but in

fact Atlantic Dominion rejected the City's sensible approach of education and oversight in favor of litigation. Given the absence of any relationship between Atlantic Dominion and Mr. Lesnak (beyond a meet and greet whose outcome was the rejection of Mr. Lesnak's suggested program intended to assure Atlantic Dominion's compliance with the law), there is nothing to serve as a waiver by the City of its confidential relationship with Mr. Lesnak.

Atlantic Dominion makes much of the remark that Mr. Lesnak was proposed as an "independent" monitor. The argument appears to be that, by proposing that he serve as a monitor that would be independent *of Atlantic Dominion*, the City somehow represented that Mr. Lesnak was an "independent third party" who had not ever served as an investigator for the City. But Mr. Lesnak was never presented as being somehow independent of the City (to which Mr. Lesnak would have been reporting in any monitoring arrangement). The City's offer was intended to wean Atlantic Dominion from what the City understood to be Atlantic Dominion's then-current security practices, operated by the husband of an Atlantic Dominion officer—a person hardly positioned as "independent" of Atlantic Dominion.

In sum, Vincent and Thomas Lesnak have a long-standing confidential relationship as contracted-for investigators with whom the City has consulted with on numerous matters in anticipation of litigations ultimately brought by the City, including the case against Atlantic Dominion such that their communications with City attorneys are protected as classic work product.

### III. The City's Privilege Log Provides Adequate Detail

There are "three elements required to invoke the work product doctrine: that the material in question be 'a document or tangible thing,' that it have been 'prepared in anticipation of litigation,' and that it have been 'prepared by or for a party, or by or for its representative.'" *Shih*

*v. Petal Card, Inc.*, 565 F. Supp. 3d 557, 574 (S.D.N.Y. 2021) (quoting Fed. R. Civ. P. 26(b)(3)). The City's privilege log provides enough detail to satisfy these elements and to allow Defendant to assess the claim.

The dispute over the privilege log in this case bears a resemblance to *Hasemann v. Gerber Prods. Co.*, where this Court found the descriptions in a challenged privilege log to be adequate and denied a motion to compel. *Hasemann v. Gerber Prods. Co.*, No. 15-CV-2995 (MKB) (RER), 2018 U.S. Dist. LEXIS 222926 (E.D.N.Y. Oct. 25, 2018). As in that case, the City here has "revised the privilege log twice since September [2022], each time engaging in a 'document-by-document re-review' and making additional disclosures. . . where appropriate." *Id.* at *5. In that case, the Court found that the challenged "privilege log adequately describes the nature of the privilege and complies with Local Rule 26.2." *Id.* at *12-*13. Upon comparison, the descriptions within the City's log here are at least as detailed as those held to comply with the Rules in *Hasemann*. *Compare* ECF No. 111-19 in No. 15-CV-2995 (EK) (RER) (E.D.N.Y.) (Iqbal Decl. Ex. F) *with* Second Revised Privilege Log (ECF No. 71-2).  Indeed, the City's log overall is far more detailed than the *Hasemann* log, given that the City's log provides additional fields and metadata such as time in addition to date, email subject lines, file names and file types.

To support its argument that the descriptions furnished in the City's privilege log are deficient, Atlantic Dominion relies on cases (such as *SEC v. Yorkville Advisors* and *Grinnell Corp. v. ITT Corp.*) that do not support its argument. In fact, *Grinnell* strongly supports the City's claim to work product protection. The court did note, as Defendants mention, that the privilege log's descriptions in that case "do not on their face indicate that the documents reveal Moher's mental impressions or ITT's litigation strategy"—but it went on to find the documents protected as work product because "the documents reflect the attorney's notes of information taken from Grinnell's

files, or of conversations with Grinnell's attorneys" at a time when the investigation had likely "shifted to preparing for possible litigation over this issue." *Grinnell Corp. v. ITT Corp.*, 222 F.R.D. 74, 79 (S.D.N.Y. 2003). Meanwhile, *SEC v. Yorkville Advisors* found deficient a privilege log that bears no resemblance to the City's logs here. *SEC v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 163 (S.D.N.Y. 2014) (privilege log "fails to specify the authors and recipients for a majority of the documents" and contains "uninformative" subject matter descriptions like "YA Global," "Mark Angelo," "Yorkville Advisors" or "Greenshift").

### IV. The City Has Not Waived Work Product Protection

Atlantic Dominion next argues that the City has waived work product protection over certain documents by (1) exchanging certain communications with a federal prosecutor (AD Mem. at 14); (2) sharing certain communications with Mike Fitzpatrick, an attorney representing Justin Freeman in a criminal case (*id.* at 16); and/or (3) "relying on their contents in opposition to Atlantic Dominion's motion to dismiss" (*id.* at 17). None of these arguments have merit.

As an initial matter, Defendant never sets forth the law concerning waiver of attorney work product. "Unlike the attorney-client privilege, where the rules of waiver are rather well defined and where privilege is lost if a privileged item is shared with a third party, work product protection is not necessarily waived by disclosures to third persons." *MEDINOL v. Bos. Sci. Corp.*, 214 F.R.D. 113, 114 (S.D.N.Y. 2002) (citations omitted). "The reason for that strict rule is clear. The attorney-client privilege exists to protect the confidentiality of communications between lawyer and client; disclosure to a third party destroys that confidentiality and thus waives the privilege. The purpose behind the work-product doctrine is narrower: it is to keep counsel's work from his opponent in the litigation so that it will not be used against him. Waiver should therefore be

carefully calibrated to this purpose." *In re Visa Check/MasterMoney Antitrust Litig.*, 190 F.R.D. 309, 314 (E.D.N.Y. 2000).

Accordingly, waiver generally requires "voluntary disclosure of work product to *an adversary.*" *In re Steinhardt Partners*, L.P., 9 F.3d 230, 235 (2d Cir. 1993) (emphasis added). Otherwise, the disclosure must somehow "substantially increase[] the opportunity for potential adversaries to obtain the information" in order to effectuate a waiver. *NAACP v. E. Ramapo Cent. Sch. Dist.*, No. 17 Civ. 8943, 2019 U.S. Dist. LEXIS 42849, at *13 (S.D.N.Y. Mar. 14, 2019) (citation and internal quotation marks omitted). Moreover, the "party asserting waiver… bears the burden of demonstrating that the protection has been forfeited." *Am. Oversight v. United States DOJ*, 45 F.4th 579, 593 (2d Cir. 2022). Atlantic Dominion cannot meet this burden.

Atlantic Dominion's argument relating to documents shared with AUSA Sebastian Kielmanovich focuses primarily on the law enforcement privilege and the common interest[6] privilege, neither of which the City is asserting.[7] With respect to work product protection, Atlantic Dominion cites only case, which held that a private plaintiff waived work product protection by "provid[ing] the Mignano recording to the United States Attorney's office" with the intention of helping federal prosecutors "utilize the Mignano recording and transcript to impeach Mignano on cross-examination." *Sidari v. Orleans Cty.*, 95-CV-7250, 2000 U.S. Dist. LEXIS 15126, at *18

---

[6] As the case cited by Atlantic Dominion (AD Mem. at 15) makes clear, the common interest rule is "an extension of the attorney client privilege." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). The common interest rule is an exception to the otherwise strict rules governing waiver of attorney-client privilege. As noted above, attorney work product is not waived nearly so easily.

[7] In connection with the Second Revised Privilege Log, the City explained that it was no longer asserting common interest privilege or law enforcement privilege because the documents over which those had been asserted were all already protected as work product.

(W.D.N.Y. Oct. 3, 2000). Needless to say, communications among government officials cooperating on a shared investigation into a common topic are not at all analogous to a private plaintiff sending work product to a prosecutor hoping that the prosecutor will use it against the private plaintiff's adversaries in an employment lawsuit. *See MEDINOL,* 214 F.R.D. at 115 ("[I]t is clear that disclosure of work-product to a party sharing common litigation interests is not inconsistent with the policies of encouraging zealous advocacy and protecting privacy that underlie the work-product doctrine.").

With respect to work product shared with Mike Fitzpatrick (the attorney representing Justin Freeman), "the work product protection generally extends to an attorney's communications with a third party witness relating to the party's completion of the affidavit." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Nos. 08-01789 (SMB), 10-04292 (SMB), 2017 Bankr. LEXIS 3638, at *12 (Bankr. S.D.N.Y. Oct. 17, 2017). *Ricoh*, which Atlantic Dominion cites, found waiver because the withholding party had a specific reason it "could not reasonably expect their communications to remain confidential": because the disclosures (which concerned technical questions about prior art) were made to a major third-party witness "in the context of a patent litigation, where prior art will be highly relevant both to the party asserting the infringement and the party defending the suit." *Ricoh Co. v. Aeroflex Inc.*, 219 F.R.D. 66, 71 (S.D.N.Y. 2003). That case was likely to turn heavily on the similarities or differences between each party's patents and IBM's prior art, and there was no reason to think IBM was aligned with the withholding party in that context. None of this has any bearing on communications between a government attorney and the attorney for a cooperating witness in a criminal investigation.

Defendant's next argument—that the "City has waived any privilege it had with regard to a number of documents by relying on their contents in opposition to Atlantic Dominion's pending

Motion to Dismiss" (AD Mem. at 17–19)—is difficult to follow. Atlantic Dominion makes no attempt to specify anything in the City's filings (*see* ECF No. 29 and attachments thereto) that supposedly somehow "relied" on the "contents" of some other document.[8] Instead, the bulk of the argument consists of speculation (based largely on seemingly precise citations to specific documents that do not support any of the assertions premised upon them) that the City secretly conducted interviews with certain witnesses and then somehow "partially disclos[ed] the contents of the interviews and rel[ied] upon them" in opposing Defendant's Motion to Dismiss.[9] Defendant then cites two cases about the shield and sword doctrine, but neither states its understanding of the governing law on the topic nor makes any attempt to apply the law or otherwise elucidate how the City's filings opposing Defendant's Motion to Dismiss could plausibly constitute an "affirmative rel[iance] on privileged communications to support its claim or defense." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (cited in AD Mem. at 18).

As a legal matter, in general, the shield and sword doctrine (also known as subject matter waiver, or at-issue waiver) only applies if a party "reveal[s] any part of a privileged ***communication*** while seeking to withhold the balance of that communication or other related privileged communications." *Briese Lichttechnik Vertriebs GmbH v. Langton*, 272 F.R.D. 369,

---

[8] The City did file excerpted interview transcripts in the *Cigarettes Unlimited* case, but it has repeatedly made clear that it is not seeking to withhold any interview recordings or transcripts from which excerpts were filed. *See* June 30, 2023 Joint Status Report (ECF No. 64) at 9–10.

[9] Specifically, the argument appears to be that Frank Brostrom, an investigator for the City, communicated with the City about potential interviews with certain witnesses shortly before the City filed declarations from a subset of those witnesses in opposing Defendant's motion to dismiss. (AD Mem. at 17–18.) This leads to speculation about the "existence of interviews by Mr. Brostrom of Messrs. Herring, Criss, Bullard and Larry Freeman" and then to the conclusion that the City "partially disclos[ed] the contents of these interviews and rel[ied] upon them." (AD Mem. at 18.)

372 (S.D.N.Y. 2011) (emphasis added). The Second Circuit has made clear that "implied waiver of the work product privilege based on the 'fairness' or 'at-issue' doctrine" requires "specific instances of unfairness that undermine the adversarial process" and that mere "generalizing about the incompatibility of using… assertions as a 'sword' while using privileges attaching to related matter as a 'shield'" is not enough. *N.Y. Times Co. v. United States DOJ*, 939 F.3d 479, 496 (2d Cir. 2019); *see also Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 365 (E.D.N.Y. 2009) (courts "generally permit discovery of work product based on implied or subject-matter waiver only where the privileged communications have affirmatively been put at issue or when the defendant seeks to exploit the doctrine for a purpose inconsistent with the privilege, such as for the unilateral testimonial use of privileged communications").

The City has not done anything like this. When Atlantic Dominion claims that "in partially disclosing the contents of the interviews and relying upon them, the City has waived any privilege that may have attached to these documents" (AD Mem. at 18), the City has no way of knowing what this is supposed to refer to, or what it could even mean to "partially disclos[e] the contents of the interviews."[10] Interviews are not "documents" or "tangible things." Fed. R. Civ. P. 26(b)(3)(A).

---

[10] Once again, the cases cited by Atlantic Dominion actually help the City's case. *Koumoulis* makes clear that the doctrine only applies "if a party puts the privileged **communication** at issue by relying on it to support a claim or defense." *Koumoulis v. Indep. Fin. Mktg. Grp.*, 295 F.R.D. 28, 40 (E.D.N.Y. 2013) (emphasis added). "The quintessential example is the defendant who asserts an advice-of-counsel defense and is thereby deemed to have waived his privilege with respect to the advice that he received." *In re Grand Jury Proceedings*, 219 F.3d at 182-83 (citation omitted).[10] Similarly, in *Koumoulis*, an employer "put[] the reasonableness of an internal investigation at issue" by asserting as an affirmative defense that it "exercised reasonable care to prevent and correct any [discriminatory] behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Koumoulis*, 295 F.R.D. at 40. Nothing like that is present here.

If the argument is that anytime a party files an affidavit from a witness (or an excerpt from an interview with a witness), it automatically waives all work product pertaining to any of its interactions or communications with that witness or that otherwise played any role in the creation of the filed document, it is baseless. The Second Circuit has flatly rejected the idea "that, by interviewing targets and subjects in this case, defendants necessarily disclosed to those litigation adversaries any and all matters discussed during the interview and, thereby, waived work-product protection for documents subsequently created to memorialize those interviews." *Am. Oversight v. United States DOJ*, 45 F.4th 579, 595 (2d Cir. 2022). Moreover, "work product protection generally extends to an attorney's communications with a third party witness relating to the party's completion of the affidavit." *Sec. Inv'r Prot. Corp.,* 2017 Bankr. LEXIS 3638, at *12.

Defendant's speculation that the City must have created unspecified work product relating to certain witnesses should be rejected as legally and factually baseless.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, Atlantic Dominion's motion should be denied in its entirety, and the City should be awarded its attorneys' fees incurred in responding to Atlantic Dominion's motion.

Dated:      New York, New York
            July 21, 2023

                                    **HON. SYLVIA O. HINDS-RADIX**
                                    Corporation Counsel of the
                                     City of New York
                                    *Attorneys for Petitioners-Plaintiffs*
                                    100 Church Street, Rm. 20-84
                                    New York, New York 10007
                                    (212) 356-2610

                                    By:    /s/ Aatif Iqbal
                                           Krista Friedrich
                                           Aatif Iqbal
                                           Eric Proshansky
                                           *Assistant Corporation Counsels*