UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
THE CITY OF NEW YORK,                      :

                                          :

                       Plaintiff,    :

                                         :    <u>MEMORANDUM & ORDER</u>

        -against-               :

                                         :    20-CV-5965 (ENV) (RER)

OLD DOMINION TOBACCO COMPANY,    :
INCORPORATED d/b/a/ ATLANTIC DOMINION :
DISTRIBUTORS,                        :

                                         :

                    Defendant.   :
------------------------------------------------------------ x

VITALIANO, D.J.

The City of New York (the "City") brought this action against Atlantic Dominion, a Virginia-based cigarette wholesaler serving retail stores and other wholesalers, for violations of the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 *et seq*., and the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and §1962(d).  Defendant has moved to dismiss the complaint in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of jurisdiction and, in the alternative, Rule 12(b)(6) for failure to state a claim. *See* Def.'s Mem., Dkt. 27.  For the reasons that follow, the motion is denied.

<u>Background</u>[1]

The City and State of New York have levied high excise taxes on cigarettes, and with some exceptions, the taxes apply to all cigarettes possessed for sale or use in the City.  N.Y. Tax L. §§ 471, 471-a; Administrative Code of the City of New York ("N.Y.C. Admin. Code") § 11-

---

[1] The background facts are drawn from the complaint and are deemed true for purposes of defendant's Rule 12(b)(6) motion, and all reasonable inferences are drawn in favor of plaintiff.  *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).  For the purpose of determining the Court's jurisdiction under Rule 12(b)(2), extrinsic facts established through plaintiff's declarations are also considered.  *Whitaker v. American Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).

1302(a)(1).  Both the City and State laws require a tax stamp to be affixed to cigarette packages as proof of payment of the excise tax.  N.Y. Tax L. § 471; N.Y.C. Admin. Code § 11-1302(g).  Stamping agents, usually wholesale cigarette dealers licensed by the State and City to purchase and affix tax stamps, are the only lawful entry point for cigarettes into New York.  N.Y. Tax L. § 471; N.Y.C. Admin. Code §§ 11-1302(e), 11-1302(h).  The stamping agent must incorporate the amount of the taxes into the price of the cigarettes such that consumers bear the tax burden.  *Id.*

As most New York City smokers are aware, however, not all states tax cigarettes so stringently.  Many other states such as North Carolina and Virginia have far lower cigarette tax rates than New York.  This allows people to purchase cigarettes at low prices in other states, smuggle the cigarettes into New York, and sell them at a significant profit while evading New York's tax requirements.  Compl., Dkt. 1, ¶ 29.  In short, the price disparity creates an arbitrage opportunity.

The City alleges that defendant Atlantic Dominion knowingly supplied cigarettes to retailers in Virginia, who then sold the cigarettes to traffickers that smuggled contraband cigarettes into New York.  Compl. ¶¶ 2, 3.  Although Atlantic Dominion is not alleged to have itself sold cigarettes in New York, the City asserts that Atlantic Dominion knew its cigarettes were destined for New York, and thereby participated in the "shipment, transport, receipt, possession, distribution or sale of massive quantities" of "contraband cigarettes" in violation of CCTA and RICO.  Compl. ¶¶ 5–12.  In doing so, Atlantic Dominion allegedly reaped the benefits of high volumes of illicit sales, tapping the huge New York market with the competitive advantage of cut-rate prices.  Compl. ¶ 38.

The City's complaint highlights warnings Atlantic Dominion received from Philip Morris, a cigarette manufacturer that supplied cigarettes to Atlantic Dominion.  Philip Morris

monitors the sales volume of its wholesale customers to determine whether its wholesalers are supplying cigarettes to retailers in quantities consistent with the retail outlet's size and location. Compl. ¶ 40.  The cigarette maker also provides incentive payments on limited volumes of cigarettes.  Compl. ¶ 41. The incentive payments are reduced when wholesale customers go over the limits, since such large sales are consistent with bulk supply to traffickers.  *Id.*  The City alleges that between at least March 28, 2016 and April 24, 2017, Philip Morris notified Atlantic Dominion approximately 53 times that it was exceeding or close to exceeding carton volume sale limits that were eligible for financial incentive payments.  Compl. ¶¶ 44–45.  Philip Morris also audited Atlantic Dominion for compliance with anti-trafficking guidelines.  Compl. ¶ 43.  The City claims that these messages constituted "conclusive, direct information" to Atlantic Dominion that its cigarettes were being purchased by traffickers.  Compl. ¶ 46.  The City also alleges that Philip Morris alerted Atlantic Dominion that specific Atlantic Dominion customers supplied cigarette traffickers.  Compl. ¶ 7.

Over and above these particularized assertions, the complaint makes less specific allegations alluding to Atlantic Dominion's actual or constructive knowledge of the trafficking scheme.  The City notes that Atlantic Dominion sold cigarettes to convenience stores in amounts that exceeded the reasonable market for consumers in the remote areas the convenience stores serviced.  Compl. ¶ 5.  The convenience stores were also "run-down" in appearance, which the City argues is further evidence that sales were not driven by consumer purchases.  Compl. ¶ 6.  The City also asserts that Atlantic Dominion customers informed Atlantic Dominion employees that the retailers were supplying cigarettes to out-of-state customers.  Compl. ¶ 8.  Plaintiff elaborates on these allegations further with declarations from employees of Atlantic Dominion's customers, which were not attached to the original complaint but were submitted as part of its

12(b)(2) motion to dismiss.

## Legal Standards

"In a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating that the Court has jurisdiction over the defendant." *C.B.C. Wood Prod., Inc. v. LMD Integrated Logistics Servs., Inc.*, 455 F. Supp. 2d 218, 222 (E.D.N.Y. 2006). If the parties have not yet conducted discovery, the plaintiff may counter the motion to dismiss by making a *prima facie* showing of jurisdiction. *Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir. 1998). While evaluating the 12(b)(2) motion, the Court may consider the plaintiff's complaint, as well as affidavits and other supporting materials the parties present. *See S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010); *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 152 (E.D.N.Y. 2012). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)).

Furthermore, in a federal question case, where the defendant resides outside the forum state, the Court applies "the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). After plaintiff makes a prima facie showing of jurisdiction under state law, plaintiff must also show that the exercise of jurisdiction comports with the constitutional requirement of due process. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).

But, assuming the absence of a jurisdictional hurdle, to survive a motion to dismiss under

Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

On a Rule 12(b)(6) motion, the district court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange*, 517 F.3d at 115. Importantly, in ruling on a Rule 12(b)(6) motion, a court is to principally consider the complaint, although it may also consider documents incorporated by reference into the motion to dismiss, or documents attached to the complaint as exhibits. *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996). Therefore, if a plaintiff's declarations are not incorporated into the complaint, they may be considered in resolving the question of personal jurisdiction only.

<u>Discussion</u>

I.    Personal Jurisdiction

CCTA does not provide for national service of process, meaning that the New York Civil Practice Law and Rules ("CPLR") § 302, New York's long-arm statute, applies. Atlantic Dominion moves to dismiss on the basis that the City has failed to establish personal jurisdiction under CPLR § 302(a)(1)–(3). Def.'s Mem. at 4–6. CPLR § 302(a)(1) provides that a court may exercise jurisdiction over a non-domiciliary defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state," where the cause of action arises from the acts which are the basis of jurisdiction. CPLR § 302(a)(2) provides for personal

jurisdiction over a defendant who "in person or through an agent . . . commits a tortious act within the state."  CPLR § 302(a)(3) similarly provides for personal jurisdiction over a defendant who "commits a tortious act without the state causing injury to person or property within the state."

Under CPLR § 302(a)(1), a single act can establish jurisdiction.  *See Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006).  The defendant need not be present in state, nor have personally sent goods into the state to be subject to personal jurisdiction.  But, the Court must evaluate whether the defendant "purposefully availed itself of the privilege of conducting activities within [New York] by . . . contracting to supply goods or services in New York" and whether the plaintiff's claims "arise from . . . the contract to supply goods or services."  *Fica Frio, Ltd. v. Seinfeld*, 434 F. Supp. 3d 80, 89 (S.D.N.Y. 2020) (quoting *D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 56 N.Y.S.3d 276, 68 N.E.3d 1, 7 (2016)).  In short, a nonresident seller who supplies goods that the seller "knows or should know are destined for New York, regardless of whether the seller actually ships them to New York," is subject to CPLR § 302(a)(1) long arm jurisdiction.  *Id.*

To ward off long-arm jurisdiction, Atlantic Dominion proclaims sanctuary in the complaint's failure to plausibly allege that it transacts business within, or contracts to supply goods or services in New York.  Def.'s Mem. at 6.  Atlantic Dominion also argues that the allegation that traffickers[2] purchased cigarettes from Atlantic Dominion's retail store customers

---

[2] Defendant argues that the fact that the retail customers are not identified in the complaint makes plaintiff's complaint a "group pleading" that fails to meet the basic Rule 8 pleading standard.  Def.'s Mem. at 7.  The City's pleading, however, clearly outlines Atlantic Dominion's alleged actions separately from other non-defendant parties; the cases cited in support of defendant's position refer to scenarios where defendants are unnamed or undifferentiated.  *E.g. Johnson v. City of New York*, No. 1:15-CV-8195, 2017 WL 2312924, at *10 (S.D.N.Y. May 26, 2017) (finding that plaintiff's failure to name John Doe police

in Virginia and later sold them in New York cannot support jurisdiction.  Def.'s Mem. at 7.  In

response, the City points out persuasively that CPLR § 302(a)(1) merely requires that a

defendant contract "anywhere" to supply goods or services in the state, and that even one

transaction "directed to" New York, even if initiated outside New York, would satisfy this

requirement.  *See City of New York v. Hatu*, No. 18-CV-848, 2019 WL 2325902, at *5 (S.D.N.Y.

May 31, 2019) (declarations of defendant's intermediaries showed that defendant was aware he

was facilitating the smuggling of untaxed cigarettes into New York.)

Clearly, as the City argues, long-arm jurisdiction under § 302(a)(1) applies despite the

fact that Atlantic Dominion did not directly ship goods into New York, so long as it knew, or

should have known, the goods were destined for New York.  To recapitulate the obvious, the

very heart of the jurisdictional question beats with a determination of whether the City can show

that Atlantic Dominion knew, or should have known, that the cigarettes it sold within Virginia

were ultimately to be sold in New York.

The City's complaint alone may not support an inference that Atlantic Dominion should

have known its cigarettes were sold in New York, specifically.  The complaint indicates that

between at least March 28, 2016, and April 24, 2017, Atlantic Dominion sold cigarettes in

volumes that were disproportionate to the demand in its in-state market, to such extent that its

own supplier, Philip Morris, sent it notifications that its high sales might not qualify for financial

incentives and even conducted audits to that end.  Compl. ¶¶ 5, 39–46.  Moreover, although the

complaint alleges that Philip Morris specifically told Atlantic Dominion that some Atlantic

---

defendants failed to meet the Rule 8 standard); *Adamou v. Cnty. of Spotsylvania, Virginia*, No.
112-CV-07789, 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016) (finding the complaint
insufficient where it "lumped" defendants together such that their conduct could not be
differentiated).  Atlantic Dominion's reliance on this line of cases is unjustified.

Dominion customers supplied intermediary traffickers, Compl. ¶ 7, there is no allegation that Philip Morris specifically warned defendant that its cigarettes were being taken to New York.[3]

The complaint contains greater factual texture since it also alleges that Atlantic Dominion supplied "certain cigarette retail stores in Virginia" with Virginia stamped cigarettes, and these certain customers "informed Atlantic Dominion personnel that the retailers were supplying cigarettes to out-of-state customers" and "Atlantic Dominion assured the customers that such sales were legal."  Compl. ¶¶ 3, 8.  While the information that the cigarettes were going "out-of-state" is relatively vague, Atlantic Dominion would have reason to suspect the cigarettes were being trafficked to Virginia's surrounding area, though not specifically to New York.

At any rate, on defendant's jurisdictional challenge, the city is not limited to the factual assertions of its complaint to carry its burden of establishing the propriety of *in personam* jurisdiction.  The City has submitted in opposition to Atlantic Dominion's Rule 12(b)(2) motion to dismiss declarations that strengthen the factual foundations of its jurisdictional argument. First, the City has submitted declarations from cigarette retailer employees in North Carolina suggesting that Atlantic Dominion was aware of a suspicious pattern of sales between North Carolina and New York.[4]  Justin Brent Freeman, the owner of FreeCo, a now defunct wholesale

---

[3] Defendant has also submitted affidavits from the Executive Vice President of Sales and Marketing for Atlantic Dominion, Kevin K. Barney, which challenge the City's characterization of Philip Morris's communications with Atlantic Dominion.  Barney asserts that these notifications were related purely to marketing incentives and sales discounts, Barney Aff. 1, Dkt. 26; Barney Aff. 2, Dkt. 27.  However, the Court notes that defendant's affidavits do not directly contradict plaintiff's allegation that these marketing incentives were created in order to combat trafficking.  *See* Compl. ¶ 41 ("Cigarette manufacturers promote sales by providing wholesalers with volume-based financial incentives. Manufacturers intend those incentives to promote genuine retail consumer sales, not bulk sales to cigarette traffickers.")

[4] Defendant charges that the FreeCo affidavits constitute "new allegations" not included in the complaint, and therefore cannot be considered.  The argument is unavailing.  In the case defendant cites, *Clean Coal Techs., Inc. v. Leidos, Inc.*, the court declined to consider an allegation raised for this first time in plaintiff's opposition to the motion to dismiss, because it

distributor of cigarettes in North Carolina, stated that it was common in the industry to refer to high-volume purchases of Newport cigarettes as "NYC Cigarettes" or "I-95 Cigarettes" because they were commonly trafficked to New York.  Lu Decl. Ex. 2. ("J. Freeman Decl."), Dkt. 29-2, ¶ 8.  Freeman stated also that he questioned Atlantic Dominion executive management about FreeCo's high volume purchases of Newports, but Atlantic Dominion was "not concerned" and said it was not the "cigarette police."  J. Freeman Decl., ¶ 12.

Additionally, Larry Freeman, FreeCo co-owner, wrote in his declaration that an Atlantic Dominion employee named Charles said, "I heard you are taking all this to New York," to him on several occasions.  Lu Decl. Ex. 3 ("L. Freeman Decl."), Dkt. 29-3, ¶ 5.  Brian Bullard, former FreeCo employee, similarly declared that Charles made comments that the cigarettes FreeCo purchased from Atlantic Dominion were being taken to New York State and City.  Lu Decl. Ex. 4 ("Bullard Decl."), Dkt. 29-4, ¶ 6.  Another former FreeCo employee, Jennifer Marie Salkeld, testified in her declaration that "Atlantic Dominion employees made ongoing comments about FreeCo's wholesale cigarette orders, including comments that the volume purchased by FreeCo . . . indicated that the cigarettes . . . were not intended for sale or use locally" and "Atlantic Dominion employees also made statements about the fact the cigarettes it sold to FreeCo were going to New York."  Lu Decl. Ex. 5 ("Salkeld Decl."), Dkt. 29-5, ¶¶ 8, 9.  While the facts asserted in these declarations do not offer direct proof of Atlantic Dominion's knowledge, they do assert facts from which it may be reasonably inferred, and at this stage must be inferred, that it was aware that cigarettes documented for shipment to other states were in fact shipped to New York City.

---

directly contradicted allegations in the complaint.  *Clean Coal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 321 (S.D.N.Y. 2019).  In contrast, the City offers extrinsic declarations that bolster its allegations that defendant had the requisite knowledge to support a finding of jurisdiction.

Speaking specifically to the City's allegations about retailers in Virginia, the City submits the declaration of Stephen Riley, co-owner of a chain of cigarette retail stores in Fredericksburg, Virginia. Stephen Riley stated that for over twenty years he interacted with Kevin Barney, the Executive Vice President of Atlantic Dominion; Tony Tanner, an Atlantic Dominion sales manager; and Ginger Barber, an Atlantic Dominion sales representative. Lu Decl. Ex. 1 ("Riley Decl."), Dkt. 29-1, ¶ 4. Riley declared that he suspected that out-of-state customers to his retail store were bringing the cigarettes to New York. Riley Decl., ¶ 7. He also asked Barney if there was a limit on the amount of cigarettes they could sell to out-of-state buyers. Riley Decl., ¶ 8. Riley states that Barney responded that Cigarettes Unlimited could sell as many cigarettes as they wanted to, so long as the Virginia tax had been paid. *Id.*

A finding that the City has met its pleading burden as to New York's long arm jurisdiction over Atlantic Dominion's alleged conduct requires no leap of faith. The complaint and declarations filed by the City show that Atlantic Dominion had notice of unusually high sales that were consistent with trafficking activity, that some Atlantic Dominion employees knew that cigarettes were being smuggled from North Carolina to New York, and that at least one Virginia customer told Atlantic Dominion it was selling large volumes of cigarettes to out-of-state buyers. While the proof here is not as clear as in *Hatu*, it is reasonable to infer that Atlantic Dominion should have known that its Virginia cigarettes were also headed to New York, given its knowledge of similar schemes in North Carolina, and its high sales to out-of-state buyers in Virginia. At this early stage in the litigation, drawing all factual inferences in favor of the plaintiff, the allegations satisfy the requirements of CPLR § 302(a)(1).

Personal jurisdiction not only touches all the statutory bases but also comports with due process. The due process inquiry evaluates whether the non-resident defendant has sufficient

minimum contacts with the forum, and, if so, whether the exercise of personal jurisdiction meets "traditional notions of fair play and substantial justice." *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 328 (S.D.N.Y. 2017) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 60, 567–68 (2d Cir. 1996)).  To have had minimum contacts with the forum, the defendant must have "purposefully availed" itself of the privileges of conducting activities in the forum state, such that it could "reasonably anticipate being haled into court there." *Id.*  Taking the City's presented facts as true, defendant purposefully availed itself of New York by directing goods for sale at the forum.  *Hatu*, 2019 WL 2325902, at *9 ("[K]nowingly causing cigarettes that have not been subject to the New York State or City cigarette tax to be sold to consumers in New York—readily qualifies as purposeful availment.").  Accordingly, having "chosen to participate" in such sales, Atlantic Dominion could reasonably expect to be sued in New York in connection with those sales.  *Id.* at *10.

Still, *in personam* jurisdiction can be defeated if the out-of-state defendant can make a compelling showing that the exercise of long arm jurisdiction would be unreasonable.  The factors considered in determining reasonableness are "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial[] system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering social substantive policies." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) (quoting *Metro. Life*, 84 F.3d at 568).

Cozying up as close as it can to this standard, Atlantic Dominion asserts that finding personal jurisdiction over Atlantic Dominion would not be reasonable because the "unidentified Spotsylvania Retailer and employees who would necessarily be witnesses are all based in

Virginia, as was the alleged conduct of both Atlantic Dominion and the Spotsylvania retailer." Def.'s Mem. at 5 n. 1. Yet, Atlantic Dominion neglects to specify a burden that would be imposed by forcing it to defend its case in New York; nor does it opine on Virginia's interest in adjudicating the case. *See Hatu*, 2019 WL 2325902, at *10. Indeed, Virginia would have little motivation to pursue a suit to vindicate New York's rights. Accordingly, it is not unfair to subject defendant to New York's jurisdiction.[5] Having failed to make a compelling case of unreasonableness, and the City having met both New York's statutory requirements and shown that the constitutional minimum contacts standard for jurisdiction has also been met, pursuant to CPLR § 302(a)(1), the City may pursue the claims it makes here against Atlantic Dominion in a New York forum.

A. RICO Jurisdiction

Under 18 U.S.C. § 1965(a), a civil RICO action can be brought against an initial defendant "in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." That is, personal jurisdiction over the defendant requires the "minimum contacts" test to be met for at least one defendant. *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 314 (S.D.N.Y. 2010); *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998). For the reasons stated above, the City has established Atlantic Dominion's minimum contacts with New York.[6] Therefore the Court has jurisdiction to consider the RICO claim against Atlantic Dominion.

---

[5] Having found long arm jurisdiction present, consideration of the City's other bases supporting such jurisdiction is unnecessary.

[6] Defendant argues that the "ends of justice" test must also be met to establish jurisdiction over the RICO claim. However, the "ends of justice" test is necessary to determine jurisdiction over "other parties," that is, additional defendants. 18 U.S.C. § 1965(b); *PT United Can Co.*, 138 F.3d at 71. This provision is not relevant here, since there is only one defendant.

II.      Failure to State a Claim

With its jurisdictional attack repelled, defendant Atlantic Dominion's substantive attack

on the complaint is brought up for consideration.  Its Rule 12(b)(6) motion seeks dismissal of

both the City's CCTA and RICO claims.  As explained previously, on a Rule 12(b)(6) motion,

the court must restrict itself to the facts within the complaint, as well as any "documents attached

to the complaint as exhibits" or "incorporated in the complaint by reference." *Asplundh Tree

Expert Co.*, 102 F.3d at 662.  If a complaint "relies heavily upon [the document's] terms and

effect," it is "integral" to the complaint and may also be considered.  *Chambers v. Time Warner,

Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).[7]

A.  CCTA

CCTA forbids "any person knowingly to ship, transport, receive, possess, sell, distribute

or purchase contraband cigarettes."  18 U.S.C. § 2342(a).  Contraband cigarettes are defined as

"a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable

State or local cigarette taxes in the State or locality where such cigarettes are found, if the State

or local government requires a stamp, impression, or other indication to be placed on packages . .

. to evidence payment of cigarette taxes."  18 U.S.C. § 2341(2).  To demonstrate a violation of

CCTA, the City must show that defendant "(1) knowingly shipped, transported, received,

possessed, sold, distributed or purchased (2) more than 10,000 cigarettes (3) that did not bear

---

[7] Misapprehending the meaning of *Chambers*, the City argues that the extrinsic
declarations it has submitted should be considered in its opposition to Atlantic Dominion's Rule
12(b)(6) motion.  These declarations, however, do not fall within the qualifying categories
described in *Chambers* since none of them were attached to the complaint, nor incorporated by
reference or even mentioned in the complaint.  Nor is there any sort of showing by the City that
facts set forth in the declarations were in any way integral to the drafting of the complaint.
*Chambers*, 282 F.3d at 153. Consequently, these declarations will not be read on that branch of
Atlantic Dominion's motion seeking dismissal under Rule 12(b)(6).

State or City tax stamps (4) under circumstances where the law required the cigarettes to bear

such stamps." *Hatu*, 2019 WL 2325902, at *11 (S.D.N.Y. May 31, 2019) (quoting *City of New*

*York v. Gordon*, 155 F. Supp. 3d 411, 420 (S.D.N.Y. 2015)).

It appears undisputed that the complaint plausibly alleges that the cigarettes sold by

Atlantic Dominion to customers purchasing their cigarette products in Virginia bore Virginia

stamps, not New York stamps.  Compl. ¶ 3.  Of course, when the cigarettes were eventually sold

in New York, they were required to bear New York tax stamps.  Compl. ¶¶ 22–27; 18 U.S.C. §

2341(2) (defining contraband cigarettes as those lacking the tax payment indicator of the "State

or locality where such cigarettes are found").  Therefore prongs 3 and 4 are already satisfied.

*See Hatu*, 2019 WL 2325902, at *11.  The complaint also alleges that Atlantic Dominion sold,

possessed, distributed and transported more than 10,000 cigarettes found within New York.

Compl. ¶ 53.  For example, from April 2019 to May 2019, one cigarette retailer, supplied solely

by Atlantic Dominion, allegedly sold at least 9,000 cartons[8] of Virginia-stamped cigarettes to

traffickers, who transported the cigarettes to New York.  Compl. ¶ 34.[9]  Taking this as true,

Atlantic Dominion would be responsible for the sale of well over 10,000 contraband cigarettes.

Given the covert nature of the shipment of untaxed cigarettes, notwithstanding the

absence of dispute that the subject cigarettes did not bear New York tax stamps, the parties do

spar over whether Atlantic Dominion's sale of the cigarettes without New York tax stamps was

done "knowingly" as that term is used in the statute.  The statutory scheme is a bit quirky.  Under

CCTA, a defendant does not have to know that the cigarettes are contraband at the time of sale.

*See City of New York v. Milhelm Attea & Bros.*, No. 06-CV-3620 CBA, 2012 WL 3579568, at

---

[8] "One carton of cigarettes contains ten packs of twenty cigarettes."  Compl. ¶ 23.  9,000 cartons of cigarettes would equal 1,800,000 cigarettes.

[9] The complaint implies there are more such incidents, but does not describe them.

14

*25 (E.D.N.Y. Aug. 17, 2012).  "All that is required under CCTA is that the defendant knew 'the physical nature of what he possessed.'"  *Id.* (quoting *United States v. Elshenawy*, 801 F.2d 856, 859 (6th Cir. 1986)).  In *Milhelm Attea*, the defendants sold unstamped cigarettes in Native American reservations.  Defendants argued they did not "knowingly" sell contraband cigarettes because there was an ambiguity in the tax code preventing tax collection on reservation sales.  *See Milhelm Attea & Bros.*, 2012 WL 3579568, at *20.  However, because defendants knew that they "sold and shipped unstamped cigarettes in CCTA quantities that vastly exceeded any plausible . . . consumption" in the reservation, and failed to "make inquiry of their customers about cigarette consumption" on the reservation, the district court found that they knowingly sold contraband cigarettes under CCTA.  *Id.*

Here, although the City can no longer benefit from the bolstering effect of its declarations from cigarette retailers, Atlantic Dominion cannot, at the Rule 12 stage, defeat the City's allegations showing it knowingly distributed contraband cigarettes.  As in *Milhelm Attea*, plaintiff's complaint alleges that Atlantic Dominion knowingly sold Virginia-stamped cigarettes in quantities that exceeded the plausible consumption of their in-state customers.  This was brought to Atlantic Dominion's attention both by their own customers, who flagged that they were making out-of-state sales, as well as Philip Morris, who alerted defendant that its sales exceeded the amounts eligible for incentive payments, because the sales were allegedly "inconsistent with the expectation for a retail outlet of a given size and location."  Compl. ¶¶ 8, 40.

Furthermore, the fact that Atlantic Dominion only makes intrastate sales does not excuse it from CCTA liability.  Prior decisions have found that intrastate sales, or sales that do not directly involve selling cigarettes in violation of another state's tax laws, are unlawful under

15

CCTA.  *See Hatu*, 2019 WL 2325902, at *12 (citing *Milhelm Attea & Bros.*, 2012 WL 3579568 at *1 (finding that selling untaxed cigarettes within Native American reservations, which later resulted in cigarette trafficking, was materially indistinguishable from selling untaxed cigarettes directly to the public)).  The key consideration is whether the cigarettes eventually become contraband because of a defendant's sale, shipment, or distribution of the cigarettes, even if the defendant's actions did not make the cigarettes contraband at the time.  *See City of New York v. Chavez*, No. 11-CV-2691, 2012 WL 1022283, at *4 (S.D.N.Y. Mar. 26, 2012).  That is, "distributors – beyond the taxing power of New York City and State – may still be liable for violating CCTA because of their role . . . in evasion of the stamping schema." *Id.*  Atlantic Dominion fits this description despite the fact it never directly "injected" cigarettes into New York.  *Id.* at 5.  Rather, by selling to retailers who then sold to traffickers, Atlantic Dominion allowed numerous cigarettes to flow into New York, without paying New York taxes.  The City has adequately alleged all four prongs constituting a violation of CCTA.  Therefore, defendant's motion to dismiss CCTA claims on both procedural and substantive grounds must be, and is, denied.

## B.  RICO

To make out a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must show that defendant "conducted, or participated in the conduct, of a RICO enterprise's affairs through a pattern of racketeering activity."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487 (2d Cir. 2014); 18 U.S.C. § 1962(c).  A pattern of racketeering activity requires two or more predicate acts that are related and amount to, or pose a threat of, continuing criminal activity.  *Hatu*, 2019 WL 2325902 at *13.  The definition of "racketeering activity" includes trafficking contraband cigarettes.  *See* 18 U.S.C. § 1961(1).  The City must also show that a RICO predicate

offense was a proximate and but for cause of its injury.  *Id.*

Atlantic Dominion primarily attacks the idea it engaged in an "enterprise."  The City alleges that Atlantic Dominion belonged to an association-in-fact enterprise, which is a group that has a "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938, 946, 129 S. Ct. 2237, 2244, 173 L. Ed. 2d 1265 (2009).  Put differently, it is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *Id.*  The members of the enterprise must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes."  *New York v. United Parcel Serv., Inc.*, No. 15-CV-1136, 2016 WL 4203547, at *3 (S.D.N.Y. Aug. 9, 2016).  To establish "a relationship among those associated with the enterprise," the plaintiff must "demonstrate the relationships between the various members and their roles in the purported RICO scheme."  *Id.*  Atlantic Dominion asserts that the Complaint alleges neither a sufficient purpose or relationship.

But, the City's pleading of this claim is more on target than Atlantic Dominion acknowledges.  In the complaint, the City alleges that the enterprise of "Atlantic Dominion, its retail customers, and their trafficker customers" has the purpose of "distributing untaxed cigarettes into New York and elsewhere."  Compl. ¶ 13.  Later in the complaint, the plaintiff restates the purpose as "generat[ing] money for its members by engaging in the shipment, transport, receipt, possession, sale, distribution or purchase of contraband cigarettes."  Compl. ¶ 63.  This allegation is not merely a recitation of the elements of a RICO violation; it states a shared mission in relation to cigarette trafficking, a predicate RICO offense. It is a far cry from the case defendant cites, *Moss*, where plaintiff alleged a purpose to conduct explicitly lawful

activity.  *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 299 (E.D.N.Y. 2017).[10]

Atlantic Dominion attacks the City's claim of "association" on multiple fronts.  It argues that the City has not established any relationship between the alleged enterprise members, because the complaint does not "identify the members of the Enterprise, much less detail their organization or hierarchy."  Def. Mem., at 24.  However, an enterprise "need not have any formal structure, nor any hierarchy, role differentiation, modus operandi, chain of command" or other particular attribute.  *City of New York v. Chavez*, 944 F. Supp. 2d 260, 270 (S.D.N.Y. 2013).  The Supreme Court has emphasized that the concept of an enterprise under RICO is broad.  *Boyle*, 556 U.S. at 944.

The City puts this relaxed definition to effective use.  Pointedly, while the City's pleading does not offer an organizational chart, it does offer enough allegations to establish that Atlantic Dominion held a relationship with its customers, who held relationships with traffickers.  Specifically, the complaint states that "Atlantic Dominion received orders for cigarettes from cigarette retail stores and filled those orders knowing that the cigarettes sold by the stores would in turn be sold to traffickers for immediate transport to New York City and elsewhere without having been affixed with the tax stamps of any state other than Virginia."  Compl. ¶ 64.  In a fair reading of it, the complaint set forth facts supporting its contention that Atlantic Dominion and its customers are not merely strangers acting in parallel; they have explicit seller-consumer relationships by which they came to know each other.  *Cf. Elsevier Inc*, 692 F. Supp. 2d at 310 ("Nothing in the Complaint explains how these particular people, located in different parts of the country, came to an agreement to act together—or even how they knew each other.").  The

_____

[10] Defendant also cites *New York v. United Parcel Serv. Inc.*, but this case dismissed plaintiff's RICO claims for failure to meet the "operation or management" test, and did not closely analyze the "shared purpose" element.  2016 WL 4203547, at \*7.

allegations set up a distinct supply chain that forms the basis of a relationship.  Defendant's assertion that plaintiff is merely reciting the elements of a cause of action in its complaint is woefully at odds with the real world association-in-fact that it actually describes.  *See* Def.'s Mem. at 19.[11]

On one of the other fronts, defendant attacks the complaint for failing to show it participated in the "operation or management of the enterprise."  *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).  To show "operation or management," plaintiff must show that defendant, in some part, "direct[ed]" the affairs of the enterprise.  *Id.* at 184.  Although this is described as a "low hurdle" to clear at the motion to dismiss stage, not all activity aiding a RICO enterprise will suffice.  *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004).  For example, "outsiders" such as accountants or lawyers, by virtue of providing a service to a RICO entity, are not themselves responsible for the "operation or management" of the enterprise.  *See United Parcel Serv., Inc.*, 2016 WL 4203547, at *4.  However, plaintiff need not allege that defendant held "primary responsibility for enterprise affairs, nor . . . a formal position in the enterprise."  *City of New York v. LaserShip, Inc.*, 33 F. Supp. 3d 303, 310 (S.D.N.Y. 2014).  Indeed, activities such as "suppl[ying] relatively cheap cigarettes for sale in New York" may be a "central function" of a trafficking enterprise, sufficient to establish a "degree of control."  *Hatu*, 2019 WL 2325902, at *13.

In any event, Atlantic Dominion's motion to dismiss on this ground fails to carry the day.  Although Atlantic Dominion asserts that the complaint only alleges that it "participate[d] in achieving the purpose of the Enterprise," the complaint's allegations are far more detailed than

---

[11] The "longevity" of the business relationships the City contends make up the association-in-fact, which is alleged to have gone on for years, appear to be uncontested.  Compl. ¶ 3.

Atlantic Dominion represents.  The City also alleges that Atlantic Dominion participated in the operation and management of the enterprise by:

> a. Engaging in the long-term planning and day-to-day activities required to sell, ship and distribute cigarettes to retail customers that Atlantic Dominion knew were selling to cigarette traffickers.
>
> b. Arranging for the sale, shipment, transport and distribution of cigarettes that Atlantic Dominion knew would be transported out of Virginia by traffickers but not affixed with the tax stamps of any state except Virginia.
>
> c. Receiving and filling orders for Virginia-stamped cigarettes from cigarette retail stores knowing that the cigarettes would be transported out of Virginia by traffickers but not affixed with the tax stamps of any state except Virginia.
>
> d. Selling cigarettes to cigarette retail store knowing and intending that the cigarettes would be transported out of Virginia by traffickers but not affixed with the tax stamps of any state except Virginia.
>
> e. Employing and instructing other individuals to engage in all of the above activities.

Compl. ¶ 70.  This list of activities suffices to allege a degree of control over the supply, shipping, and distribution of low-cost cigarettes to the enterprise, an important function of the alleged trafficking scheme.  The complaint sufficiently demonstrates that, rather than tending purely to its own affairs, as defendant argues, Atlantic Dominion was enmeshed in the supply chain of the enterprise and handled a significant portion of the distribution.  *Reves*, 507 U.S. at 185.  Accordingly, Atlantic Dominion's Rule 12(b)(6) motion to dismiss the civil RICO claim is denied.

As the City has cleared the hurdles to pleading a civil RICO claim, its success in pleading

a RICO conspiracy claim is essentially assured.  The standard governing RICO conspiracy claims under § 1962(d) is less demanding than the standard for §1962(c) claims.  *See City of New York v. Bello*, 579 F. App'x 15, 17 (2d Cir. 2014).   It requires only that the plaintiff show that defendant "agree[d] to conduct or to participate in the conduct of a charged enterprise's affairs through a pattern of racketeering."  *United States v. Pizzonia*, 577 F.3d 455, 464 (2d Cir. 2009).  "A 'conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.'"  *Bello*, 579 F. App'x at 17 (quoting *Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir. 2003)).  Seeing as the City has successfully alleged a substantive RICO claim, it stands to reason that the City has also sufficiently alleged that Atlantic Dominion agreed to assist in a conspiracy to commit a RICO violation.  On these grounds, the motion to dismiss the § 1962(d) claim for RICO conspiracy is also denied.

<u>Conclusion</u>

For the foregoing reasons, Atlantic Dominion's motion to dismiss for lack of personal jurisdiction and failure to state a claim is denied in its entirety.

The parties are referred to Magistrate Judge Ramon E. Reyes for continued pre-trial management of this case.

So Ordered.

Dated: Brooklyn, New York
      August 30, 2023

/s/ ENV
ERIC N. VITALIANO
United States District Judge

21