**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
Civil Action No. 20-cv-5965

--------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                                    Plaintiff,

                                  -against-

OLD DOMINION TOBACCO COMPANY,
INCORPORATED d/b/a ATLANTIC DOMINION
DISTRIBUTORS,

                                    Defendant.

--------------------------------------------------------------------- x

# ORDER ON CONSENT

**WHEREAS,** on or about December 8, 2020, the City of New York (the "City") commenced the above-captioned action (the "Action") against the Old Dominion Tobacco Company, Inc. d/b/a Atlantic Dominion ("Atlantic Dominion") by service of a summons and complaint;

**WHEREAS,** on or about February 22, 2021, Atlantic Dominion filed a motion to dismiss the City's complaint pursuant to Fed. R. Civ. P. 12(b) for lack of jurisdiction and, in the alternative, for failure to state a claim;

**WHEREAS,** on August 20, 2023, the Court issued a decision denying the motion to dismiss, reported as *City of N.Y. v. Old Dominion Tobacco Co., Inc.*, No. 20-CV-5965 (ENV) (RER), 2023 U.S. Dist. LEXIS 182413 (E.D.N.Y. Aug. 30, 2023);

**WHEREAS,** Atlantic Dominion and the City now wish to avoid the expense and uncertainty of litigation by resolving the Action without any admission of liability and to avoid the expense of litigation, according to the terms set forth below;

**WHEREAS,** the Parties recognize, and the Court by entering this Consent Order so finds, that this Consent Order has been negotiated by the Parties in good faith and to avoid litigation between the Parties and that this Consent Order is fair, reasonable, and in the public interest;

1

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and between Atlantic Dominion on the one hand and the City on the other, as follows:

## DEFINITIONS

1. For purposes of this Consent Order, the following definitions shall apply:

    a. *Cigarette Trafficking.* The term "Cigarette Trafficking" shall mean the trafficking of contraband cigarettes as defined in the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 *et seq.*

    b. *Company.* The terms "Atlantic Dominion" or "the Company" shall mean Old Dominion Tobacco Co., Inc. and its employees and owners.

    c. *Law Department.* The Term "Law Department" shall mean the New York City Law Department, specifically the person designated in the Monitorship Contract to receive information from the Monitor.

    d. *Monitor.* The term "Monitor" shall mean, collectively, Charles E. James, Jr., Esq. of the law firm Williams Mullen and all persons retained by him to assist him in fulfilling his obligations under the Monitorship Contract.[1]

    e. *Monitorship Contract.* The term "Monitorship Contract" shall mean the contract to be entered into between Atlantic Dominion and the Monitor by which the Monitor will provide monitoring services to Atlantic Dominion.

## COMMITMENTS BY THE COMPANY

2. The Company agrees that within thirty (30) days of the issuance of this order, the Company shall enter into the Monitorship Contract, as defined above, with the Monitor whose terms are acceptable to the City, such acceptance not to be unreasonably withheld. The purpose of the Monitorship Contract will be to monitor the Company's compliance with the CCTA. The Monitorship Contract shall have a term ending on December 31, 2026, and will provide that:

    a. The Monitor will ensure that the Company complies with the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 *et seq.*; the Prevent All Cigarette

---

[1] In the event that Mr. James resigns or otherwise ceases to serve as Monitor during the term of the Monitorship Contract, the term "Monitor" shall mean, collectively, the person selected as monitor pursuant to paragraph 3 and all persons retained by such monitor to assist in fulfilling the obligations of the Monitorship Contract.

2

    Trafficking Act, 15 U.S.C. § 375 *et seq.* ("PACT Act"); this Consent Order; and any other applicable federal or state laws pertaining to Cigarette Trafficking.

  b. The Monitor shall have full access to the Company's books and records as set forth in the Monitorship Contract.

  c. The Monitor shall have access to Company officers and employees as set forth in the Monitorship Contract.

  d. The Monitor shall provide means of communication (including but not limited to a designated phone number and email address) by which Company officers and employees can contact the Monitor confidentially if they have reason to believe that the Company or a Company customer may be involved in cigarette trafficking. The Company shall provide its officers and employees responsible for sales or the pickup or delivery of cigarettes with such means of communication.

  e. The Monitor shall provide training, as set forth in the Monitorship Contract, to Company officers and employees regarding cigarette trafficking.

  f. The City and the Monitor may communicate freely with one another concerning the observation and conclusions reached by the Monitor during the course of the monitorship. The City and the Monitor may communicate freely with one another concerning any information the City may have regarding known Cigarette Trafficking by the Company or any customer of the Company.

  g. The Monitor shall provide periodic written reports to the City annually as set forth in the Monitorship Contract.

  h. The Company shall be solely responsible for the reasonable fees and expenses of the Monitor as set forth in the Monitorship Contract, and the City shall have no responsibility for any such payments.

3. In the event that the person who is retained as Monitor resigns or otherwise ceases to serve as monitor, a new monitor shall be selected as follows:

  a. No later than 10 days following the cessation of the Monitor's services, the City and the Company shall each propose three candidates for the position. Each candidate will ensure that his or her team will have individuals with law enforcement experience or expertise in the prevention of Cigarette Trafficking.

  b. The Parties will confer and attempt to agree upon a monitor from among the candidates proposed.

3

    c. If the Parties are unable to agree upon a monitor from among the candidates proposed within 40 days of the cessation of the previous monitor's services, the Parties will request that the Court select a monitor from among the candidates proposed to assume the remainder of the Monitorship Contract, under the terms set forth therein.

    d. Once a new monitor is selected (by the Parties or by the Court as set forth above), the Company shall, no later than 30 days following the selection of such monitor, enter into the Monitorship Contract with the new monitor for the remaining term of the previous Monitorship Contract.

4. The Company shall pay half of the Settlement Amount[2] to the City within thirty (30) days of the issuance of this order. The Company shall pay the other half of the Settlement Amount to the City within one hundred twenty (120) days of the issuance of this order.

5. The Company shall at all times comply with the CCTA, the PACT Act, and any other federal or state laws pertaining to Cigarette Trafficking.

6. The Company shall not knowingly engage in any transaction involving Cigarette Trafficking.

7. The Company shall not knowingly obtain any revenue for itself from any transaction involving Cigarette Trafficking.

8. If the City of New York provides the Company and the Monitor with substantial evidence that any person has engaged in a transaction involving Cigarette Trafficking, the Monitor may determine that the Company shall not engage in future cigarette transactions with that person.

9. The Company expressly agrees and acknowledges that the City of New York may enforce this Consent Order in this Court, and agrees and acknowledges that in such event the City of New York may use statements, documents, or other materials produced or provided by the Company in the above-captioned action prior to or after the issuance of this Consent Order.

10. The Company expressly understands and agrees that this Consent Order is applicable solely to cigarette transactions that occur during the term of the Monitorship. Nothing in this Consent Order shall prohibit or waive the City's rights to initiate a subsequent

---

[2] The Settlement Amount is set forth in a separate agreement between the Parties.

investigation, civil action, or proceeding against Atlantic Dominion for cigarette transaction arising after the termination of the Monitorship.

11. All terms and conditions of this Consent Order shall continue in full force and effect on any successor, assignee, or transferee of the Company. The Company shall include in any such successor, assignment, or transfer agreement a provision that binds the successor, assignee or transferee to the terms of the Consent Order. No party may assign, delegate, or otherwise transfer any of its rights or obligations under this Consent Order without the prior written consent of the other party to this Consent Order.

12. Any failure by the City of New York to insist upon the strict performance by the Company of any of the provisions of this Consent Order shall not be deemed a waiver of any of the provisions hereof, and the City of New York shall have the right thereafter to insist upon the strict performance by the Company of any and all of the provisions of this Consent Order.

13. Nothing in this Consent Order shall relieve either party of other obligations imposed by any applicable local, state, or federal law or regulation or other applicable law.

14. Nothing contained in this Consent Order shall be construed to limit the remedies available to either party related to a violation of the Consent Order.

15. This Consent Order shall not grant any rights or privileges to any person or entity who is not a party to this agreement, nor shall this Consent Order affect or limit in any way the rights of any such third party.

16. If any one or more of the provisions contained in this Consent Order shall for any reason be held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Consent Order.

17. This Consent Order shall be governed by the laws of the State of New York without regard to any conflict of laws principles.

18. This Consent Order and all its terms shall be construed as if mutually drafted, with no presumption of any type against any party that may be found to have been the drafter.

19. The Court shall retain jurisdiction to enforce the terms of this Consent Order pursuant to *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82 (1994). The term of this Court's retention of jurisdiction shall continue until December 31, 2026.

20. Within 10 days following the City's receipt of the Settlement Amount and the Company's execution of the Monitorship Contract, the Parties shall execute and file with the Court a

5

Stipulation of Dismissal of the Action with prejudice, with all costs and rights of appeal to be waived by the Parties.

Dated: May 22, 2024
New York, New York

| | |
|---|---|
| HON. SYLVIA O. HINDS-RADIX<br>Corporation Counsel of the<br>City of New York<br>*Attorney for Plaintiff*<br><br>By: _____<br>Aatif Iqbal<br>Eric Proshansky<br>Assistant Corporation Counsel<br>100 Church Street<br>New York, NY 10007<br>(212) 356-2032 | TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>*Attorneys for Defendant*<br><br>By: _____<br>Avi Schick<br>Mary Grace W. Metcalfe<br>875 Third Avenue<br>New York, NY 10022<br>(212) 704-6000 |

**THE FOREGOING IS HEREBY APPROVED. IT IS SO ORDERED.**

_____
RAMON E. REYES, JR.
UNITED STATES DISTRICT JUDGE